2

# A

**Appendix 2A**

**Kyphon's Statement of Issues of Fact**

Plaintiff Kyphon presents below the issues of fact for trial. To the extent that any issues of law set forth in Appendix 3A of the Joint Pretrial Order may be considered issues of fact, Kyphon incorporates those portions of Appendix 3A by reference.

A.   Infringement by DOT

    1.   Whether DOT's SKy Bone Expander System and accessories, and the use thereof, infringes Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054.

    3.   Whether DOT has contributed to the infringement of Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054.

    2.   Whether DOT has induced infringement of Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No.

6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054.

4. Whether DOT's infringement, if any, of any of the patents-in-suit was willful.

B. Validity of Kyphon's Patents

1. Whether Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; and Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734 are anticipated by the prior art.

2. [What the level of ordinary skill in the art was at the time of the patents-in-suit invention.

3. The content and scope of the prior art asserted by DOT as rendering the invention of Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054 obvious.

4. The differences between Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054 and the prior art asserted by DOT as rendering those patents obvious.

5. Whether any of the following objective evidence of nonobviousness tends to show that Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent

No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054 are not obvious, the extent of any proffered objective evidence of nonobviousness, and whether a nexus exists between the evidence and the claimed inventions:

      a.      Commercial success of products covered by the patent in suit;

      b.      A long felt, unmet need in the art that was satisfied by the invention;

      c.      The failure of others to make the invention;

      d.      Copying of the invention by others in the field;

      e.      Initial skepticism of the invention by others in the field; and

      f.      Praise of the invention by the infringer or others in the field.

6. Where DOT is relying on a combination of references to assert invalidity under 35 U.S.C. §103, whether there is a suggestion to combine the references.

7. Whether there is a suggestion or motivation in the prior art to modify the prior art asserted by DOT to arrive at the invention claimed in the patents-in-suit.][1]

C.     Damages

1. Whether Kyphon is entitled to damages in the form of its lost profits on sales it would have made but for DOT's alleged infringement of the patents-in-suit.

2. The amount of lost profits by Kyphon as a result of DOT's alleged infringement of the patents-in-suit.

---

[1] Kyphon believes that the issue of obviousness is not properly presentable to the Jury. However, in the event that the Court decides otherwise, the bracketed, greyed text sets forth Kyphon's statement of the issues of fact regarding the issue of obviousness.

    3.      The amount of reasonable royalty adequate to compensate Kyphon for DOT's alleged infringement of the patents-in-suit.

    4.      The amount of pre-judgment and post-judgment interest on any damages awarded to Kyphon for DOT's alleged infringement.

50273734.doc

# B

**Appendix 2B**

**DOT'S STATEMENT OF CONTESTED ISSUES OF FACT**

I. NON-INFRINGEMENT

    A. Non-Infringement of Claims 1, 3, 7, 8, 9, 11 and 14 of the '888 patent and Claims 1, 3, 8, 9, 10, 12 and 15 of the '404 Patent

        1. Whether Kyphon can establish that the manufacture, use, sale and/or offer for sale of the accused DOT SKy Bone Expander System ("the SKy Device") infringes Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent, under 35 U.S.C. § 271 (a), either literally or under the doctrine of equivalents. Specifically:

            a. Given the Court's claim construction, whether Kyphon can establish that the accused SKy Device literally contains each of the elements of Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent.

            b. Given the Court's claim construction, whether Kyphon can establish that the accused SKy Device contains each of the elements of Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent, under the doctrine of equivalents.

    B. Non-Infringement of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent

        1. Whether Kyphon can establish that the manufacture, use, sale and/or offer for sale of the accused SKy Device infringes Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent, under 35 U.S.C. § 271 (a), either literally or under the doctrine of equivalents. Specifically:

    a. Given the Court's claim construction, whether Kyphon can establish that the accused SKy Device literally contains each of the elements of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent.

    b. Given the Court's claim construction, whether Kyphon can establish that the accused SKy Device contains each of the elements of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent, under the doctrine of equivalents.

