2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KYPHON INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-204-JJF |
| v. | ) | |
| | ) | **CONFIDENTIAL – FILED** |
| DISC-O-TECH MEDICAL TECHNOLOGIES | ) | **UNDER SEAL** |
| LTD., and DISC ORTHOPAEDIC | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DOT'S OPPOSITION TO KYPHON'S MOTION IN LIMINE 2 OF 5
TO PRECLUDE DR. MITCHELL'S EXPERT TESTIMONY
ON THE PROCEDURE DISCLOSED IN THE EDELAND
ANTICIPATORY REFERENCE**

Defendants Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic Technologies, Inc. ("DOT") submit this memorandum in opposition to Kyphon, Inc.'s ("Kyphon") Motion in Limine to preclude Dr. Mitchell's expert testimony on the procedure disclosed in the Edeland anticipatory reference.

**PRELIMINARY STATEMENT**

In his expert report on the validity of the '404 and '888 patents, DOT's expert, Dr. Mitchell, proffered his opinion that Edeland anticipates Kyphon's invention. Dr. Mitchell attached a detailed chart to his report describing precisely how Edeland discloses each and every limitation of the claimed invention. (See Exhibit 1 to DOT's Opposition to Kyphon's Motion in

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

Limine No. 1 to Preclude Dr. Mitchell's Expert Testimony Regarding Obviousness, at pp. 1-3, and 30-32 of Tab A). In support of DOT's summary judgment motion on invalidity of the '404 and '888 patents, Dr. Mitchell submitted a declaration that further elaborated on his opinion that Edeland anticipates the claimed inventions. (See Dr. Mitchell Declaration, dated April 6, 2005, attached hereto as Exhibit 1). Dr. Mitchell referenced the fact that the procedure outlined in Edeland is still in use today – indeed, Dr. Mitchell had recently performed that very same procedure, precisely as disclosed in Edeland, in a patient. That is the epitome of skill in the art as to what the Edeland reference discloses. Kyphon now seeks to foreclose Dr. Mitchell's testimony as to the Edeland procedure he performed, on the grounds that it is irrelevant and will confuse and mislead the jury.

In support of its motion in limine, Kyphon incorrectly characterizes Dr. Mitchell's performance of the Edeland procedure as an after the fact "recreation" – Kyphon accuses Dr. Mitchell of supplying all of the "missing gaps" so that the Edeland reference can anticipate the claimed inventions. Kyphon's points are the subject of cross examination and not the proper basis for exclusion of Dr. Mitchell's testimony altogether. As with Kyphon's motion in limine no. 1 precluding Dr. Mitchell from testifying as to obviousness, Kyphon's motion in limine no. 2 comprises a belated, "back door" summary judgment motion as to validity. For the reasons stated below, because Kyphon's motion is based on an incorrect characterization of the facts and comprises a summary judgment motion masquerading as a motion in limine, it should be denied in its entirety.

## ARGUMENT

Kyphon's argument is simplistic: (1) the Edeland reference does not anticipate the claimed inventions because Kyphon says so; (2) because the Edeland reference cannot

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

anticipate, Dr. Mitchell's declaration detailing his performance of the Edeland reference must be an after the fact "gap filler" that should not be submitted to the jury. Kyphon's *ipse dixit* cannot suffice to bar Dr. Mitchell from testifying on the procedure disclosed in Edeland.

In support of its motion, Kyphon incorrectly characterizes Dr. Mitchell's reference to the Edeland procedure he performed in his declaration. Dr. Mitchell's declaration merely elaborates on what Dr. Mitchell opined in his expert report: the Edeland reference anticipates asserted claims of the invention. Thus, Dr. Mitchell's description of his performance of the Edeland procedure clarifies what is inherently or expressly disclosed in the Edeland procedure. The fact that Dr. Mitchell, even today, can and did perform the procedure disclosed in the Edeland procedure proves two things:

First, the Edeland reference so clearly discloses the procedure of the claimed invention that one of ordinary skill in the art could perform the steps of the claimed invention when Edeland was written. Indeed, the procedure disclosed in Edeland is such a fundamental treatment of fractured bone that it is still performed today.

