9.1

**<u>Appendix 9.1</u>**

**DOT's [Proposed] General Jury Instructions**

Page

1    GENERAL INSTRUCTIONS ...........................................................................2

   1.1    INTRODUCTION ...................................................................................2

   1.2    JURORS' DUTIES ..................................................................................3

   1.3    BURDEN OF PROOF [Kyphon's]............................................................4

   1.3    BURDEN OF PROOF [DOT's] ................................................................6

   1.4    EVIDENCE DEFINED ...........................................................................7

   1.5    CONSIDERATION OF EVIDENCE ........................................................8

          1.5.1   USE OF NOTES .......................................................................9

   1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE ...............................10

   1.7    CREDIBILITY OF WITNESSES .........................................................11

   1.8    NUMBER OF WITNESSES ..................................................................12

   1.9    EXPERT WITNESSES .........................................................................13

   1.10   DEPOSITION TESTIMONY .................................................................14

   1.11   DEMONSTRATIVE EXHIBITS ...........................................................15

2    THE PARTIES AND THEIR CONTENTIONS .........................................16

   2.1    THE PARTIES........................................................................................16

   2.2    KYPHON'S CONTENTIONS ...............................................................17

   2.3    DOT'S CONTENTIONS........................................................................18

   2.4    SUMMARY OF PATENT ISSUES ......................................................19

3    INFRINGEMENT.........................................................................................20

   3.1    CLAIM INFRINGEMENT.....................................................................20

   3.2    CONSTRUCTION OF CLAIMS [Kyphon's].........................................21

   3.2    CONSTRUCTION OF CLAIMS [DOT's]...............................................24

   3.3    DEPENDENT AND INDEPENDENT CLAIMS
          [Kyphon's] .............................................................................................25

   3.3    DEPENDENT AND INDEPENDENT CLAIMS [DOT's]....................27

- i -

3.4     PATENT INFRINGEMENT — GENERALLY ....................................28

3.5     DIRECT INFRINGEMENT ......................................................29

        3.5.1   DIRECT INFRINGEMENT – METHOD CLAIMS
                [Kyphon's] .............................................................30

        3.5.1   DIRECT INFRINGEMENT – METHOD CLAIMS
                [DOT's]...................................................................32

3.6     LITERAL INFRINGEMENT ....................................................33

3.7     DOCTRINE OF EQUIVALENTS [Kyphon's] .....................................34

3.7     DOCTRINE OF EQUIVALENTS  [DOT's]..........................................38

        3.7.1   LIMITATIONS ON DOCTRINE OF
                EQUIVALENTS [DOT's]................................................41

3.8     OPEN-ENDED OR "COMPRISING" CLAIMS ..................................43

3.85    REVERSE DOCTRINE OF EQUIVALENTS [DOT's].......................44

3.9     INFRINGEMENT DESPITE DOT's IMPROVEMENTS
        OR PATENTS ON IMPROVEMENTS ...................................45

3.10    WILLFUL INFRINGEMENT [Kyphon's]..................................46

3.10    WILLFUL INFRINGEMENT [DOT's] ....................................48

4   VALIDITY ...........................................................................50

4.1     PRESUMPTION OF VALIDITY...........................................50

4.2     ANTICIPATION [Kyphon's]................................................51

4.2     ANTICIPATION [DOT's]......................................................53

        4.2.1   PRINTED PUBLICATION [Kyphon's] .....................................55

        4.2.1   PRINTED PUBLICATION [DOT'S] .........................................57

4.3     OBVIOUSNESS .................................................................58

        4.3.1   SCOPE AND CONTENT OF PRIOR ART
                [Kyphon's] .............................................................59

        4.3.1   SCOPE AND CONTENT OF PRIOR ART
                [DOT's]...................................................................61

        4.3.2   DIFFERENCES OVER THE PRIOR ART................................63

        4.3.3   LEVEL OF ORDINARY SKILL [Kyphon's]............................64

4.3.3    LEVEL OF ORDINARY SKILL [DOT's]..................................66

4.3.4.   OBJECTIVE CRITERIA CONCERNING
         OBVIOUSNESS [Kyphon's] .......................................67

4.3.4    OBJECTIVE CRITERIA CONCERNING
         OBVIOUSNESS [DOT's] ...........................................69

4.3.5    MOTIVATION TO COMBINE [Kyphon's]..............................70

4.3.5    MOTIVATION TO COMBINE [DOT's] ..................................72

4.3.6    OBVIOUSNESS - HINDSIGHT ........................................73

4.3.7    NON-OBVIOUSNESS [Kyphon's].....................................74

4.3.8    TEACHING AWAY OF PRIOR ART [Kyphon's] ...................76

4.3.9    OBVIOUSNESS TO TRY ...............................................78

DAMAGES....................................................................................79

5.0      EFFECT OF INSTRUCTION .................................................79

5.1      COMPENSATORY DAMAGES IN GENERAL ...................................80

5.2      REASONABLE CERTAINTY ..................................................81

5.3      METHODS FOR COMPUTING DAMAGES [Kyphon's] ...................82

5.3      METHODS FOR COMPUTING DAMAGES [DOT's] ........................84

5.4      LOST PROFITS — LOST SALES [Kyphon's]......................................85

5.4      LOST PROFITS – LOST SALES [DOT's]..........................................87

         5.4.1    DEMAND FOR THE PATENTED PRODUCT .......................88

         5.4.2    PATENT OWNER'S MANUFACTURING AND
                  MARKETING CAPACITY..........................................89

         5.4.3    ABSENCE OF ACCEPTABLE
                  NONINFRINGING SUBSTITUTES [Kyphon's]......................90

         5.4.3    ABSENCE OF ACCEPTABLE
                  NONINFRINGING SUBSTITUTES [DOT's]..........................92

         5.4.4    AMOUNT OF LOST PROFITS [Kyphon's] .............................93

         5.4.5    COMPUTATION OF LOST PROFITS [Kyphon's].................95

5.5      REASONABLE ROYALTY AS A MEASURE OF
         DAMAGES  [Kyphon's 5.6] ...................................................97

5.5     REASONABLE ROYALTY AS A MEASURE OF
        DAMAGES [DOT's] ............................................................99

        5.5.1   FACTORS FOR DETERMINING REASONABLE
                ROYALTY .............................................................100

5.6     INTEREST ...............................................................................102

5.7     CLOSING STATEMENT — DAMAGES ...........................................103

6.   DELIBERATION AND VERDICT ....................................................104

6.1     INTRODUCTION ...................................................................104

6.2     UNANIMOUS VERDICT ..........................................................105

6.3     DUTY TO DELIBERATE ..........................................................106

6.4     COURT HAS NO OPINION .......................................................107

# 1    GENERAL INSTRUCTIONS

## 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

### 1.2    JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3    BURDEN OF PROOF [Kyphon's]

This is a civil case in which Kyphon is charging Disc-O-Tech Medical Technologies Ltd. and Disc Orthopaedic Technologies, Inc., which are collectively referred to as "DOT," with patent infringement.  Kyphon has the burden of proving patent infringement by what is called a preponderance of the evidence.  That means Kyphon has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Kyphon claims is more likely true than not.  To put it differently, if you were to put Kyphon's and DOT's evidence on the opposite sides of a scale, the evidence supporting Kyphon's claims would have to make the scales tip somewhat on Kyphon's side.

DOT is charging that Kyphon's patents are invalid.  The patents, however, are presumed to be valid.  Accordingly, DOT has to prove that the patents are invalid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden then proof by a preponderance of the evidence.

Finally, those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and does not play any part in this case.  Therefore, you should not consider it at all in your deliberations.

**<u>DOT's Objection to Kyphon's Instruction No. 1.3:</u>**[1]

Kyphon's proposed instruction is unclear and reflects a bias favoring Kyphon because it limits the instruction with respect to "clear and convincing evidence" to Kyphon only.  DOT's instruction follows the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 1.3.

