IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KYPHON INC.,

Plaintiff,

v.

DISC-O-TECH MEDICAL TECHNOLOGIES LTD., and DISC ORTHOPAEDIC TECHNOLOGIES, INC.,

Defendants.

C.A. No. 04-204-JJF

**JOINT [PROPOSED] FINAL JURY INSTRUCTIONS: INFRINGEMENT PHASE**

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Tel: (617) 542-8906

Karen I. Boyd
Limin Zheng
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070
(650) 839-5071

Rama G. Elluru
1425 K. Street, N.W.
Washington, D.C. 20005
Tel: (202) 783-5070
Fax: (202) 783-2331

Attorneys for Plaintiff
KYPHON INCORPORATED

MORRIS NICHOLS ARSHT & TUNNELL
Maryellen Noreika
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 575-7278
Fax: (302) 658-3989

HOGAN & HARTSON, LLP
Eric Lobenfeld
Jonathan M. Sobel
Robert DeMento
Arlene Chow
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

Attorneys for Defendants
DISC-O-TECH MEDICAL TECHNOLOGIES, LTD and DISC ORTHOPAEDIC TECHNOLOIGES, INC.

DATED: June 18, 2005

1. GENERAL INSTRUCTIONS

1.1 INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

1.2 JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

1.3 BURDEN OF PROOF

This is a civil case in which Kyphon is charging Disc-O-Tech Medical Technologies Ltd. and Disc Orthopaedic Technologies, Inc., which are collectively referred to as "DOT," with patent infringement. Kyphon has the burden of proving patent infringement by what is called a preponderance of the evidence. That means Kyphon has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Kyphon claims is more likely true than not. To put it differently, if you were to put Kyphon's and DOT's evidence on the opposite sides of a scale, the evidence supporting Kyphon's claims would have to make the scales tip somewhat on Kyphon's side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and does not play any part in this case. Therefore, you should not consider it at all in your deliberations.

1.4 EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

1.5 CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

1.5.1 USE OF NOTES

You may use notes taken during trial to assist your memory. As I instructed earlier however, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

1.7 CREDIBILITY OF WITNESSES

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

1.8 NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

1.9 EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

1.10 DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

1.11 DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

2. THE PARTIES AND THEIR CONTENTIONS

## 2.1 THE PARTIES

The plaintiff in this case is Kyphon Inc. The defendants are Disc-O-Tech Medical Technologies Ltd. and Disc Orthopaedic Technologies, Inc. I will refer to plaintiff as "Kyphon" and to defendants as "DOT."

2.2 KYPHON'S CONTENTIONS

Kyphon contends that DOT has infringed, and continues to infringe, various claims of Kyphon's '043 patent by making, using, selling, offering for sale, and marketing certain surgical devices. Specifically, Kyphon charges that DOT has infringed, and continues to infringe, Claim 17 of U.S. Patent No. 6,235,043. I will refer to this patent as the "patent-in-suit," or the '043 patent.

2.3 DOT'S CONTENTIONS

DOT contends that its products do not infringe, literally or under the doctrine of equivalents, any of the asserted claims of the patent-in-suit.

3. INFRINGEMENT

3.1 CLAIM INFRINGEMENT

Before you can decide whether or not DOT has infringed any of Kyphon's patents, you will have to understand the patent "claims." Patent claims are the numbered paragraphs at the end of a patent. The patent claim involved here is Claims 17 of the '043 patent.

Patent claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

When making your decision regarding infringement, you should not compare DOT's SKy Bone Expander devices with any specific example set out in the patents-in-suit, or with any product manufactured by Kyphon. Rather, you must only compare DOT's SKy Bone Expander devices with Claim 17 of the '043 patent.

3.2 CONSTRUCTION OF CLAIMS

It is the Court's duty under the law to define what the patent claims mean. I have made my determination and I will now instruct you on the meaning of each claim. You must apply the meaning that I give in each patent claim to decide if such claim is valid and infringed. You must ignore any different interpretations given to these terms by the witnesses or the attorneys.