C. Non-Infringement of Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 the '054 Patent

    1. Whether Kyphon can establish that the manufacture, use, sale and/or offer for sale of the accused DOT pre-July 2004 Bone Filler/Impactor Device ("DOT Impactor") infringes Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent, under 35 U.S.C. § 271 (a), either literally or under the doctrine of equivalents. Specifically:

    a. Given the Court's claim construction, whether Kyphon can establish that the accused DOT Impactor literally contains each of the elements of Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent.

    b. Given the Court's claim construction, whether Kyphon can establish that the accused DOT Impactor contains each of the elements of Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent, under the doctrine of equivalents.

II. **INVALIDITY**

    A. Invalidity of Claims 1, 3, 7, 8, 9, 11 and 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent

        1. The scope and content of the relevant prior art, including without limitation the following references, which include patents, publications and/or other evidence:

        a. U.S. Patent No. 4,488,549, issued on December 18, 1984 to Lee et al.;

        b. U.S. Patent No. 4,518,430, issued on May 21, 1985 to Brown et al.;

        c. U.S. Patent No. 4,627,434, issued on December 9, 1986 to Murray;

        d. Aebi, M., "The internal skeletal fixation system. A new treatment of thoracolumbar fractures and other spinal disorders," Clin. Orthop., Vol. 227, pp. 30 - 43, 1988;

        e. Angel, M. et al., "Vascularization of Tricalcium Phosphate, an Artificial Bone Substitute," Microsurgery, Vol. 6, pp. 175 - 81, 1985;

        f. Benum, P. et al., "Porous Ceramics as a Bone Substitute in the Medial Condyle of the Tibia," Acta Orthop. Scand., Vol. 48, pp. 150 - 57, 1977;

        g. Blauth, M., "Therapeutic Concept and Results of Operative Treatment in Acute Trauma of the Thoracic and Lumbar Spine: The Hannover Experience," J. of Orthop. Trauma, Vol. 1, No. 3, pp. 240 – 252, 1987;

        h. Bucholz, R. et al., "Hydroxyapatite and Tricalcium Phosphate Bone Graft Substitutes," Orthop. Clin. North Am., Vol. 18, No. 2, pp. 323 - 34, 1987;

        i. Campbell's Operative Orthopaedics, A.H. Crenshaw, Ed., 7th ed., Chapter 44, pp. 1653 – 1663, 1987;

        j. Carlson, D., et al., "The Use of Methylmethacrylate in Repair of Neoplastic Lesions in Bone," Radiology, Vol. 112, pp. 43 - 46, 1974;

k.  Charvet, A. et al., "Pulmonary embolism of cement during vertebroplasty," Ann. Fr. Anesth. Reanim, Vol. 23, No. 8, pp. 827 - 30, 2004;

l.  Daniaux, H., "Technik und Ergebnisse der transpedikulären Spongiosaplastik bei Kompressionsbrüchen im Lendenwirbelsäulenbereich," Acta Chir. Austr. (Suppl.), Vol. 43, pp. 79 -80, 1982;

m.  Daniaux, H., "Transpedikuläre Reposition und erste Spongiosaplastik bei Wirbelkörperbrüchen der unteren Brust und Lendenwirbelsäule," Unfallchirurg, Vol. 89, pp. 197 - 213, 1986;

n.  Dick, W., "The 'fixature interne' as versatile implant for spine surgery," Spine, Vol. 12 (9), pp. 882 - 900, 1987;

o.  Dick, W., "Use of the Acetabular Reamer to Harvest Autogeneic Bone Graft Material: A Simple Method for Producing Bone Paste," Arch. Orthop. Trauma Surg., Vol. 105, pp. 235 – 238, 1986;

p.  Edeland, H.G., "Open Reduction of Central Compression Fractures of the Tibial Plateau," Acta Orthop. Scand., Vol. 47, pp. 686 - 689, 1976;

q.  Frame, J. et al., "Hydroxyapatite as a Bone Substitute in the Jaws," Biomaterials, Vol. 2, pp. 19 - 22, 1981;