Second, given that Dr. Mitchell has performed the procedure disclosed in Edeland, Dr. Mitchell is highly qualified to testify as to how Edeland discloses each and every limitation of the claimed invention. Indeed, Kyphon has never objected to Dr. Mitchell's qualifications to offer expert testimony on the validity of the patents-in-suit.

As with Kyphon's motion in limine no. 1 seeking to preclude Dr. Mitchell from testifying as to obviousness, Kyphon's motion in limine no. 2 comprises a belated, "back door" summary judgment motion as to validity. During the briefing of dispositive motions, Kyphon did not feel strongly enough about its validity contentions to move for summary judgment on validity. Yet, on the eve of trial, Kyphon now seeks to foreclose Dr. Mitchell's expert testimony

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

as to the inherent and express disclosure of the anticipating Edeland reference — based solely on Kyphon's bare assertion that Dr. Mitchell's testimony will confuse or mislead the jury.

As with Kyphon's motion in limine no. 1, this Court should reject Kyphon's late effort to make a summary judgment motion on validity. Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. Of Educ., 913 F.2d 1064, 1069 (3rd Cir. 1990) Motions in limine typically seek to prevent the injection of prejudicial, confusing, or misleading material into trial. See Fed.R.Evid. 403. Given that Kyphon has not sought summary judgment as validity of its patents, it is now the fact finder's job to determine whether or not the Edeland reference anticipates the claimed inventions of the '404 and '888 patents. Dr. Mitchell should be able to testify and elaborate on his proffered opinions as to how the Edeland reference discloses each and every limitation of the asserted claims of the patents.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

## CONCLUSION

For the reasons set forth above, DOT respectfully requests that Kyphon's Motion in _Limine_ to preclude Dr. Mitchell's expert testimony on the procedure disclosed in the Edeland anticipatory reference be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

_Attorneys for Defendants Disc-O-Tech Medical
Technologies, Ltd. and Disc Orthopaedic Technologies Inc._

OF COUNSEL:

Eric J. Lobenfeld
Jonathan M. Sobel
Arlene L. Chow
Robert J. DeMento
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

May 12, 2005

**EXHIBIT 1**

Attachment

REDACTED DOCUMENT

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served this 12th day of May, 2005 upon the following in the manner indicated:

### BY HAND DELIVERY

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

Maryellen Noreika (#3208)

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KYPHON INC.,                                    )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )        C.A. No. 04-204-JJF
                                               )
DISC-O-TECH MEDICAL TECHNOLOGIES               )        **CONFIDENTIAL – FILED**
LTD., and DISC ORTHOPAEDIC                      )        **UNDER SEAL**
TECHNOLOGIES, INC.,                            )
                                               )
                    Defendants.                )
                                               )
                                               )

## DOT'S OPPOSITION TO KYPHON'S MOTION IN LIMINE 3 OF 5 TO PRECLUDE ADMISSION OF, OR REFERENCE TO, KYPHON'S DISCUSSIONS WITH THE FDA REGARDING KYPHON'S COMMERCIAL KYPHX IBT DEVICES

Defendants Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic Technologies, Inc. ("DOT") submits this memorandum in opposition to Kyphon's motion In Limine to Preclude Admission of, or Reference to, Kyphon's Discussions with the FDA Regarding Kyphon's Commercial KyphX IBT Devices.

### PRELIMINARY STATEMENT

Kyphon's motion in limine mischaracterizes the purpose for which DOT has used, and intends to use, Kyphon's statements to the FDA in Kyphon's 510(k). DOT has not used, and does not intend to use, Kyphon's statements for the primary purpose of characterizing Kyphon's commercial embodiment. Rather, DOT has used, and intends to use, Kyphon's 510(k) statements to show how Kyphon has characterized the features and functionality of one of the

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

main pieces of prior art in this case (the Olerud article), as well as the features and functionality of a wealth of prior art, relating to both conventional bone tamps and bone filler material. Those statements are highly relevant to the invalidity issues in this case.