---

[1] Kyphon is reviewing DOT's objections and proposed alternative instructions, served on May 11, 2005, and will continue its efforts to meet and confer with DOT to minimize issues regarding these instructions to the maximum extent practicable.

### 1.3    BURDEN OF PROOF [DOT's][2]

This is a civil case in which plaintiff, Kyphon Inc. is charging defendants Disc-O-Tech Medical Technologies Ltd. and Disc Orthopaedic Technologies, Inc. with patent infringement.  I will refer to plaintiff as "Kyphon" and to defendants as "DOT."

Kyphon has the burden to prove its claims of patent infringement and its claims of damages by a preponderance of the evidence.  That means Kyphon must produce evidence that, when considered in light of all of the facts, leads you to believe that what Kyphon claims is more likely true than not.  To put it differently, if you were to put Kyphon's and DOT's evidence on the opposite sides of a scale, the evidence supporting Kyphon's claims would have to make the scales tip somewhat on its side.

DOT contends that Kyphon's patents are invalid.  The patents, however, are presumed to be valid.  Accordingly, DOT has to prove that the patents are invalid by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In addition, Kyphon must prove its claims of willful infringement by clear and convincing evidence and not preponderance of the evidence, the standard that applies to Kyphon's other claims in this case.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

---

[2] Modeled on proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 1.3.

### 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.5    CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.5.1   USE OF NOTES

You may use notes taken during trial to assist your memory.  As I instructed earlier however, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.7    CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### 1.8   NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 1.9    EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

**1.10  DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### 1.11  DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## 2    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

The plaintiff in this case is Kyphon Inc.  The defendants are Disc-O-Tech Medical Technologies Ltd. and Disc Orthopaedic Technologies, Inc.  I will refer to plaintiff as "Kyphon" and to defendants as "DOT."

## 2.2    KYPHON'S CONTENTIONS

Kyphon contends that, despite DOT's knowledge of Kyphon's patents, DOT has infringed, and continues to infringe, various claims of Kyphon's patents by making, using, selling, offering for sale, and marketing certain surgical devices.  Specifically, Kyphon charges that DOT has infringed, and continues to infringe, Claims 1, 3, 7-9, 11, and 14 of U.S. Patent No. 4,969,888; Claims 1, 3, 8-10, 12, and 15 of U.S. Patent No. 5,108,404; Claims 2, 17, 20, 23-26, and 28 of U.S. Patent No. 6,235,043; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of U.S. Patent No. 6,241,734; and Claims 26-29, 36-39, 41-44, and 46-49 of U.S. Patent No. 6,613,054.  I will refer to these five patents collectively as "patents-in-suit," or individually by the last three numbers of the patents.

Kyphon contends that DOT's SKy Bone Expander System, when used as directed by DOT, practices Kyphon's patented methods.  Kyphon also contends that the bone filler devices used with DOT's SKy Bone Expander System are covered by Kyphon's device patents.  Kyphon further contends that it has been damaged by DOT's infringement in the amount of the profits that Kyphon would have made, but lost, as a result of DOT's willful infringement.

### 2.3    DOT'S CONTENTIONS

DOT contends that its products do not infringe, literally or under the doctrine of equivalents, any of the asserted claims of the patents-in-suit.  DOT further claims that it at all times acted in good faith and denies any willful infringement contentions by Kyphon.

DOT further contends that the asserted claims of the patents-in-suit are invalid as anticipated and/or obvious in light of the prior art.  DOT contends that if you were to find any infringement by DOT, damages would be limited to a reasonable royalty.

**2.4    SUMMARY OF PATENT ISSUES**

In this case, you must decide the issues according to the instructions I give you.  In general these issues are:

1.      Whether Kyphon has proven by a preponderance of the evidence that DOT has infringed any of the asserted claims of the patents-in-suit.

2.      If you find any of the asserted claims of the patents-in-suit are infringed, whether Kyphon has proven by clear and convincing evidence that DOT's infringement was willful.

3.      Whether DOT has proven by clear and convincing evidence that any of the asserted claims of the patents-in-suit are invalid.

4.      If you find any of the asserted claims of the patents-in-suit are valid and infringed, the amount of damages that Kyphon has proven by a preponderance of the evidence is due to it.

# 3    INFRINGEMENT

## 3.1    CLAIM INFRINGEMENT

Before you can decide whether or not DOT has infringed any of Kyphon's patents, you will have to understand the patent "claims."  Patent claims are the numbered paragraphs at the end of a patent.  The patent claims involved here are Claims 1, 3, 7-9, 11, and 14 of the '888 patent; Claims 1, 3, 8-10, 12, and 15 of the '404 patent; Claims 2, 17, 20, 23-26, and 28 of the '043 patent; Claims 1, 3-5, 7, 8, 10-17, and 19-21 of the '734 patent; and Claims 26-29, 36-39, 41-44, and 46-49 of the '054 patent.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.  Only the claims of a patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually, and to show patent infringement, Kyphon need only establish that one claim has been infringed.

When making your decision regarding infringement, you should not compare DOT's SKy Bone Expander devices with any specific example set out in the patents-in-suit, or with any product manufactured by Kyphon.  Rather, you must only compare DOT's SKy Bone Expander devices with the asserted claims of the patents-in-suit.

### 3.2    CONSTRUCTION OF CLAIMS [Kyphon's]

It is my duty under the law to define what the patent claims mean.  In this case, certain of the terms have been disputed and I have made my determination, and will now instruct you, on the meaning of such terms.  The meanings I give you should be interpreted by you in accordance with their normal dictionary meanings.  Except where the Court has directed otherwise, all other claim language should be interpreted in accordance with its ordinary and accustomed meaning.

You are advised that the following definitions for the following terms must be applied:

The following definitions for the following terms must be applied:

1.    The term "bone marrow" means a combination of the connective tissue and the cancellous bone framework inside a bone.

2.    The term "forming a passage in the bone marrow" means forming a path or channel into the interior of the bone through the bone marrow.

3.    The term "compacting the bone marrow to increase the volume of said passage" means compacting the bone marrow to increase the volume of the passage created by the surgeon, so that the resulting cavity can then be safely filled with a flowable material.

4.    The term "filling the passage with a flowable material" means filling the passage with a material that is at some point in a fluid state (i.e., capable of flowing on its own).

5.    The term "drilling said bone marrow" means rotating a shaft with one or more cutting edges to bore a hole into and through the bone marrow in the interior of the bone.

6.    The term "a body adapted to be inserted into bone and undergo expansion in cancellous bone" means a body adapted to be inserted into bone and to undergo an increase in size while in cancellous bone.

7.     The term "a tamping instrument capable of advancement into the subcutaneous cannula" means a tamping instrument capable of advancing through any point within the subcutaneous cannula, where the tamp and the cannula may consist of one or more components.

8.     The term "material residing in the subcutaneous cannula" means material located at any point within the subcutaneous cannula.

9.     The term "[a] tamping instrument being sized and configured for manipulation independent of the cannula to enable insertion of the tamping instrument into the cannula" means a tamping instrument being sized and configured for manipulation independent of the cannula to enable insertion of the tamping instrument through any point within the cannula, where the tamp and the cannula may consist of one or more components.

10.     The terms "[a] tamping instrument . . . for . . . advancement of the tamping terminus in the cannula" and "a tamping instrument for advancement through the cannula" means a tamping instrument for advancement through any point within the cannula, where the tamp and the cannula may consist of one or more components.

**DOT's Objection to Kyphon's Instruction No. 3.2:**

Kyphon's proposed instruction is premature, given that the Special Master's decision as to claim construction is still pending.  DOT's instruction follows the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.3.2.