It may be helpful to refer to the copy of the patent-in-suit that you have been given as I discuss the claims at issue here. The claims of the '043 patent are toward the end, starting in column 14.

The following definition must be applied:

"A body adapted to be inserted into bone and undergo expansion" means "A body adapted so as to be capable of insertion into bone and of expansion into cancellous bone."

"Compacting cancellous bone by the constrained expansion" means "compacting cancellous bone by the body's constrained expansion."

Except where the Court has directed otherwise, all other claim language should be interpreted in accordance with its ordinary and accustomed meaning.

3.3 PATENT INFRINGEMENT — GENERALLY

A patent owner may enforce its right to exclude others from making, using, selling, or offering to sell the patented invention by filing a lawsuit for patent infringement. Here, Kyphon, the patent owner, has sued DOT, the accused infringer, and has alleged that DOT's SKy Bone Expander devices infringe claim 17 of Kyphon's '043 patent.

Patent law provides that any person or business entity which makes, uses, sells, or offers to sell, without the patent owner's permission, any product or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

3.4 DIRECT INFRINGEMENT

In this case, if you find that Kyphon has proven by a preponderance of the evidence that DOT has made, used, sold, or offered to sell the invention defined in at least one claim of a patent-in-suit, DOT would be liable for infringing that patent.

Keep in mind that a person may infringe a patent without knowledge that what he is doing infringes the patent. He may also infringe even though in good faith he believes that what he is doing does not infringe any patent.

The ’043 patent in this case contains method claims, which cover a method involving a specific series of steps. A method claim is directly infringed only by one who actually performs the method. A method claim is not directly infringed by one who merely makes or sells a product that can be used to perform the claimed method, although that person may be liable for either inducing infringement or contributing to infringement by one who does perform the method.

Here, the parties agree that DOT’s SKy Bone Expander System is being used, as directed by DOT, to perform a surgical operation.

However, the parties disagree as to whether DOT’s SKy Bone Expander System, when used to perform a surgical operation as directed, performs the specific series of steps set forth in claim 17 of the ’043 patent.

**Additional instruction proposed by Kyphon**

In order to make the jury’s obligation clear, Kyphon proposes the following additional language, to which DOT objects: “Thus, you, the jury, must determine whether DOT’s SKy Bone Expander System, when used as directed, performs the specific seres of steps in claim 17 of the ’043 patent. If you find that it does, you must find that DOT infringes claim 17. If you find that it does not, you must find that DOT does not infringe claim 17.”

3.5 LITERAL INFRINGEMENT

There are two ways in which a patent claim may be infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For DOT's product or method to literally infringe Kyphon's patent claim, the subject matter of the patent claim must be found in DOT's product or method of using its product. In other words, one of Kyphon's patent claim is literally infringed if DOT's product or method of using its product includes each and every element or step in that claim. If DOT's product or method of using its product omits any single component or method step recited in Kyphon's patent claim, DOT does not literally infringe that claim. Remember, the question is whether DOT's product or method of using its product infringes any claim of Kyphon's patents-in-suit, not whether any of DOT's product or method of using its product is similar or even identical to a product made by Kyphon or a method used or promoted by Kyphon. Accordingly, you must be certain to compare DOT's accused product or method of using its product with the asserted claims, and not with any product made by Kyphon or method used or promoted by Kyphon.

3.6 DOCTRINE OF EQUIVALENTS [Kyphon's]

If you do not find literal infringement, you may consider infringement under the doctrine of equivalents. I have referred to the "doctrine of equivalents" before. Now it is time to explain this term. You may find that DOT's product or method of using its product infringes the asserted claims, even if not all of the components or method steps of the claims are literally present in DOT's product or method of using its product. You may find infringement in such circumstances if the components of DOT's product or the steps of the method of using its product are equivalent to that claimed in at least one of Kyphon's patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of its patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for DOT's product or method of using its product to infringe any one of Kyphon's asserted claims under the doctrine of equivalents, the element or step of a patent claim which is not literally found in a DOT product or method must be present by equivalence. This is called the "all elements rule." Therefore, the question is whether the accused product or method contains an equivalent for each element or step of the claim that is not literally present in the accused product or method. The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

A claim element is present in an accused product under the doctrine of equivalents

if the differences between the claim element and a corresponding element of the accused product are insubstantial.