r.  Higgins, K. et al., "Biomechanical Effects of Unipedicular Vertebroplasty on Intact Vertebrae," Spine, Vol. 28, No. 14, pp. 1540 - 1548, 2003;

s.  Hillmeier, J. et al., "The evaluation of balloon kyphoplasty for osteoporotic vertebral fractures," Orthopade, Vol. 33, No. 8, pp. 893 - 904, 2004;

t. Kennedy, W., "Fractures of the Tibial Condyles: A Preliminary Report on Supplementary Fixation with Methylmethacrylate," Clin. Orthop., Vol. 134, pp. 153 - 157, 1978;

u. Komp, M. et al., "Minimal-invasive Therapie der funktionell instabilen osteoporotishcen Wirbelkorperfraktur mittels Kyphoplastie: Prospektive Vergleichsstudie von 19 operierten under 17 konservativ behandelten Patienten," J. Miner Stoffwechs, Vol. 11 (Suppl. 1), pp. 13 - 15, 2004;

v. Kraus, G. et al., "Pelvic and leg venous thrombosis as a complication of percutaneous vertebroplasty," Rofo., Vol. 175, No. 4, pp. 565 - 66, 2003;

w. Lee, B. et al., "Paraplegia as a complication of percutaneous vertebroplasty with polymethylmethacrylate: a case report," Spine, Vol. 27, No. 19, pp. E419 - 22, 2002;

x. Lieberman et al., "Vertebroplasty and Kyphoplasty for Osteolytic Vertebral Collapse," Clin. Orthop. And Related Res., No. 415S, pp. S176 - 186, 2003;

y. Limb Salvage in Musculoskeletal Oncology, Chapter 6, "Effectiveness of Methyl Methacrylate as a Physical adjuvant in Local Tumor Control," Enneking, W., Ed., Churchill Livingstone, pp. 443 - 498, 1987;

z. Ma, Yuan-zhang, "Os Calsis Fracture Treated by Percutaneous Poking Reduction and Internal Fixation," Chinese Medical Journal, Vol. 97, No. 2, pp. 105 - 110, 1984;

aa. Malawer, M. et al., "Effect of Cyrosurgery and Polymethyl Methacrylate on the Tumor Cavity," Limb Salvage in Musculoskeletal Oncology, Enneking, W., Ed., Churchill Livingstone, pp. 486 – 498, 1987;

bb. Mathis, J. et al., "Percutaneous Vertebroplasty: A Developing Standard of Care for Vertebral Compression Fractures," Am. J. Neuroradiology, Vol. 22, pp. 373 - 381, 2001;

cc. Olerud, S., "Transpedicular Fixation of Thoracolumbar Vertebral Fractures," Clin. Orthop., Vol. 227, pp. 44 - 51, 1988;

dd. Padovani, B. et al., "Pulmonary Embolism Caused by Acrylic Cement: A Rare Complication of Percutaneous Vertebroplasty," Am. J. Neuroradiology, Vol. 20, pp. 375 - 77, 1999;

ee. Pentelenyi, T., "First Hungarian Neurosurgical Experiences with 'Fixateur Interne' in the Treatment of Thoraco-lumbar Spine Injuries," Acta Neurochir. (Wien), Vol. 93, pp. 104 - 109, 1988;

ff. Phillips, F. et al., "An in Vivo Comparison of the Potential of Extravertebral Cement Leak After Vertebroplasty and Kyphoplasty," Spine, Vol. 27, No. 19, pp. 2173 - 78, 2002;

gg. Pleser, M. et al., "Pulmonary embolism caused by PMMA in percutaneous vertebroplasty," Unfallchirug, Vol. 107, No. 9, pp. 807 - 11, 2004;

hh. Ratliff, J. et al., "Root and spinal cord compression from methylmethacrylate vertebroplasty," Spine, Vol. 26, No. 13, pp. E300 - 2, 2001;

ii. Rauschmann, M. et al., "Complications of vertebroplasty," Orthopade, Vol. 33, No. 1, pp. 40 - 7, 2004;

jj. Rejda, B. et al., "Tri-calcium Phosphate as a Bone Substitute," J. Bioeng., Vol. 1, pp. 93 - 97, 1977;