A primary contention of DOT's is that if the claims of the '404 and '888 patents-in-suit do not require a balloon, then they would be so broad as to encompass the prior art of conventional bone tamps. Kyphon summarized the claimed invention in its claim construction presentation to the Special Master as follows:

> **Claimed Invention:**
> * i. Forming passage
> * ii. Compacting to enlarge said passage
> * iii. Filling cavity

(D.I. 192, Kyphon's presentation at claim construction and summary judgment hearing ("Kyphon Presentation"), held on April 19, 2005, at p. 2.) DOT intends to use Kyphon's 510(k) statements to show, inter alia, Kyphon's acknowledgement that conventional bone tamps were used to perform the steps of the claimed invention since well before Kyphon applied for its earliest patents. Similarly, DOT will show that Kyphon characterized the Olerud prior art reference as performing the steps of the claimed invention.

Kyphon argues that its characterization of the prior art in the 510(k) is a different context from the patents, and that those characterizations therefore are irrelevant to whether the prior art discloses the elements of the claimed invention. That argument is belied by Kyphon's representation to this Court on numerous occasions that the "plain and ordinary meaning" of each of the claim terms in the patents should control. (See, e.g., D.I. 145, Kyphon's claim construction memorandum, at p. 3 (Kyphon argued: "Because no basis exists for departing from the plain and ordinary meaning of the claim terms that were approved by the U.S. Patent &

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

<u>Trademark Office</u>, and in particular there is no basis for limiting the scope of Kyphon's

pioneering inventions to just the use of a balloon as an expandable device, DOT's arguments

must be rejected.") (emphasis added).)

      Thus, by way of example, having described the prior art as compacting cancellous

bone to reduce the fracture (as Kyphon does in its 510(k) with respect to the Olerud prior art

reference, and with respect to conventional bone tamps, in general), Kyphon cannot now claim

that those statements have no relevance to that claim element. Kyphon's characterization of the

prior art reflects the epitome of relevance.

      Moreover, this is not a circumstance (like the one Kyphon cites at page 3 of its

motion) where DOT is saying, in effect, "look at Kyphon's description <u>of its own device</u> in

Kyphon's 510(k); Kyphon's device matches the prior art, and therefore the prior art anticipates

the claims in the patents." By contrast, this is a circumstance where DOT is saying "look at how

Kyphon has characterized the prior art in a sworn statement to the FDA; Kyphon has admitted

that a key piece of prior art, and a wealth of other prior art, functions a certain way, and achieves

a certain result." DOT is not using Kyphon's 510(k) statements to show how Kyphon described

its commercial embodiment, the KyphX inflatable bone tamp (IBT). <u>DOT is using Kyphon's</u>

<u>510(k) statements for a very different purpose – to show how Kyphon described the prior art.</u>

## <u>ARGUMENT</u>

### KYPHON SHOULD NOT BE PERMITTED TO CHARACTERIZE THE PRIOR ART ONE WAY AT TRIAL, WHILE HIDING ITS CONTRARY DESCRIPTION OF THE PRIOR ART IN SWORN STATEMENTS TO THE FDA

      Kyphon's representations to the FDA about what (i) the Olerud reference, (ii)

conventional bone tamps in general, and (iii) bone filler materials do, and what they are capable

of doing, belie Kyphon's characterization of the prior art in this case. DOT should be permitted

- 3 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

to use Kyphon's prior statements to discredit Kyphon's litigation-inspired characterization of the

prior art.

A.    Kyphon Characterized The Olerud Reference in its 510(k)

        With respect to the Olerud prior art reference, the following is a slide from

Kyphon's presentation to the Special Master at the summary judgment and claim construction

hearing.  It reflects Kyphon's contention, in opposition to DOT's invalidity summary judgment

motion, that Olerud does not disclose increasing the size of the passage within the vertebra:



(D.I. 192, Kyphon Presentation at p. 26.)

        Kyphon's statements to the FDA belie that assertion.  Those statements are

acknowledgements by ones skilled in the art (the authors of Kyphon's 510(k)) that Olerud (the

reference pictured above in Kyphon's presentation slide, and below in Kyphon's 510(k)

submission) discloses creating a passage in a vertebra, and thereafter compacting cancellous

bone to increase the size of that passage and create a void in the vertebra, to achieve a reduction

of the fracture, by pushing the end plates of the bone apart:

- 4 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

REDACTED

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

(Kyphon 510(k), at KY 4841-42. A copy of the 510(k) portions appearing herein are attached as Exhibit 1 hereto.)