### 3.2    CONSTRUCTION OF CLAIMS [DOT's]3

It is the Court's duty under the law to define what the patent claims mean.  I have made my determination and I will now instruct you on the meaning of each claim.  You must apply the meaning that I give in each patent claim to decide if such claim is valid and infringed.  You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the '404 patent are toward the end, starting in column 9.  The claims of the '888 patent are toward the end, starting in column 9.  The claims of the '043 patent are toward the end, starting in column 14.  The claims of the '734 patent are toward the end, starting in column 19.  The claims of the '054 patent are toward the end, starting in column 19.  I will give you a list of the asserted claims of the patents as part of the verdict form when I conclude my instructions.

A.    '404 and '888 Patents

**[TO BE INSERTED ONCE THE SPECIAL MASTER'S CLAIM CONSTRUCTION IS ISSUED]**

B.    '043 Patent

**[TO BE INSERTED ONCE THE SPECIAL MASTER'S CLAIM CONSTRUCTION IS ISSUED]**

C.    '734 and '054 Patent

**[TO BE INSERTED ONCE THE SPECIAL MASTER'S CLAIM CONSTRUCTION IS ISSUED]**

---

[3] Modeled on the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.3.2.

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS [Kyphon's]

There are two different types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 of the '888 patent is an independent claim.  You know this because this claim mentions no other claims.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claims 3, 7-9, 11, and 14 of the '888 patent, on the other hand, are dependent claims.  For example, Claim 3 refers to Claim 1.  Accordingly, the words of Claims 1 and 3 must be read together in order to determine what the dependent claim, Claim 3, covers.  Likewise, dependent claims 7-9, 11 and 14 must be read together with Claim 1 in order to determine what these dependent claims cover.

Some claims of the patents-in-suit are broader than other claims.  You are not to infer the limitations or words of a narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

**DOT's Objection to Kyphon's Instruction No 3.3:**

Kyphon's proposed instruction is confusing to the jury and incomplete. Kyphon omits the important point that if an independent claim is not infringed, then the claims depending on that claim are not infringed. Further, Kyphon's instruction does not address what "elements" of the claim are. DOT's instruction follows the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.2.2.

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS [DOT's]4

Claims are typically divided into parts called "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate element of the claim.

There are two types of patent claims: independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  In simple terms, an independent claim stands on its own two feet.  An independent claim is read alone to determine the elements that must exist to infringe the claim.  Claim 1 of the '404 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes all of the elements in the claims to which it refers.  Therefore, to determine what a dependent claim covers, you must look at both the dependent claim and the claim or claims to which it refers.

For example, claim 3 of the '404 patent is a dependent claim.  It refers to claim 1.  For a product to infringe dependent claim 3, the product must have all the elements of both claim 1 and claim 3.  Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

---

[4] Modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.2.2.

### 3.4    PATENT INFRINGEMENT — GENERALLY

A patent owner may enforce its right to exclude others from making, using, selling, or offering to sell the patented invention by filing a lawsuit for patent infringement.  Here, Kyphon, the patent owner, has sued DOT, the accused infringer, and has alleged that DOT's SKy Bone Expander devices infringe one or more claims of Kyphon's patents-in-suit.

Patent law provides that any person or business entity which makes, uses, sells, or offers to sell, without the patent owner's permission, any product or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are three ways to infringe a patent.  One may: (1) directly infringe a patent; (2) induce others to infringe a patent, in which case both the inducer and the direct infringer are liable for infringement; or (3) contribute to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement. Next, I will explain each type of infringement more completely.

### 3.5    DIRECT INFRINGEMENT

In this case, if you find that Kyphon has proven by a preponderance of the evidence that DOT has made, used, sold, or offered to sell the invention defined in at least one claim of a patent-in-suit, DOT would be liable for directly infringing that patent.

Keep in mind that a person may directly infringe a patent without knowledge that what he is doing infringes the patent.  He may also infringe even though in good faith he believes that what he is doing does not infringe any patent.

### 3.5.1  DIRECT INFRINGEMENT – METHOD CLAIMS [Kyphon's]

The '888, '404, and '043 patents at issue in this case contain method claims, which involve a series of steps.  A method claim is directly infringed only by one who actually performs the method.  A method claim is not directly infringed by one who merely makes or sells a product that can be used to perform the claimed method, although that person may be liable for either inducing infringement or contributing to infringement by one who does perform the method, as I will describe next.

Here, the parties do not dispute that DOT's Sky Bone Expander System is being used, as directed by DOT, to perform a method of operation on patients.  Nor do the parties dispute that DOT induces and contributes to the performance of these operations which use DOT's Sky Bone Expander System.

However, the parties have a disagreement as to whether the Sky Bone Expander System, when used to perform an operation, performs the steps set forth in the asserted method claims of the '888, '404 and '043 patents.

**<u>DOT's Objection to Kyphon's Instruction No. 3.5.1:</u>**

Kyphon's instruction is argumentative and confusing.  For instance, Kyphon's instruction states that DOT "induces and contributes" to the performance of operations using the SKy Bone Expander, suggesting that DOT induces and/or contributes to infringement.

### 3.5.1   DIRECT INFRINGEMENT – METHOD CLAIMS [DOT's]

The '888, '404, and '043 patents at issue in this case contain method claims, which cover a method involving a specific series of steps.  A method claim is directly infringed only by one who actually performs the method.  A method claim is not directly infringed by one who merely makes or sells a product that can be used to perform the claimed method, although that person may be liable for either inducing infringement or contributing to infringement by one who does perform the method.

Here, the parties do not dispute that DOT's Sky Bone Expander System is being used, as directed by DOT, to perform a surgical operation.

However, the parties disagree as to whether DOT's Sky Bone Expander System, when used to perform a surgical operation as directed, performs the specific series of steps set forth in the asserted method claims of the '888, '404 and '043 patents.

### 3.6    LITERAL INFRINGEMENT

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For DOT's product or method to literally infringe any one of Kyphon's patent claims, the subject matter of the patent claim must be found in DOT's product or method of using its product.  In other words, one of Kyphon's patent claim is literally infringed if DOT's product or method of using its product includes each and every element or step in that claim.  If DOT's product or method of using its product omits any single component or method step recited in Kyphon's patent claim, DOT does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

Remember, the question is whether DOT's product or method of using its product infringes any claim of Kyphon's patents-in-suit, not whether any of DOT's product or method of using its product is similar or even identical to a product made by Kyphon or a method used or promoted by Kyphon.  Accordingly, you must be certain to compare DOT's accused product or method of using its product with the asserted claims, and not with any product made by Kyphon or method used or promoted by Kyphon.

### 3.7    DOCTRINE OF EQUIVALENTS [Kyphon's]

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents. I have referred to the "doctrine of equivalents" before. Now it is time to explain this term. You may find that DOT's product or method of using its product infringes the asserted claims, even if not all of the components or method steps of the claims are literally present in DOT's product or method of using its product. You may find infringement in such circumstances if the components of DOT's product or the steps of the method of using its product are equivalent to that claimed in at least one of Kyphon's patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of its patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for DOT's product or method of using its product to infringe any one of Kyphon's asserted claims under the doctrine of equivalents, the element or step of a patent claim which is not literally found in a DOT product or method must be present by equivalence. This is called the "all elements rule." Therefore, the question is whether the accused product or method contains an equivalent for each element or step of the claim that is not literally present in the accused product or method. The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

The doctrine of equivalents does not require complete equivalence for every purpose and in every respect. You must consider the purpose of the element or step, and the function it is intended to perform. It is not necessary that any single component or step of the accused product or method be equivalent to a particular element or step of the claimed

invention; two or more components or steps of the accused product or method may operate together to be an equivalent of a single element or step of the claimed invention. What is important is that each element or step required by the claim or its equivalent must be present somewhere in the accused device or method.