The doctrine of equivalents does not require complete equivalence for every purpose and in every respect. You must consider the purpose of the element or step, and the function it is intended to perform. It is not necessary that any single component or step of the accused product or method be equivalent to a particular element or step of the claimed invention; two or more components or steps of the accused product or method may operate together to be an equivalent of a single element or step of the claimed invention. What is important is that each element or step required by the claim or its equivalent must be present somewhere in the accused device or method.

One test to determine equivalence under the doctrine of equivalents is whether one of ordinary skill in the art would consider that DOT's product and components of the product, or DOT's method of using its product and the steps of that method, perform substantially the same function in substantially the same way to produce substantially the same result compared to Kyphon's claimed product and components, or Kyphon's claimed method and steps. This is called the "function-way-result" test. Exact identity of function, way, and result is not required; substantial identity is sufficient.

You should also consider whether the substituted element or step represents a change that a person of ordinary skill in the art would have considered insubstantial at the time of the infringement. In determining whether one or more components or steps of the accused product or method are equivalent to an element or step of the claimed invention, you should consider whether at the time of infringement, persons reasonably skilled in the art would have known of the interchangeability of that component or those components with the element or step claimed in the patent claim. Although the known interchangeability of the accused and claimed elements or steps is not necessary in order to find infringement, known interchangeability is evidence that one of ordinary skill in the

relevant art would have considered the change insubstantial. Depending on the circumstances, evidence of independent experimentation by the accused infringer may be considered as evidence that the substituted element or step was not known to be interchangeable with the element claimed in the patent claim.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether DOT's product and its components, or DOT's method of using its product and the steps are equivalent to that defined in Kyphon's claims is to be determined as of the time of the alleged infringement.

**DOT's Objection to Kyphon's Instruction 3.6**

Kyphon's proposed instruction is erroneous. For example, Kyphon's instruction is inconsistent with the controlling law with respect to interchangeability. DOT's instruction accurately reflects the controlling law and tracks the proposed D. Del. Uniform Jury Instructions for Patent Cases, dated June 2003, No. 3.4 and 3.5 (which Kyphon omits).

3.6 DOCTRINE OF EQUIVALENTS [DOT's]

If you do not find literal infringement of a claim, you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

As I have noted, a claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents. A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of its patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for DOT's product or method of using its product to infringe any one of Kyphon's asserted claims under the doctrine of equivalents, the element or step of a patent claim which is not literally found in a DOT product or method must be present by equivalence. This is called the "all elements rule." Therefore, the question is whether the accused product or method contains an equivalent for each element or step of the claim that is not literally present in the accused product or method. The question is not whether the accused product or method as a whole is equivalent to the claimed invention as a whole.

A claim element is present in an accused product under the doctrine of equivalents

if the differences between the claim element and a corresponding element of the accused product are insubstantial.

Thus, the doctrine of equivalents is not designed to permit wholesale redrafting of the claim to cover non-equivalent products, in other words, to permit a claim expansion that would encompass more than an insubstantial change.

One way to determine whether the differences are insubstantial is to look at whether or not the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Another way to determine whether the differences are insubstantial is to consider whether or not people of ordinary skill in the art believe that a particular element of the accused product is interchangeable with respect to the corresponding element of the claimed invention. Whether two products may be "interchangeable" for their end use or application does not mean that they are equivalent for doctrine of equivalents purposes. By way of example, even though a paint brush and a roller are interchangeable for their end use or application (i.e. both products paint a wall) does not mean that the products are equivalent for doctrine of equivalents purposes.

Whatever you consider, the essential inquiry remains the same: does the accused product contain elements identical or equivalent to each element of an asserted claim. Because each element is material to defining the scope of the patented invention, a doctrine of equivalents analysis must be applied to individual claim elements, not to the invention as a whole.