kk. Ryu, K. et al., "Dose-dependent epidural leakage of polymethylmethacrylate after percutaneous vertebroplasty in patients with osteoporotic vertebral compression fractures," J. Neurosurg. Spine., Vol. 96, No. 1, pp. 56 - 61, 2002;

ll. Schatzker, J., Operative Orthopaedics, M. Chapman, Ed., 1st ed., Ch. 35, pp. 421 – 434, 1988;

mm. Scoville, W., "The Use of Acrylic Plastic for Vertebral Replacement or Fixation in Metastatic Disease of the Spine," J. Neurosurg., Vol. 27, pp. 274 - 79, 1967;

nn. Smith, L., "Ceramic-Plastic Material as a Bone Substitute," Arch. Surg., Vol. 87, pp. 653 - 61, 1963;

oo. Stricker, K. et al., "Severe Hypercapnia Due to Pulmonary Embolism of Polymethylmethacrylate During Vertebroplasty," Anesth. Analg., Vol. 98, pp. 1184 - 1186, 2004; and

pp. Tsai, T. et al., "Polymethylmethacrylate Cement Dislodgement Following Percutaneous Vertebroplasty: A case report," Spine, Vol. 28, No. 22, pp. E457 - 60, 2003.

2. The nature and level of knowledge of a person of ordinary skill in the art, with respect to the pertinent art of the '888 and '404 Patents.

3. The differences, if any, between the relevant prior art and the alleged invention(s) claimed in Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent.

4. Whether the alleged invention(s) of Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent is anticipated, under §§ 102 (a) or (b) by any of the prior art references listed in Section II.A.1.

5. Whether the alleged invention(s) of Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent would have been obvious to one of ordinary skill in the art under § 103(a), in view of the relevant prior art.

6. Whether Kyphon can establish the existence of any secondary considerations, such as commercial success of the alleged invention(s) claimed in Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent.

7. Whether Kyphon can establish a causal connection between any alleged commercial success and the specifically claimed, alleged invention(s) of Claims 1, 3, 7, 8, 9, 11 and/or 14 of the '888 Patent and Claims 1, 3, 8, 9, 10, 12 and/or 15 of the '404 Patent.

B. Invalidity of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent

1. The scope and content of the relevant prior art, including without limitation the following patent references:

   a. U.S. Patent No. 3,626,949, issued on December 14, 1971 to Shute;

   b. U.S. Patent No. 4,878,495, issued on November 7, 1989 to Grayzel;

   c. U.S. Patent No. 4,909,252, issued on March 20, 1990 to Goldberger;

   d. U.S. Patent No. 5,049,132, issued on September 17, 1991 to Shaffer et al.; and

   e. U.S. Patent No. 5,108,404, issued on April 28, 1992 to Scholten et al.

2. The nature and level of knowledge of a person of ordinary skill in the art, with respect to the pertinent art of the '043 Patent.

3.  The differences, if any, between the relevant prior art and the alleged invention(s) claimed in Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent.

4.  Whether the alleged invention(s) of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent is anticipated, under §§ 102 (a) or (b) by any of the prior art references listed in Section II.B.1.

5.  Whether the alleged invention(s) of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent would have been obvious to one of ordinary skill in the art under § 103(a), in view of the relevant prior art.

6.  Whether Kyphon can establish the existence of any secondary considerations, such as commercial success of the alleged invention(s) claimed in Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent.

7.  Whether Kyphon can establish a causal connection between any alleged commercial success and the specifically claimed, alleged invention(s) of Claims 2, 17, 20, 23, 24, 25, 26 and/or 28 of the '043 Patent.