DOT is not using these statements to show how Kyphon's commercial embodiment works – which is Kyphon's argument for excluding this evidence. DOT is using this evidence to show that Kyphon acknowledged in sworn statements to the FDA that the Olerud prior art reference discloses forming a passage in the vertebra, and compacting cancellous bone to increase the size of that passage. Kyphon should not be permitted to escape those representations regarding the prior art.

B.    Kyphon Characterized the Prior Art Relating to Bone Filler Material in its 510(k)

With respect to Kyphon's bone filler material argument, Olerud discloses the third element of the independent claims of the '404 and '888 patents-in-suit – i.e., filling the passage with material capable of setting to a hardened condition. There is no time element in the claims with respect to how long the material takes to set to a hardened condition. (Kyphon's motion in limine (section II) even concedes that the patent discloses merely a best mode.) DOT intends to rely on Kyphon's statements acknowledging that bone filler materials that set to a hardened condition were well known in the art for decades, to show anticipation of this element, and to underscore that Kyphon did not invent anything with respect to using bone filler to fill voids in bone. Kyphon's statements are relevant to what one of skill in the art understands the prior art to disclose.

Kyphon's statements are also relevant because if the bone filler element is not limited as to the time it takes for the material to harden -- as DOT contends -- then the fact that Kyphon cited one of DOT's prior art references (i.e., the Dick reference, item 1 in the 510(k) portion shown below) as an example of bone paste that one can use to fill a void in bone,

- 6 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

indicates that bone paste was disclosed in the prior art as a material capable of setting to a

hardened condition that can be used to fill the void created by the claimed invention.

Kyphon's bone filler statements include, by way of example, the following:

REDACTED

- 7 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

REDACTED

(Kyphon's 510(k), at KY 4593.)

Kyphon is hard-pressed to argue that bone paste is not a material capable of setting to a hardened condition, that can be used to fill a void in bone, when the evidence will show that bone paste sets to a hardened condition, and Kyphon's 510(k) statements show that it can be used to fill a void created in bone.

- 8 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

Kyphon's argument about having to explain off-label use is an irrelevant complication to this motion, and does not alter the relevance of the evidence. Nor does it suggest undue prejudice, because whether Kyphon was, in practice, using bone <u>cement</u> in an approved (on-label) or unapproved (off-label) manner, does not overcome or change the fact that Kyphon represented to the FDA that bone <u>paste</u>, also known as bone graft paste, is suitable to fill a void in bone – <u>i.e.</u>, is a material capable of setting to a hardened condition that can be used to fill the void created by the patented invention.

C.    <u>Kyphon Characterized Conventional Bone Tamps, in General in its 510(k)</u>

Kyphon's statements to the FDA also repeatedly acknowledge that conventional bone tamps have been used for decades (<u>i.e.</u>, since well before the applications for the patents-in-suit were filed) to create voids in bone:

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

REDACTED

(Kyphon 510(k), at KY 004489.)

Kyphon further specifically acknowledged in its 510(k) that such conventional bone tamps in the prior art create voids by compacting cancellous bone:

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

REDACTED

(Kyphon 510(k), at KY 004843.)

The claims at issue involve a number of the above elements disclosed by conventional bone tamps, such as creating a passage, compacting cancellous bone, drilling, guiding the drill under x-ray. Kyphon's contention that its description of the prior art is irrelevant to whether the prior art discloses these elements, based on their the plain and ordinary meaning, is demonstrably unfounded.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

## CONCLUSION

For the reasons set forth above, DOT respectfully requests that Kyphon's motion _in limine_ to Preclude Admission of, or Reference to, Kyphon's Discussions with the FDA Regarding Kyphon's Commercial KyphX IBT Devices be denied in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

_Attorneys for Defendants Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic Technologies Inc._

OF COUNSEL:

Eric J. Lobenfeld
Jonathan M. Sobel
Arlene L. Chow
Robert J. DeMento
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