You should also consider whether the substituted element or step represents a change that a person of ordinary skill in the art would have considered insubstantial at the time of the infringement. In determining whether one or more components or steps of the accused product or method are equivalent to an element or step of the claimed invention, you should consider whether at the time of infringement, persons reasonably skilled in the art would have known of the interchangeability of that component or those components with the element or step claimed in the patent claim. Although the known interchangeability of the accused and claimed elements or steps is not necessary in order to find infringement, known interchangeability is evidence that one of ordinary skill in the relevant art would have considered the change insubstantial. Depending on the circumstances, evidence of independent experimentation by the accused infringer may be considered as evidence that the substituted element or step was not known to be interchangeable with the element claimed in the patent claim.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether DOT's product and its components, or

The test to determine equivalence under the doctrine of equivalents is whether one of ordinary skill in the art would consider that DOT's product and components of the product, or DOT's method of using its product and the steps of that method, perform substantially the same function in substantially the same way to produce substantially the same result compared to Kyphon's claimed product and components, or Kyphon's claimed method and steps. This is called the "function-way-result" test. Exact identity of function, way, and result is not required; substantial identity is sufficient.

35

DOT's method of using its product and the steps are equivalent to that defined in Kyphon's claims is to be determined as of the time of the alleged infringement.

**DOT's Objection to Kyphon's Instruction No. 3.7:**

Kyphon's proposed instruction is erroneous.  For example, Kyphon's instruction is inconsistent with the controlling law with respect to interchangeability.  DOT's instruction accurately reflects the controlling law and tracks the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.4 and 3.5 (which Kyphon omits).

### 3.7    DOCTRINE OF EQUIVALENTS  [DOT's][5]

If you do not find literal infringement of a claim, you may consider infringement under the "doctrine of equivalents."  I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

As I have noted, a claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents.  A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent.  On the other hand, the patent owner should not be deprived of the benefits of its patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.[6]

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for DOT's product or method of using its product to infringe any one of Kyphon's asserted claims under the doctrine of equivalents, the element or step of a patent claim which is not literally found in a DOT product or method must be present by equivalence.  This is called the "all elements rule."  Therefore, the question is whether the accused product or method contains an equivalent for each element or step of the claim that is not literally present in the accused product or method.  The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a  whole.

---

[5] Except where otherwise noted, modeled on the proposed D. Del. Uniform Jury
    Instructions for Patent Cases, dated June 2003, No. 3.4.
[6] Modeled on the D. Del. Uniform Jury Instructions for Patent Cases, dated March 1993,
    Instruction 3.9.

A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding element of the accused product are insubstantial.

Thus, the doctrine of equivalents is not designed to permit wholesale redrafting of the claim to cover non-equivalent products, in other words, to permit a claim expansion that would encompass more than an insubstantial change.[7]

One way to determine whether the differences are insubstantial is to look at whether or not the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Another way to determine whether the differences are insubstantial is to consider whether or not people of ordinary skill in the art believe that a particular element of the accused product is interchangeable with respect to the corresponding element of the claimed invention.[8] Whether two products may be "interchangeable" for their end use or application does not mean that they are equivalent for doctrine of equivalents purposes.[9] By way of example, even though a paint brush and a roller are interchangeable for their end use or application (i.e. both products paint a wall) does not mean that the products are equivalent for doctrine of equivalents purposes.

Whatever you consider, the essential inquiry remains the same: does the accused product contain elements identical or equivalent to each element of an asserted claim.[10] Because each element is material to defining the scope of the patented invention, a doctrine of equivalents analysis must be applied to individual claim elements, not to the invention as a whole.[11]

---

[7] See Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532-33 (Fed. Cir. 1987).

[8] See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 29-30 (1997).

[9] See Wang Labs, Inc. v. America Online, Inc., 197 F.3d 1377, 1386 (Fed. Cir. 1999).

[10] See Warner-Jenkinson, 520 U.S. at 40.

[11] See id.

Equivalence is determined at the time of the activities accused of infringement and is not limited by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

### 3.7.1   LIMITATIONS ON DOCTRINE OF EQUIVALENTS [DOT's][12]

There are situations where resort to the doctrine of equivalents to find infringement is not permitted.

You may not find infringement under the doctrine of equivalents if even one element of a claim or its equivalent is not present in the accused product. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Another limit on the doctrine of equivalents occurs when the patent specification describes a specific role or function for a claim element. When this occurs, any equivalent structure must fill substantially the same role as that described in the patent specification for that claim element.[13] Therefore, in this case, this limit applies as follows:

With respect to the second element of Claim 1 of the '404 patent, "compacting the bone marrow to increase the volume of said passage," an equivalent structure must fill substantially the same role as that described in the patent specification for an inflatable device, or balloon.[14]

Resort to the doctrine of equivalents to find infringement is not permitted if you find that DOT is merely making, using or selling what was in the prior art prior to the patented invention, or what would have been obvious to persons of ordinary skill in the art in light of what was in the prior art. A patent owner should not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent Office.

---

[12] Except where otherwise noted, modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.5
[13] Modeled on Model Jury Instructions: Patent Litigation, American Bar Association, 2005, No. 7.4.

An invention representing only a modest advance over the prior art is given a more restricted application of the doctrine of equivalents, that is, a narrower range of equivalents. If you find that the claimed invention represents only a modest advance over the prior art, you should consider a correspondingly narrow range of possible equivalents.[15]

---

[14] Modeled on Model Jury Instructions: Patent Litigation, American Bar Association, 2005, No. 7.4.

[15] See Thomas & Betts Corp. v. Litton Sys., Inc., 720 F.2d 1572, 1580 (Fed. Cir. 1983).

### 3.8    OPEN-ENDED OR "COMPRISING" CLAIMS

The preamble to the independent claims of the patents-in-suit use the transitional phrase "comprising."  "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended.  As such, the claim is not limited to only what is in the claim.  Based on this explanation, if you find that DOT's product or method includes all of the components or steps of an asserted claim, that claim is infringed — the fact that DOT's product or method of using the product may also include an additional component or step is irrelevant.  The presence of additional components or steps in the accused product or method does not mean that the accused product or method does not infringe a patent claim.

### 3.85    REVERSE DOCTRINE OF EQUIVALENTS [DOT's][16]

In some cases, even though an allegedly infringing product includes all of the components of at least one of the patent claims, there still may be no infringement. This will be the case only where DOT's product is so far changed in principle that although it performs the same or similar function to produce substantially the same result as that defined by a patent claim, it does so in a substantially different way.

---

[16] Modeled on the D. Del. Uniform Jury Instructions for Patent Cases, dated March 1993, Instruction 3.15.

**3.9    INFRINGEMENT DESPITE DOT's IMPROVEMENTS OR PATENTS
           ON IMPROVEMENTS**

You may find that DOT's accused product or method represents an improvement over the invention defined in one or more of Kyphon's patent claims.  However, you are not to presume that these facts mean that DOT cannot infringe Kyphon's patent claims.  As long as DOT's accused product or method includes all of the elements of at least one of Kyphon's patent claims, or if DOT's accused product or method is found to be equivalent under the doctrine of equivalents, then Kyphon's patent claims are infringed by DOT's product or method despite any improvement by DOT.

### 3.10  WILLFUL INFRINGEMENT [Kyphon's]

If you find on the basis of the evidence and the law as I have explained it that DOT's product infringes at least one of Kyphon's patent claims, you must further decide whether or not Kyphon has proven by clear and convincing evidence that DOT's infringement was willful.  Willful infringement is established where Kyphon has proven two things:  first, that DOT was aware of Kyphon's patents; and second, that DOT has no reasonable good faith basis for concluding that it did not infringe Kyphon's patents.

For example, if you find that Kyphon has proven that DOT knew about the patents and did not exercise due care to determine whether or not it was infringing the patents, you may find that DOT's infringement was willful.