Equivalence is determined at the time of the activities accused of infringement and is not limited by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight

changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

**Kyphon's Objection to DOT's Instruction 3.6**

DOT's proposed instruction contains improper argument and is more difficult to follow than Kyphon's proposed instruction.

## 3.7 LIMITATIONS ON DOCTRINE OF EQUIVALENTS [DOT's]

There are situations where resort to the doctrine of equivalents to find infringement is not permitted.

You may not find infringement under the doctrine of equivalents if even one element of a claim or its equivalent is not present in the accused product. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Another limit on the doctrine of equivalents occurs when the patent specification describes a specific role or function for a claim element. When this occurs, any equivalent structure must fill substantially the same role as that described in the patent specification for that claim element. Therefore, in this case, this limit applies as follows:

With respect to the second element of Claim 1 of the '404 patent, "compacting the bone marrow to increase the volume of said passage," an equivalent structure must fill substantially the same role as that described in the patent specification for an inflatable device, or balloon.

Resort to the doctrine of equivalents to find infringement is not permitted if you find that DOT is merely making, using or selling what was in the prior art prior to the patented invention, or what would have been obvious to persons of ordinary skill in the art in light of what was in the prior art. A patent owner should not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent Office.

An invention representing only a modest advance over the prior art is given a more restricted application of the doctrine of equivalents, that is, a narrower range of equivalents. If you find that the claimed invention represents only a modest advance over the prior art, you should consider a correspondingly narrow range of possible equivalents.

**Kyphon's Objection to DOT's Instruction 3.7**

DOT's proposed instruction is highly confusing and prejudicial, and it addresses situations that are not at issue in this case. If the Court concludes that an instruction on limitations on the doctrine of equivalents is appropriate, Kyphon respectfully proposes the following instruction, which deletes the more egregious portions of DOT's proposed construction:

There are situations where resort to the doctrine of equivalents to find infringement is not permitted. You may not find infringement under the doctrine of equivalents if even one element of a claim or its equivalent is not present in the accused product. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Resort to the doctrine of equivalents to find infringement is not permitted if you find that DOT is merely making, using or selling what was in the prior art prior to the patented invention, or what would have been obvious to persons of ordinary skill in the art in light of what was in the prior art. A patent owner should not obtain, under the

doctrine of equivalents, protection that it could not have lawfully obtained from the Patent Office.

An invention representing only a modest advance over the prior art is given a more restricted application of the doctrine of equivalents, that is, a narrower range of equivalents. If you find that the claimed invention represents only a modest advance over the prior art, you should consider a correspondingly narrow range of possible equivalents.

### 3.8 OPEN-ENDED OR "COMPRISING" CLAIMS

The preamble to the independent claims of the patents-in-suit use the transitional phrase "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended. As such, the claim is not limited to only what is in the claim. Based on this explanation, if you find that DOT's product or method includes all of the components or steps of an asserted claim, that claim is infringed — the fact that DOT's product or method of using the product may also include an additional component or step is irrelevant. The presence of additional components or steps in the accused product or method does not mean that the accused product or method does not infringe a patent claim.

3.9 REVERSE DOCTRINE OF EQUIVALENTS [DOT's]

In some cases, even though an allegedly infringing product includes all of the components of at least one of the patent claims, there still may be no infringement. This will be the case only where DOT's product is so far changed in principle that although it performs the same or similar function to produce substantially the same result as that defined by a patent claim, it does so in a substantially different way.

**Kyphon's objection to DOT's Instruction 3.9**

DOT has never properly placed the reverse doctrine of equivalents at issue. It is not mentioned in its contention interrogatory responses, nor is in its expert reports. Moreover, even if the issue were properly presented, it is an issue for the Court, not for the jury.