C.  Invalidity of Claims Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent

1.  The scope and content of the relevant prior art, including without limitation the following patent references:

   a. U.S. Patent No. 4,576,152, issued on March 18, 1986 to Müller et al.;

   b. U.S. Patent No. 4,801,263, issued on January 31, 1989 to Clark;

   c. U.S. Patent No. 5,108,404, issued on April 28, 1992 to Scholten et al.;

   d. U.S. Patent No. 5,312,333, issued on May 17, 1994 to Churinetz et al.;

   e. U.S. Patent No. 5,415,631, issued on May 16, 1996 to Churinetz et al.;

    f. U.S. Patent No. 5,741,261, issued on April 21, 1998 to Moskovitz et al.;

    g. U.S. Patent No. 5,919,196, issued on July 6, 1999 to Bobic et al.; and

    h. U.S. Patent No. 6,017,348, issued on January 25, 2000 to Hart et al.

    2. The nature and level of knowledge of a person of ordinary skill in the art, with respect to the pertinent art of the '734 and '054 Patents.

    3. The differences, if any, between the relevant prior art and the alleged invention(s) claimed in Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent.

    4. Whether the alleged invention(s) of Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent is anticipated, under §§ 102 (a), (b) or (e) by any of the prior art references listed in Section II.C.1.

    5. Whether the alleged invention(s) of Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent would have been obvious to one of ordinary skill in the art under § 103(a), in view of the relevant prior art.

    6. Whether Kyphon can establish the existence of any secondary considerations, such as commercial success of the alleged invention(s) claimed in Claims 1, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent.

    7. Whether Kyphon can establish a causal connection between any alleged commercial success and the specifically claimed, alleged invention(s) of Claims 1, 3, 4, 5, 7, 8,

10, 11, 12, 13, 14, 15, 16, 17, 19, 20 and/or 21 of the '734 Patent and Claims 26, 27, 28, 29, 36, 37, 38, 39, 41, 42, 43, 44, 46, 47, 48 and/or 49 of the '054 Patent.

### III. REMEDIES

#### A. Lost Profits

1. If infringement is proved, whether Kyphon can establish it is entitled to lost profits related to DOT's sale of the SKy Device, i.e., profits Kyphon would have made but for DOT's alleged infringement. Specifically:

   a. Whether Kyphon can establish demand for the purported invention(s) of the asserted claims of the '888, '404 and '043 Patents;

   b. Whether Kyphon can establish the absence of any acceptable non-infringing substitutes during the relevant period of infringement;

   c. Whether Kyphon can establish, at all relevant times, that Kyphon had the manufacturing and marketing capability to make the infringing sales; and

   d. Whether Kyphon can establish the amount of profit that it would have made but for the alleged infringement.

2. If infringement is proved, whether Kyphon can establish it is entitled to lost profits related to DOT's sale of the DOT Impactor, i.e., profits Kyphon would have made but for DOT's alleged infringement. Specifically:

   a. Whether Kyphon can establish demand for the purported invention(s) of the asserted claims of the '734 and '054 Patents;

   b. Whether Kyphon can establish the absence of any acceptable non-infringing substitutes during the relevant period of infringement;

c. Whether Kyphon can establish, at all relevant times, that Kyphon had the manufacturing and marketing capability to make the infringing sales; and

d. Whether Kyphon can establish the amount of profit that it would have made but for the alleged infringement.

B. <u>Reasonable Royalty</u>

1. If infringement of the '888, '404 and '043 Patents is proved:

a. Whether Kyphon's damages for DOT's sales of the SKy Device must be based solely on a reasonable royalty.

b. Whether Kyphon is entitled to a reasonable royalty rate of, at most, 5%, based upon a hypothetical negotiation between the parties.

2. If infringement of the '734 and '054 Patents is proved:

a. Whether Kyphon's damages for DOT's sales of the DOT Impactor must be based solely on a reasonable royalty.

b. Whether Kyphon is entitled to a reasonable royalty rate of, at most, 1%, based upon a hypothetical negotiation between the parties.

C. <u>Prejudgment Interest</u>

1. If infringement is proved, the amount of prejudgment interest, if any, to which Kyphon is entitled.

IV. WILLFULNESS

1. If patent infringement is proved, whether, in light of the totality of the circumstances, DOT willfully infringed.

\*   \*   \*

DOT reserves the right to litigate factual issues raised by Kyphon even if not specifically set forth herein.