May 12, 2005

**EXHIBIT 1**

# REDACTED DOCUMENT

<u>**CERTIFICATE OF SERVICE**</u>

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served this 12th day of May, 2005 upon the following in the manner indicated:

<u>**BY HAND DELIVERY**</u>

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

Maryellen Noreika (#3208)

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KYPHON INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-204-JJF |
| | ) | |
| DISC-O-TECH MEDICAL TECHNOLOGIES | ) | **CONFIDENTIAL – FILED** |
| LTD., and DISC ORTHOPAEDIC | ) | **UNDER SEAL** |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DOT'S MEMORANDUM IN OPPOSITION TO KYPHON'S
MOTION *IN LIMINE* NO. 4 OF 5 TO PRECLUDE ADMISSION OF,
OR REFERENCE TO, ANY DOT PATENTS OR PATENT APPLICATIONS
THAT COVER THE ACCUSED DEVICE**

Defendants Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic
Technologies, Inc. ("DOT") respectfully submit this memorandum in opposition to Kyphon's
Motion In Limine No. 4 of 5, To Preclude Admission Of, Or Reference To, Any DOT Patents Or
Patent Applications That Cover the Accused Device ("Kyphon's Motion").

**PRELIMINARY STATEMENT**

Kyphon's Motion ignores clear Federal Circuit precedent that "separate
patentability" may be relevant to issues of infringement, and particularly useful in evaluating
infringement under the doctrine of equivalents. DOT's patents and applications ("DOT's
Patents"), and evidence related thereto, are probative, first, of the doctrine of equivalents

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

analysis. DOT does not intend to use the DOT Patents to argue that they prove non-infringement; they will only be used for the purposes expressly permitted by the Federal Circuit, as is detailed below.

DOT's Patents are also probative of the separate issue of willful infringement. Kyphon has brought this motion under the guise that evidence of "separate patentability" will mislead and confuse the jury, in an attempt to preclude DOT from telling its side of the story, which provides the complete and accurate facts showing lack of willfulness. Kyphon intends to argue to the jury that DOT is the "evil willful infringer," and that DOT has knowingly and willfully copied Kyphon's devices and inventions claimed in Kyphon's patents-in-suit.[1] But Kyphon's anticipated arguments are contrary to the record already before the Court (see DOT's summary judgment opposition brief; D.I. 164, at p. 4), and to the evidence that will be presented at trial.

As the record reflects, DOT has a long history of innovation since the company's inception in 1998. The company's goal is to develop minimally invasive implants and devices in the field of metal and plastic folding and expansion. DOT has been developing these products since 1998, and the accused SKy device is based on the same principles of operation as DOT's early products, for which DOT has sought, and continues to seek, patent protection. As the record reflects, DOT first became aware of Kyphon's patents in November, 2002. But DOT's Patents, as evidenced by their filing dates, reflect that the SKy Device concept and its principles of operation were under development well before DOT even become aware of Kyphon or its products. Thus, DOT's Patents help to paint the correct picture of DOT, as an innovator that

---

[1]     DOT disputes that there is any basis for Kyphon's arguments, and questions whether a basis for such an argument even exists in the record.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

independently developed its own product. This evidence directly rebuts the misleading and erroneous picture that Kyphon wishes to paint for the jury – that DOT, the "evil willful infringer," merely copied its devices.

## ARGUMENT

The "separate patentability" of DOT's products is relevant to both infringement under the doctrine of equivalents and willful infringement. As the Federal Circuit has held: "Whether [the accused device] is within the scope of the prior patent, literally or by equivalency, depends on the particular facts. The fact of separate patentability is relevant, and is entitled to due weight." National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1191-92 (Fed. Cir. 1996).