One factor to consider with respect to DOT's good faith and due care in determining the infringement and validity issues is whether DOT obtained and followed competent legal advice from an attorney after becoming aware of Kyphon's patents.  A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers.  Moreover, you should consider whether DOT actually relied upon and followed its attorney's opinion.

Another factor in determining whether Kyphon has proven willful infringement is your assessment of whether or not DOT copied Kyphon's products or methods covered by Kyphon's patent claims or whether DOT, as a competitor of Kyphon, tried to match Kyphon's product with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

**<u>DOT's Objection to Kyphon's Instruction 3.10:</u>**

Kyphon's proposed instruction is confusing to the jury and reflects bias favoring Kyphon.  DOT's instruction follows the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.12.

### 3.10    WILLFUL INFRINGEMENT [DOT's][17]

Kyphon contends that DOT has willfully infringed the asserted claims of each of the patents-in-suit.

When a person becomes aware that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful.

The issue of willful infringement is not relevant to your decision of whether or not there is any infringement, but rather concerns the amount of damages to which Kyphon is entitled. That is, a finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that DOT willfully infringed a claim of a patent-in-suit, then it is my job to decide whether or not to award increased damages to Kyphon.

Although, as I explained before, Kyphon must prove infringement of an asserted patent by a preponderance of the evidence, Kyphon's burden of proving that the infringement of an asserted patent was willful is the higher burden of clear and convincing evidence. Therefore, if you find on the basis of the evidence and the law as I have explained it that DOT's product infringes at least one of the claims of the asserted patent, you must further decide whether Kyphon has proven that DOT's infringement was willful. To establish willful infringement, Kyphon must prove two things with clear and convincing evidence:

1.    DOT was aware of the patent; and

2.    DOT proceeded with its activities without having a reasonable good faith belief that the patent was invalid or that the patent was not infringed.

---

[17] Modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, Instruction 3.12.

The determination of willfulness is made based on the totality of circumstances. Thus, to determine whether DOT acted with a reasonable good faith belief or whether DOT willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by DOT in this trial as well as the following factors:

1.    In designing the product accused of infringement, whether DOT intentionally copied Kyphon's invention or a product made by Kyphon that is covered by the asserted patent, or whether DOT instead tried to "design around" the patent by designing a product that DOT believed did not infringe the patent claims.  Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

2.    When DOT became aware of the patent, whether DOT formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether DOT obtained and followed the advice of a competent lawyer.  Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful.

Keep in mind that a determination by you that DOT has infringed the patent does not automatically mean that the infringement was willful.  As I have explained, the infringement is not willful if DOT had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

# 4   VALIDITY

## 4.1   PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid.  From issuance of the patent, it is presumed that its subject matter is new and useful, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

This presumption of validity puts the burden of proving invalidity on DOT.  While this presumption can be rebutted, the burden is on DOT to do so.  This burden requires that DOT prove by clear and convincing evidence that in this case, each of the asserted claim is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Each of the asserted claims is presumed valid independently of the validity of each other claim.

## 4.2    ANTICIPATION [Kyphon's]

One of the requirements for a valid patent claim is that the invention defined in the claim must be new and novel.  This is known as the requirement of novelty.  When a single prior art reference shows that a claimed invention was not new or novel, the claim is said to be anticipated by the prior art reference and is invalid.

In order to prove anticipation of an invention, DOT must prove that all of the elements of the invention, as expressed in the claims of the patents-in-suit, are found in a single prior art reference, which in this case may be an earlier printed publication.

There cannot be an accidental or unrecognized anticipation.  A prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose is not an invalidating anticipation.

DOT has the burden of proving anticipation by clear and convincing evidence.

I will now discuss a particular type of anticipation, anticipation by an earlier printed publication, in more detail.

**DOT's Objection to Kyphon's Instruction No. 4.2:**

        Kyphon's proposed instruction is unclear and omits relevant law with respect to "inherency."  DOT's proposed instruction tracks the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.5 and includes the relevant law.

## 4.2    ANTICIPATION [DOT's][18]

DOT contends that the invention covered by the patents-in-suit are invalid because they are not new. DOT contends that the asserted claim of the patents-in-suit are anticipated by the prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made and may include things such as articles, books, and other patents. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. In order to prove that an invention is "anticipated," DOT must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

In deciding whether a single item of prior art anticipates a patent claim, you should consider not only what is expressly disclosed or embodied in the particular item of prior art but also what is inherently present. Something is inherent in an item of prior art if it is necessarily present in the thing described in the prior art reference and it would be recognized by persons of ordinary skill in the art. A gap in the prior art reference may be filled by referring to other evidence that describes the missing descriptive matter that is necessarily present in the reference, and to show that the missing matter would be so recognized by persons of ordinary skill in the art.[19]

---

[18] Except as otherwise noted, modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.5.

[19] This paragraph is modeled on instruction given on pages 41-42 of this Court's Charge to the Jury on October of 2004 in St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., Canon U.S.A. Inc., C.A. No. 03-241 JJF.

There cannot be an accidental or unrecognized anticipation.  A prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purposes, is not an invalidating anticipation.

### 4.2.1   PRINTED PUBLICATION [Kyphon's]

A patent claim is invalid if the invention defined by that claim was described in a printed publication either before it was invented by the patentee or more than one year prior to the filing date of the patent application.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the invention was made, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had.

**DOT's Objection to Kyphon's Instruction No. 4.2.1:**

Kyphon's instruction is confusing and misleading.  In particular, Kyphon has no corroborating evidence of a pre-filing date of invention for its asserted patents; thus, the only relevant date is the effective filing date of the asserted patents.  See, e.g., Finnigen Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367-1368 (Fed. Cir. 1999).  In addition, Kyphon's instruction is not clearly limited to the instance when a printed publication is anticipatory (versus when it renders the invention obvious).  DOT proposes a more clearly written instruction modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.5.4.

### 4.2.1   PRINTED PUBLICATION [DOT'S][20]

DOT contends that the asserted claims of the patents were anticipated because the invention defined in those claims was described in a prior publication, such as an article, book or another patent.  A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (i) before Kyphon made its invention; or (ii) more than one year before the effective filing date of Kyphon's patent application.  The date of invention is the effective filing date of the patents-in-suit, where the patentee does not show corroborating (i.e. written and contemporaneous) evidence showing earlier invention at a specific date prior to filing.[21]

For a printed publication to anticipate a claim of a patent, DOT must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of Kyphon's claim.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

---

[20] Modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.5.4

[21] Finnigen Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367-1368 (Fed. Cir. 1999); see also Donald S. Chisum, Chisum on Patents §  3.08[3] (and cases cited therein).

### 4.3   OBVIOUSNESS[22]

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.      You should determine the scope and content of the prior art relied on by DOT;

2.      You should then identify the difference, if any, between each asserted claim of the patents-in-suit and the prior art; and

3.      You should determine the level of ordinary skill in the pertinent art at the time the inventions of the patents-in-suit were made.

Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or unobvious to a person of ordinary skill in the pertinent art.  You should also consider objective factors such as commercial success, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patents by others, unexpected results, praise by others, copying by others, and whether the same or similar inventions were made independently by others prior to or at about the same time as the invention of the patent in suit.

---

[22] Kyphon believes that the issue of obviousness is not properly presentable to the Jury. However, in the event that the Court decides otherwise, Section 4.3, including Subsections 4.3.1 – 4.3.9, sets forth Kyphon's proposed jury instructions regarding the law on obviousness.