## 3.10 INFRINGEMENT DESPITE DOT'S IMPROVEMENTS

You may find that DOT's accused product or method represents an improvement over the invention defined in one or more of Kyphon's patent claims. However, you are not to presume that these facts mean that DOT cannot infringe Kyphon's patent claims. As long as DOT's accused product or method includes all of the elements of at least one of Kyphon's patent claims, or if DOT's accused product or method is found to be equivalent under the doctrine of equivalents, then Kyphon's patent claims are infringed by DOT's product or method despite any improvement by DOT.

4. DELIBERATION AND VERDICT

## 4.1 INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

4.2 UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached an unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

4.3 DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that — your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

4.4 COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

FISH & RICHARDSON P.C.

/s/ *Thomas L. Halkowski*

---

Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Tel: (617) 542-8906

Karen I. Boyd
Limin Zheng
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070
(650) 839-5071

Rama G. Elluru
1425 K. Street, N.W.
Washington, D.C. 20005
Tel: (202) 783-5070
Fax: (202) 783-2331

Attorneys for Plaintiff
KYPHON INCORPORATED

MORRIS NICHOLS ARSHT & TUNNELL

/s/ *Maryellen Noreika*

---

Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 575-7278
Fax: (302) 658-3989

HOGAN & HARTSON, LLP
Eric Lobenfeld
Jonathan M. Sobel
Robert DeMento
Arlene Chow
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

Attorneys for Defendants

DISC-O-TECH MEDICAL
TECHNOLOGIES, LTD and DISC
ORTHOPAEDIC TECHNOLOIGES, INC.

1. GENERAL INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.2 JURORS' DUTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.3 BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . 4

1.4 EVIDENCE DEFINED . . . . . . . . . . . . . . . . . . . . . . . . 5

1.5 CONSIDERATION OF EVIDENCE . . . . . . . . . . . . . 6

1.5.1 USE OF NOTES . . . . . . . . . . . . . . . . . . . . . . . 7

1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . 8

1.7 CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . 9

1.8 NUMBER OF WITNESSES . . . . . . . . . . . . . . . . . . . 10

1.9 EXPERT WITNESSES . . . . . . . . . . . . . . . . . . . . . . . 11

1.10 DEPOSITION TESTIMONY . . . . . . . . . . . . . . . . . . 12

1.11 DEMONSTRATIVE EXHIBITS . . . . . . . . . . . . . . . . 13

2. THE PARTIES AND THEIR CONTENTIONS . . . . . . . . . . . 14

2.1 THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2.2 KYPHON'S CONTENTIONS . . . . . . . . . . . . . . . . . 16

2.3 DOT'S CONTENTIONS . . . . . . . . . . . . . . . . . . . . . 17

3. INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.1 CLAIM INFRINGEMENT . . . . . . . . . . . . . . . . . . . . 19

3.2 CONSTRUCTION OF CLAIMS . . . . . . . . . . . . . . . . 20

3.3 PATENT INFRINGEMENT — GENERALLY . . . . 21

3.4 DIRECT INFRINGEMENT . . . . . . . . . . . . . . . . . . . 22

3.5 LITERAL INFRINGEMENT . . . . . . . . . . . . . . . . . . 23

3.6 DOCTRINE OF EQUIVALENTS [Kyphon's] . . . . 24

3.6 DOCTRINE OF EQUIVALENTS [DOT's] . . . . .. . . 27

3.7 LIMITATIONS ON DOCTRINE OF EQUIVALENTS [DOT's] . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3.8 OPEN-ENDED OR "COMPRISING" CLAIMS. . . . .33

3.9 REVERSE DOCTRINE OF EQUIVALENTS [DOT's] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 34

3.10 PATENTS ON IMPROVEMENTS . . . . . . . . . . . . 35

4. DELIBERATION AND VERDICT. . . . . . . . . . . . . . . . . . . . . . 36

4.1 INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 37

4.2 UNANIMOUS VERDICT. . . . . . . . . . . . . . . . . . . . .38

4.3 DUTY TO DELIBERATE. . . . . . . . . . . . . . . . . . . .. 39

4.4 COURT HAS NO OPINION. . . . . . . . . . . . . . . . .. . 40