More specifically, the issue of separate patentability is particularly relevant to the "insubstantial differences" inquiry in a doctrine of equivalents infringement analysis. See Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of the accused device, evidenced by the grant of a U.S. Patent, is relevant to the issue of whether the change therein is substantial."); see also Glaxo Wellcome, Inc. v. Andrx Pharm., Inc., 344 F.3d 1226, 1233 (Fed. Cir. 2003) (noting relevance of separate patentability to issue of "insubstantial change" equivalents inquiry).[2]

---

[2]     Judge Nies further explained the relevance of "separate patentability" in determining infringement under the doctrine of equivalents:

It is a truism that the fact that an accused device is itself patented does not preclude a finding that such device infringes an earlier patent of another. However, the fact of a second patent, depending on its subject matter, may be relevant to the issue of whether the changes are substantial. If the second patent requires practice of the first i.e., the second merely adds an element "D" to a patented combination A + B + C, the combination A + B + C + D clearly infringes. Conversely, if the second patent is granted for A + B + D over one claiming A + B + C, the change from C to D must not have been obvious to be validly patented. Evidence of a patent covering the change,

- 3 -

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

At trial, Kyphon will attempt to show that the SKy Device infringes the patents-in-suit under the doctrine of equivalents. DOT's Patents, and particularly the specifications and claims of the patents, are probative of the fact that, under a doctrine of equivalents analysis, the differences between the SKy Device are substantial when compared to the claims of the patents-in-suit. See Zygo Corp., 79 F.3d at 1570. As the parties' briefing at the Summary Judgment phase reflects, the parties dispute whether a surgeon's use of the SKy Device performs the same function as the patents-in-suit, in substantially the same way, to achieve substantially the same result. The DOT Patents illustrate that the SKy Device may perform the same function, but does so in a substantially different way to achieve a substantially different result.

Kyphon points to this Court's citation of Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318 (Fed. Cir. 2000), for the proposition that "it is well established that separate patentability does not avoid equivalency as a matter of law." CIENA Order, D.I. 517 at 2 (citing Fiskars, 76 F.3d at 1324).[3] Then, as if Fiskars was the only precedent relied upon by this Court, Kyphon broadly states that "this Court ruled that the accused infringer's separate patents were irrelevant to the issue of infringement." Kyphon's Motion at p. 1 (citing CIENA Order, D.I. 517 at 2).

---

in my view, is clearly relevant unless the patent is invalid. A substitution in a patented invention cannot be both nonobvious and insubstantial. I would apply nonobviousness as the test for the "insubstantial change" requirement of Hilton Davis.

Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1128 (Fed. Cir. 1996) (Nies, J., concurring) (citation omitted; emphasis added).

[3]    Kyphon points to the Fiskars decision in several places in its Motion for support of its argument that evidence of separate patentability is not relevant to the issue of infringement. But the issue of relevance of separate patentability per se was not the issue before the Federal Circuit. The issue in Fiskars was whether the district court was properly within its discretion in refusing to allow the alleged infringer to present evidence to the jury of separate patentability. Fiskars, 221 F.3d at 1324. The Federal Circuit held that "[t]he admission or exclusion of evidence not material to the issue of infringement is consigned to the discretion of the trial judge." Id.

- 4 -

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

Kyphon's reliance on this Court's citation to <u>Fiskars</u> ignores the very next sentence of the Court's Order, which acknowledges that the relevance of separate patentability depends on the particular facts of the case. <u>CIENA Order</u>, D.I. 517 at 2 ("Whether a modified device is within the scope of the prior patent, literally, or by equivalency, depends on the particular facts.") (citing <u>National Presto Indus., Inc.</u>, 76 F.3d at 1191-92). And as this Court explicitly stated, it issued its decision <u>based on the facts of the particular case</u>. See <u>CIENA Order</u>, D.I. 517 at 2 ("Based on the facts of the instant case, the court concluded that Corvis' separate patents are irrelevant to the issue of infringement.").

Kyphon also points to this Court's quotation of <u>Union Carbide Corp. v. Tarancon Corp.</u>, 742 F. Supp. 1565, 1577 (N.D. Ga. 1990), for support of its argument that the evidence of separate patentability will be confusing and misleading to the jury. That case involved a different factual context from the instant case. In <u>Union Carbide</u>, the alleged infringer applied for and was issued a patent on his technique. <u>Id.</u> At the time he applied for his own patent, the alleged infringer was aware of the patent he was later found to infringe, and supplied the patent to his patent attorney. <u>Id.</u> The court found that the alleged infringer "was aware of the possibility of infringement, and believed that his consultation [with his attorney] would inform him of potential infringement activity." An important detail omitted from Kyphon's brief is that the court in <u>Union Carbide</u> actually held that "[the alleged infringer's] belief that he was protected [by obtaining a patent on his device] is evidence that the infringement was <u>not</u> willful." <u>Id.</u> (emphasis added).