### 4.3.1   SCOPE AND CONTENT OF PRIOR ART [Kyphon's]

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. The prior art that DOT contends to render the patents-in-suit obvious in this case includes the following:

1.      United States patents that issued or have a filing date before 1987 (when asserted against the '888 and '404 patents), January 26, 1994 (when asserted against the '043 patent), or June 24, 1998 (when asserted against the '734 and '054 patents); and

2.      Other publications having a publication date before 1987 (when asserted against the '888 and '404 patents), January 26, 1994 (when asserted against the '043 patent), or June 24, 1998 (when asserted against the '734 and '054 patents).

**DOT's Objection to Kyphon's Instruction No. 4.3.1:**

Kyphon's Instruction misrepresents DOT's contentions as to relevant prior art.

Moreover, Kyphon has no corroborating evidence of a pre-filing date of invention for its

asserted patents; thus, the only relevant date is the effective filing date of the asserted

patents. See, e.g., Finnigen Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367-

1368 (Fed. Cir. 1999). Moreover, Kyphon's instruction omits relevant law and is

incomplete. DOT's instruction cites to the effective filing dates of the patents, includes

relevant law, and tracks the proposed District of Delaware Uniform Jury Instructions for

Patent Cases, dated June 2003, No. 4.8.1.

### 4.3.1    SCOPE AND CONTENT OF PRIOR ART [DOT's][23]

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.  The prior art includes the following:

1.  prior patents that issued before the date of invention with respect to each patent;

2.  prior publications having a publication date before the date of invention with respect to each patent;

3.  U.S. Patents that have a filing date prior to the date of invention with respect to each patent.

In this case, the date of invention is presumed to be the effective filing date of the patent.[24] A patentee must corroborate any alleged pre-filing date of invention by contemporaneous documentary evidence showing earlier invention at a specific date prior to the effective

---

[23] Except where otherwise noted, modeled on the D. Del. Uniform Jury Instructions for Patent Cases, dated March 1993, Instruction 4.8.1.

[24] Ecolochem, Inc. v. Southern Cal. Edison, Co., 227 F.3d 1361, 1371 (Fed. Cir. 2000); Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 449 (Fed. Cir. 1986)

filing date of the patents-in-suit.[25]  Accordingly, the presumed dates of invention of the

patents-in-suit are as follows:  February 9, 1989 for the '404 and '888 patents; January

26,1994 for the '043 patent; Aug. 14, 1998 for the '734 and '054 patents.

---

[25] See, e.g., Finnigen Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367-1368
(Fed. Cir. 1999); see also Donald S. Chisum, Chisum on Patents §  3.08[3] (and cases
cited therein).

### 4.3.2   DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as consisting of only those differences, because the test is whether the claimed invention as a whole would have been obvious after considering all of the prior art.  Each claim must be considered in its entirety.

### 4.3.3   LEVEL OF ORDINARY SKILL [Kyphon's]

Next, you are to determine the level of ordinary skill in the art to which the claimed inventions pertain at the time the claimed inventions were made.  A person of ordinary skill is not the inventor, but rather a hypothetical person who is presumed to be aware of all the prior art at the time of the invention.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventors, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventors, the sophistication of the technology and the education of others working in the field.

**DOT's Objection to Kyphon's Instruction No. 4.3.3:**

Kyphon's instruction is inaccurate.  Kyphon's instruction gives the implication that the inventor cannot be a person of ordinary skill in the art.  DOT's proposed Instruction tracks the proposed District of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.8.3. and the 1993 District of Delaware Instruction, No. 4.8.3.

### 4.3.3   LEVEL OF ORDINARY SKILL [DOT's][26]

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.

---

[26] Modeled on the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.8.3 and 1993 District of Delaware Instruction, No. 4.8.3.

### 4.3.4.   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS [Kyphon's]

In making your decision as to the obviousness or non-obviousness of the claimed inventions, you must consider the following objective evidence which may tend to show non-obviousness of the patent claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.      A long felt need in the art which was satisfied by the invention of the patent-in-suit;

3.      The failure of others to make the invention;

4.      Copying of the invention by others in the field;

5.      Unexpected results achieved by the invention;

6.      Praise of the invention by the infringer or others in the field;

7.      The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is only due to advertising, promotion, salesmanship or the like, or features of the product other than those claimed in the patent-in-suit, then commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness.  Although some parts of the evidence may weigh more heavily than others, do not make a decision of obviousness or non-obviousness until all of the evidence has been introduced.

**DOT's Objection to Kyphon's Instruction No. 4.3.4:**

Kyphon's proposed instruction is misleading and reflects bias favoring Kyphon.

Kyphon's subsequent stand-alone instructions on criteria relating to non-obviousness (i.e.

Kyphon's proposed instructions 4.3.7 and 4.3.8) give excessive weight to those factors, and,

moreover, fail to note that those factors are only relevant to non-obviousness where the

patentee can link the factor to the claimed invention.  DOT's proposed instruction combines

Kyphon's Instructions 4.3.7 and 4.3.8 with 4.3.4 and is consistent with pages 36-37 of this

Court's Charge to the Jury given on November 21, 2003 in Tristrata Tech. Inc. v. ICN

Pharm., Inc., C.A. No. 01-150-JJF, which tracked the model District Of Delaware Uniform

Jury Instructions for Patent Cases, dated June 2003, No. 4.8.6.

### 4.3.4    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS [DOT's][27]

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

1. commercial success or lack of commercial success of products covered by the patents in suit;

2. a long-felt need in the art that was satisfied by the invention of the patent-in-suit;

3. the failure of others to make the invention;

4. copying of the invention by others in the field;

5. unexpected results achieved by the invention;

6. praise of the invention by the infringer or others in the field;

7. expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8. the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art; and

9. the taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

---

[27] Based on pages 36-37 of this Court's Charge to the Jury given on November 21, 2003 in Tristrata Tech. Inc. v. ICN Pharm., Inc., C.A. No. 01-150-JJF, which tracked the model District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.8.6.  DOT's instruction incorporates the elements from Kyphon's proposed instructions 4.3.7 and 4.3.8.

### 4.3.5   MOTIVATION TO COMBINE [Kyphon's]

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention.  Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  The suggestion or motivation to combine and the expectation of success must be found in: the prior art itself, the knowledge of persons of ordinary skill in the art at the time the invention was made, or, in some cases, the nature of the problem to be solved.

**DOT's Objections to Kyphon's Instruction 4.3.5:**

Kyphon's proposed instruction is inaccurate in stating that obviousness is based on whether the combined prior art references "suggest the claimed invention" or are "reasonably likely to achieve the goal of the invention."  Where there is a suggestion or motivation to combine references, obviousness exists where the combined references discloses the claimed invention.  See Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996).

### 4.3.5   MOTIVATION TO COMBINE [DOT's]

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, discloses the claimed invention.  Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would disclose the claimed invention.  The suggestion or motivation to combine and the expectation of success must be found in: the prior art itself, the knowledge of persons of ordinary skill in the art at the time the invention was made, or, in some cases, the nature of the problem to be solved.  See Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996).

### 4.3.6   OBVIOUSNESS - HINDSIGHT

The question of non-obviousness is simple to ask, but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the patent claims at issue, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.  The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

### 4.3.7   NON-OBVIOUSNESS [Kyphon's]

Expressions of disbelief upon learning of the invention by those skilled in the art constitute strong evidence of non-obviousness.

**DOT's Objection to Kyphon Instruction No. 4.3.7:**

See DOT's Objections to Kyphon Instruction No. 4.3.4.  Kyphon's proposed instruction is misleading and reflects bias in Kyphon's favor because it gives excessive weight to this factor, and, moreover, fails to note that this factor is only relevant to non-obviousness where the patentee can link the factor to the claimed invention.  DOT's instruction No. 4.3.4 incorporates the non-obviousness factor set forth in Kyphon's proposed instruction No. 4.3.7.  DOT proposes deleting this instruction as a stand-alone instruction, consistent with the model District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.8.6.

### 4.3.8   TEACHING AWAY OF PRIOR ART [Kyphon's]

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of non-obviousness.