In contrast to <u>Union Carbide</u>, DOT sought patents on its devices before it even became aware of Kyphon or Kyphon's patents, as evidenced by the subject matter and filing

- 5 -

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER**

dates of DOT's patents.  Therefore, DOT's Patents are highly relevant to the issue of willful

infringement, and should be admitted into evidence.

Finally, aside from Kyphon's citation to this Court's Order in <u>CIENA Corp.</u> and

an out-of-context citation to <u>Union Carbide</u>, Kyphon has failed to articulate why, given the

particular facts of this case, DOT's Patents will mislead or confuse the jury.  As DOT has

demonstrated, the DOT's Patents have significant probative value on the issues of willful

infringement and infringement under the doctrine of equivalents, which substantially outweighs

any risk of confusing or misleading the jury.

## CONCLUSION

For the reasons set forth above, DOT respectfully requests that Kyphon's Motion

*In Limine* To Preclude Admission Of, Or Reference To, Any DOT Patents Or Patent

Applications That Cover the Accused Device, be denied in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL

Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Defendants Disc-O-Tech Medical
Technologies, Ltd. and Disc Orthopaedic Technologies
Inc.*

OF COUNSEL:
Eric J. Lobenfeld
Jonathan M. Sobel
Arlene L. Chow
Robert J. DeMento
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

May 12, 2005

- 6 -

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served this 12th day of May, 2005 upon the following in the manner indicated:

### BY HAND DELIVERY

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114


_____
Maryellen Noreika (#3208)

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KYPHON INC.,                                )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )    C.A. No. 04-204-JJF
                                            )
DISC-O-TECH MEDICAL TECHNOLOGIES            )
LTD., and DISC ORTHOPAEDIC                  )
TECHNOLOGIES, INC.,                         )
                                            )
                Defendants.                 )
                                            )

## DOT'S MEMORANDUM IN OPPOSITION TO KYPHON'S MOTION *IN LIMINE NO. 5 OF 5* TO PRECLUDE REFERENCE TO KYPHON'S STREAMLINING OF ITS INFRINGEMENT CLAIMS

Defendants Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic Technologies, Inc. ("DOT") respectfully submit this memorandum in opposition to Kyphon's Motion In Limine to Preclude Reference to Kyphon's Streamlining of Its Infringement Claims.

## ARGUMENT

DOT does not dispute the mere fact that Kyphon's "efforts to simplify this case for trial are not relevant to the merits of any issue being presented to the jury." But DOT submits that the substance of the '110 Patent (which is in the same family of patents as the patents-in-suit), including the claims, specification and prosecution history is relevant to the issues of infringement that will be before the jury, and DOT should be allowed to make arguments at trial based on the claims and specification of the Patent.

The '110 Patent, which was previously a part of this suit (but which Kyphon has studiously avoided formally dropping from the complaint), is derived from a chain of continuation-in-part patent applications, with the first application bearing Ser. No. 08/188,224, which is now abandoned. The '043 Patent, one of the patents-in-suit, is a continuation of that same first application. As a patent from the same family as one of the patents-in-suit, the '110 Patent is relevant to a proper reading of both the specification and claims of the '043 Patent.

## CONCLUSION

For the reasons set forth above, DOT respectfully requests that Kyphon's Motion In Limine To Preclude Reference to Kyphon's Streamlining of Its Infringement Claims, be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

*Attorneys for Defendants Disc-O-Tech Medical
Technologies, Ltd. and Disc Orthopaedic Technologies Inc.*

OF COUNSEL:

Eric J. Lobenfeld
Jonathan M. Sobel
Arlene L. Chow
Robert J. DeMento
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

May 12, 2005

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of the foregoing were caused to be served this 12th day of May, 2005 upon the following in the manner indicated:

**BY HAND DELIVERY**

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114


_____
Maryellen Noreika (#3208)