**DOT's Objection to Kyphon Instruction No. 4.3.8:**

See DOT's Objections to Kyphon Instruction No. 4.3.4.  Kyphon's proposed instruction is misleading and reflects bias in Kyphon's favor because it gives excessive weight to this factor, and, moreover, fails to note that this factor is only relevant to non-obviousness where the patentee can link the factor to the claimed invention.  DOT's instruction No. 4.3.4 incorporates the non-obviousness factor set forth in Kyphon's proposed instruction No. 4.3.8.  DOT proposes deleting this instruction as a stand-alone instruction, consistent with the model District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 4.8.6.

### 4.3.9   OBVIOUSNESS TO TRY

The evidence might indicate to you that what the inventors did was obvious to try. If so, this does not indicate the patent is invalid for obviousness. "Obvious to try" is not the standard, rather it is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made his invention.

**DAMAGES**

**5.0     EFFECT OF INSTRUCTION**

The fact that I will instruct you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Kyphon.

### 5.1    COMPENSATORY DAMAGES IN GENERAL

If, after considering all of the evidence and the law as I have stated it, you are convinced that none of the patent claims at issue are infringed or valid, your verdict should be for DOT and you need go no further in your deliberations. On the other hand, if you decide that one or more of the patent claims are valid and have been infringed by DOT, you must then turn to the issue of damages.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether DOT benefited from, realized profits from, or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate Kyphon for infringement by DOT. Adequate compensation should return Kyphon to the position it would have been in had there been no infringement. You must consider the amount of injury suffered by Kyphon without regard to DOT's gains or losses from the infringement.

## 5.2     REASONABLE CERTAINTY

Kyphon has the burden of proving damages by a preponderance of the evidence. Under the patent law, Kyphon is entitled to all damages that can be proven with "reasonable certainty." On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining the amount of damages is not fatal to Kyphon. On the other hand, Kyphon is not entitled to speculative damages. That is, you should not award any amount for losses, which, although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of "reasonable certainty" on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against DOT.

### 5.3     METHODS FOR COMPUTING DAMAGES [Kyphon's]

There are two common methods for computing damages in a patent infringement case. One is called "lost profits," and the other is called "reasonable royalty." These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

**<u>DOT's Objection to Kyphon's Instruction No. 5.3:</u>**

Kyphon's Instruction is unclear and includes bias favoring Kyphon. DOT's proposed instruction is modeled on District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 5.5.

## 5.3     METHODS FOR COMPUTING DAMAGES [DOT's][28]

There are two methods for computing damages in a patent infringement case.  One is called "lost profits" damages and the other is called "reasonable royalty" damages. These are alternative methods for computing damages; you can award either lost profits or a reasonable royalty for infringing sales made by an accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sales.

In determining damages, you should first determine whether Kyphon has proven its entitlement to lost profits.  If you find that Kyphon is not entitled to lost profits, you should then calculate damages based upon another method, which may include a reasonable royalty.

---

[28] Modeled on proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, No. 5.5

### 5.4    LOST PROFITS — LOST SALES [Kyphon's]

In determining damages, you must first determine if Kyphon has proven its entitlement to lost profits. Only if you find that Kyphon is not entitled to lost profits, will you then determine Kyphon's damages based on a reasonable royalty, which I will explain in a moment.

Lost profits may be in the form of diverted sales. Kyphon must establish a causation between its lost profits and the infringement. A factual basis for the causation is that "but for" the infringement, Kyphon would have made the sales that DOT made. In order to show that Kyphon would have made the sales DOT made, Kyphon must show that: (1) there was a market demand for the patented product or method; (2) Kyphon had the ability to meet the market demand; and, (3) no acceptable non-infringing substitutes were available.

Kyphon need not negate every possibility that purchasers of DOT's products might have bought another product. And, a mere existence of a competing device does not make that product an acceptable substitute. Uniqueness of a patented product suggests that there are no acceptable non-infringing substitutes. A proposed competitive substitute is not an acceptable noninfringing substitute if it is different.

In proving its damages, Kyphon's burden of proof is not an absolute one, but rather a burden of reasonable probability. If in all reasonable probability, Kyphon would have made the sales which DOT has made, what Kyphon in reasonable probability would have netted from the sales denied to it is the measure of its loss, and DOT is liable for that. DOT is not liable, however, for speculative profits.

**DOT's Objection to Kyphon's Instruction No. 5.4:**

Kyphon's proposed instruction contains erroneous law with respect to "acceptable non-infringing substitutes." DOT's instruction tracks the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, Nos. 5.7 and 5.8.

### 5.4     LOST PROFITS – LOST SALES [DOT's]

In this case, Kyphon is seeking lost profits as its patent damages.  Lost profit damages are the profits Kyphon asserts it lost because of the infringement.  They are not the profits DOT actually made.  Kyphon's lost profits may be in the form of:  (i) lost sales, (ii) eroded prices, or  (iii) increased expenses caused by the infringement.  In this case, Kyphon must establish causation between its lost profits and the infringement.  Thus, Kyphon must show that "but for" the infringement, the patentee would have made the sales or profits that were allegedly lost.

Kyphon is claiming that it lost sales because of DOT's alleged infringement.  In order to recover lost profits damages for the sales that DOT made, Kyphon must show that: (i) there was a demand for the patented product; (ii) Kyphon had the ability to meet the market demand; (iii) no acceptable non-infringing substitutes were available; and (iv) the amount of the profit it would have made.

Kyphon need not negate every possibility that purchasers of DOT's products might have bought another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products.  However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes.

In proving its damages, the Kyphon's burden of proof is not an absolute one, but rather a burden of reasonable probability.  If it is reasonably probable that Kyphon would have made some or all of the infringing sales, and it is reasonably probable what amount Kyphon would have netted from the denied sales, then DOT is liable for the lost profits on those infringing sales.

### 5.4.1   DEMAND FOR THE PATENTED PRODUCT

Demand for the patented product can be proven by significant sales of Kyphon's

patented products or by significant sales of DOT's infringing products.

### 5.4.2   PATENT OWNER'S MANUFACTURING AND MARKETING CAPACITY

A patent owner is only entitled to lost profits for sales it could have made.  Kyphon must prove that it would have had the ability to manufacture or otherwise obtain its product and the capability to sell the amount of products for which it is now claiming lost profits.

### 5.4.3   ABSENCE OF ACCEPTABLE NONINFRINGING SUBSTITUTES [Kyphon's]

In order to be an acceptable substitute, the product must have the advantages of the patented invention that were important to customers.  A product that does not have those advantages would not be an acceptable substitute to the customer who wanted those advantages.

**DOT's Objection to Kyphon's Instruction 5.4.3:**

DOT objects to Kyphon's Instruction on the ground that is inconsistent with the controlling law as to acceptable non-infringing substitutes.  See Smithkline Diags., Inc. v. Helena Lab. Corp., 12 U.S.P.Q.2d 1375, 1377 (E.D. Tex. 1989), aff'd, 926 F.2d 1161 (Fed. Cir. 1991).  DOT's instruction tracks the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, Nos. 5.7 and 5.8 and includes the correct statement of law.

### 5.4.3   ABSENCE OF ACCEPTABLE NONINFRINGING SUBSTITUTES [DOT's]

In considering the foregoing, you should consider the issue of a non-infringing alternative. If you conclude that a non-infringing alternative product would have been available, Kyphon may not recover lost profits damages caused by acts of alleged infringement that occurred after the time that such alternative could have been available. A "non-infringing alternative" means (1) a product that does not infringe the claims of a patent in suit and (2) is an available and acceptable substitute to customers for Kyphon's product.

Kyphon need not negate every possibility that purchasers of DOT's products might have bought another product. And, a mere existence of a competing device does not make that product an acceptable alternative.

Although the mere existence of a competing product does not make that product an acceptable alternative, an acceptable non-infringing alternative need not have all of the advantages of the patented product, so long as purchasers are willing to buy the alternative instead of the infringing product for other reasons.[29] To show that there are no acceptable, non-infringing alternatives, Kyphon must show that the accused products were purchased on the basis of their infringing features, and not based on other factors.[30]

---

[29] See Smithkline Diags., Inc. v. Helena Lab. Corp., 12 U.S.P.Q.2d 1375, 1377 (E.D. Tex. 1989), aff'd, 926 F.2d 1161 (Fed. Cir. 1991).

[30] See Standard Havens Prods. v. Gencor Indus., 953 F.2d 1360, 1373 (Fed. Cir. 1991), cert. denied, 506 U.S. 817 (1992).

### 5.4.4   AMOUNT OF LOST PROFITS [Kyphon's]

The patent owner may calculate its lost profits on lost sales by computing the lost net sales for its patented products and deducting from that figure the amount of additional costs that it would have incurred in making those sales.  Certain fixed costs such as property taxes, insurance, rent, and administrative overhead, may not vary with increases in production or sale.  Any such costs which do not vary with increased production or sale should not be considered when determining damages.  Thus, in determining Kyphon's lost profits, you are not to subtract from its damages the amount of such fixed costs.

**<u>DOT's Objections to Kyphon Instruction No. 5.4.4:</u>**

Kyphon's instruction is erroneous.  Consistent with the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, DOT proposes deleting this instruction.  The treatment of fixed costs is a fact-specific issue and cannot be generalized as a statement of law, as Kyphon's proposed instruction attempts to do.

### 5.4.5   COMPUTATION OF LOST PROFITS [Kyphon's]

Calculation of lost profits is by its nature imprecise.  Doubts concerning the computation of Kyphon's lost profits should be resolved against DOT.  DOT bears the risk of any uncertainty.

**<u>DOT's Objection to Kyphon Instruction No. 5.5 [Now 5.4.5]:</u>**

Kyphon's instruction reflects bias favoring Kyphon.  Consistent with the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, DOT proposes deleting this instruction.

**5.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES
      [Kyphon's 5.6]**

If you find that Kyphon is not entitled to lost profits, then Kyphon is entitled to a reasonable royalty.  A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arm's length negotiation between Kyphon and DOT, with both operating under the assumption that the negotiated patents are valid and are being infringed by DOT's product or method of using its product.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arm's length negotiation that I just referred to would have been likely to have occurred.  This is typically just before liability for infringement would begin, which in this case would be just prior to 2004 time period.

In the hypothetical arm's length negotiation, you must assume that the person negotiating on behalf of DOT, and who was willing to take a license, would have known that Kyphon's patents were valid and were infringed by DOT.  You should also assume that both Kyphon and DOT knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for DOT's use of the patented invention, including the opinion testimony of experts.

**DOT's Objection to Kyphon's Instruction No. 5.6 [Now 5.5]:**

Kyphon's instruction is unclear and confusing to the jury.  DOT's proposed instruction tracks the instruction given on page 44 of this Court's Charge to the Jury in Tristrata Tech., Inc. v. Mary Kay, Inc., C.A. No. 01-127-JJF, which is in turn modeled on the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, no. 5.14.

### 5.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES [DOT's]31

If you find that Kyphon is not entitled to lost profits, then Kyphon is entitled to a reasonable royalty with regard to those sales. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Kyphon and DOT, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be just prior to the 2004 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of DOT was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by DOT. You must also assume that Kyphon would have been willing to grant a license. Finally, you must assume that both Kyphon and DOT knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for DOT's use of the patented invention, including the opinion testimony of experts.

---

[31] Modeled on instruction given on page 44 of this Court's Charge to the Jury in <u>Tristrata Tech., Inc. v. Mary Kay, Inc.</u>, C.A. No. 01-127-JJF, that tracks the proposed District Of Delaware Uniform Jury Instructions for Patent Cases, dated June 2003, no. 5.14.

### 5.5.1   FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that should be considered are:

1.      the royalties received by Kyphon for licensing others under the patents-in-suit;

2.      the rates paid by DOT for the use of other patents comparable to the patents-in-suit;

3.      the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured products may be sold;

4.       Kyphon's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.      the commercial relationship between Kyphon and DOT, such as whether they are competitors in the same territory in the same line of business;

6.      the effect of selling the patented products in promoting sales of other products of DOT; the existing value of the invention to Kyphon as a generator of sales of its non-patented items; and the extent of such collateral sales;

7.      the duration of the patents and the corresponding terms of the hypothetical licenses;

8.      the established profitability of the products made under the patents, their commercial success, and their current popularity;

9.      the utility and advantages of the patented invention over the old devices or methods, if any, that had been used for achieving similar results;

10.      the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Kyphon, and the benefits to those who have used the invention;

11.    the extent to which DOT has made use of the invention, and any evidence that shows the value of that use;

12.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by DOT;

14.    the opinion testimony of qualified experts; and

15.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**5.6     INTEREST**

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**5.7    CLOSING STATEMENT — DAMAGES**

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Kyphon has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that Kyphon is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing DOT or to set an example.

## 6.    DELIBERATION AND VERDICT

### 6.1    INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## 6.2     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached an unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 6.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that — your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 6.4     COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Appendix 9-1 DOT's General Jury Instructions.DOC

10

**Appendix 10**

**Kyphon's Proposed Voir Dire**

It is the parties' understanding that the Court will conduct standard voir dire in the form appended to this document, entitled "Standard Voir Dire." In addition, the parties propose the following voir dire.

1.    Do you or any of your close family or friends have education, vocational training, or work experience in patents, biology, anatomy, orthopedics, mechanical engineering, or medical devices?

2.    Do you have any strong positive or negative feelings about patents, the process by which patents are obtained, or the rights of patent owners?

3.    Have you ever been sued, been a party to a lawsuit, had your deposition taken, or been a witness in court?

4.    Have you ever heard of or used any Kyphon Inc. products?

5.    Do you or any of your close friends or relatives work at Kyphon Inc. or own stock in Kyphon Inc. or have you or any of your close friends or relatives in the past worked at or owned stock of Kyphon Inc.?

6.    Have you ever heard of or used any Disc Orthopaedics Technologies, Inc. products?

7.    Do you or any of your close friends or relatives work at Disc Orthopaedics Technologies, Inc. or have you or any of your close friends or relatives in the past worked at Disc Orthopaedics Technologies, Inc.?

8.    Have you ever heard of or used any Disc-O-Tech Technologies, Ltd. products?

9.    Do you or any of your close friends or relatives work at Disc-O-Tech Technologies, Ltd. or have you or any of your close friends or relatives in the past worked at Disc-O-Tech Technologies, Ltd.?

## STANDARD VOIR DIRE

1.    Judge will read brief description of the case.

      Is any member of the panel familiar with the case or has any member of the panel heard or read anything about it?

2.    Judge will ask counsel to introduce himself or herself.  Do you know or have you or has any member of your family had any business dealings with any of the attorneys in their law firms.

3.    Judge will ask counsel to introduce the parties and name any witnesses they expect to call.  Do any members of the panel know the parties or any of the witnesses?

4.    If you are selected to sit on this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as I will give it to you in my instructions, disregarding any other ideas, notions, or beliefs about the law that you may have encountered in reaching your verdict?

5.    Is there any member of the panel who has any special disability or problem that would make it difficult or impossible for you to serve as a member of the jury?

6.    This case is expected to take _____ days to try, so that we expect the testimony in the trial will be completed by _____.  Is there any member of the panel who would be unable to sit as a juror in the case for that period of time?


FINAL
QUESTION:   Having heard the questions put to you by the court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?


Appendix 10 Kyphon Proposed Voir Dire.doc