# Exhibit A

Case 2:05-cv-02863-JPM-dkv    Document 206    Filed 11/07/2006    Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

HARVINDER S. SANDHU, M.D. and )
KYPHON, INC.,                  )
                               )
           Plaintiffs,         )
                               )
v.                             )    Civil Action No. 05-2863-MI V
                               )
MEDTRONIC SOFAMOR DANEK, INC., )
MEDTRONIC SOFAMOR DANEK USA, INC., )
and SDGI HOLDINGS, INC.,       )
                               )
           Defendants.         )

## ORDER ON DEFENDANTS' SECOND MOTION TO COMPEL

On October 14, 2006, the defendants, Medtronic Sofamor Danek, Inc., Medtronic

Sofamor Danek, USA, Inc. and SDGI Holdings, Inc. (hereinafter "Medtronic") filed their

Second Motion to Compel (Dkt. 142) seeking answers to two interrogatories,

Interrogatories Nos. 6 and 7 of Medtronic's Second Set of Interrogatories, as well as the

production of documents responsive to Requests Nos. 30, 39, 46-56, 58, 61-72, and 74-75

of Medtronic's First Set of Document Requests from the plaintiff Kyphon Inc. ("Kyphon")

relating to the *Disc-O-Tech* case, No. CA 04-0204JJF in which Kyphon was previously

involved in the United States District Court for the District of Delaware (the "Delaware

court"). Medtronic requested expedited relief, basing their request on the fact that the

hearing on Kyphon's Application for Preliminary Injunction is set for November 16, 2006.

Kyphon filed a response in opposition to Defendants' Second Motion to Compel (Dkt. 176)

on October 30, 2006, and a supplemental response in opposition (Dkt. 177) on November

2, 2006. The Court heard argument on the motion on November 2, 2006. Having

considered Defendants' Second Motion to Compel, as well as the parties' briefing, evidence, and arguments of counsel,

IT IS HEREBY ORDERED that

(1)  The controversy over production or non-production of documents and redacted portions of documents relating to the Delaware Disc-O-Tech litigation was narrowed at the hearing to (a) a listing of specific documents described on a chart presented by Medtronic at the November 2, 2006, hearing (the "Document Chart" attached hereto as "Exhibit A") and identified by the absence of production information in the column headed "Status" on said exhibit; and (b) reports of experts in the Disc-O-Tech litigation.  Although some or all of these documents are held by plaintiffs' counsel and not plaintiffs themselves, plaintiffs stipulated to treat them as if in their own possession.  At the hearing, Kyphon was instructed to respond to the Document Chart by providing the Bates numbers of documents Kyphon that has produced.  On November 3, 2006,  Kyphon notified Medtronic of the production numbers of documents already produced by Kyphon which match these items, as well as those documents of which they are not in possession,  (attached hereto as Exhibit B).

(2)  At the hearing, Kyphon informed the Court that it does not object to the production of the Disc-O-Tech documents but is bound by a Protective Order entered by the Delaware court in the Kyphon v. Disc-O-Tech case..  The protective order entered in the Delaware litigation between Kyphon and Disc-O-Tech appears to prevent Kyphon from producing certain of the Disc-O-Tech documents, including unredacted copies of some documents already produced by Kyphon, in the absence of written permission of Disc-O-Tech or an

2

order of the Delaware court. Disc-O-Tech has objected to Kyphon producing confidential documents governed by the Protective Order entered in the Kyphon v. Disc-O-Tech case.

(3) The Court finds that the documents in Exhibit A and the expert reports from the Delaware Disc-O-Tech litigation, possessed but not yet produced by plaintiffs because of the protective order entered by the Delaware court in that litigation, are relevant and discoverable in this instant action, but for the effect of that Delaware protective order. Medtronic has been diligent in seeking the production of the Disc-O-Tech Documents. All the parties have acted reasonably and diligently to resolve such controversy in this Court. This Court declines, however, to order Kyphon to produce such documents in contravention of the Delaware protective order. Medtronic is free to apply to the Delaware Court for relief from that protective order and/or to seek production of affected documents by subpoena to Disc-O-Tech.

(4) Any listed documents and expert reports provided by any party to the Delaware case listed on Exhibits A and B and not already produced and in possession of plaintiffs (or their counsel) shall be produced by the close of business on November 8, 2006, with any redaction necessary to comply with the Delaware protective order referenced in paragraph 2.

(5)    Kyphon's previous disclosures and interrogatory answers, together with its reply brief supporting its pending motion for preliminary injunction and its responses opposing defendants' pending motions for summary judgment (whose filing deadline is prescribed in an Order of the District Judge), shall cumulatively disclose all discoverable knowledge and information currently known to Kyphon regarding: (a) plaintiffs'

3

contentions, and (b) persons having knowledge, with respect to (i) construction of the patent claims and (ii) alleged patent infringement to be presented at the preliminary injunction hearing. Kyphon shall supplement its interrogatory responses to list the persons most knowledgeable regarding its infringement contentions by November 8, 2006.

(7)     In all other respects, Medtronic's second motion to compel discovery is denied without prejudice.

ENTERED THIS 7TH DAY OF NOVEMBER, 2006.

s/DIANE K. VESCOVO
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

4

# Exhibit B

Message

-----Original Message-----
**From:** Karen Boyd [mailto:Boyd@fr.com]
**Sent:** Wednesday, October 25, 2006 4:04 PM
**To:** Zager, Steven M.
**Cc:** Opposing Counsel - Kyphon-Medtronic (CA)
**Subject:** Disc-O-Tech confidential documents

Dear Steven,

Attached is a letter from counsel for Disc-O-Tech objecting to Kyphon's production of documents containing confidential information of Disc-O-Tech. Please let me know if you would like to discuss this matter and how it impacts Medtronic's pending motion to compel.

Best regards,

Karen


Karen I. Boyd
Fish & Richardson P.C.
500 Arguello St. Suite 500
Redwood City, CA  94063
650-839-5012 (direct)
650-839-5071 (fax)


10/27/2006

Message

boyd@fr.com

*This message may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender and delete all copies*

*************************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*************************************************************************************

10/27/2006

# PROSKAUER ROSE LLP

1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212.969.2900

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Paul I. Rachlin
Member of the Firm

Direct Dial 212 969 3640
prachlin@proskauer com

October 25, 2006

Karen I. Boyd
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Dear Ms. Boyd:

Our firm represents Disc-O-Tech Medical Technologies Ltd., a company organized under the laws of Israel ("DOT"). We have received and considered your request made on behalf of your client, Kyphon Inc., for consent to disclose certain confidential information of DOT in connection with a pending litigation between Kyphon and Medtronic Inc. After discussing this matter with our client we have been asked to inform you that DOT does not consent to the release of any confidential information of DOT to Medtronic in the possession of Kyphon.

Should you wish to discuss this matter further, please do not hesitate to contact me.

Sincerely,

PROSKAUER ROSE LLP

By:
Paul I. Rachlin
Member of the Firm

5906/23176-001 Current/8882553v1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HARVINDER S. SANDHU, M.D. and KYPHON INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEDTRONIC SOFAMOR DANEK, INC., MEDTRONIC SOFAMOR DANEK USA, INC., and SDGI HOLDING, INC., <br> Defendants. | Civil Action No. 05-2863-JPM-dkv <br> The Honorable Jon Phipps McCalla <br> The Honorable Diane K. Vescovo |

## PROTECTIVE ORDER

To facilitate the production and receipt of trade secret or other confidential research, development, or commercial information during discovery in this action, THE COURT HEREBY ORDERS as follows:

**I.    CLASSIFICATION OF INFORMATION**

1.    "CONFIDENTIAL INFORMATION" means information, documents, or things (including transcripts) that (1) have not been made public, and (2) the designating party reasonably and in good faith believes contains or comprises trade secrets or other confidential research, development or commercial information or documents.

2.    "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" means Confidential Information that is commercial, financial or marketing in nature and that the designating party reasonably and in good faith believes is so highly sensitive that its disclosure to persons of expertise in the area would reveal significant business or financial advantages of the designating party. It includes information that the designating party reasonably and in good faith believes relates to (1) current business strategic plans, (2) sales, cost and pricing information including future sales/financial projections (3) non-public marketing information including future marketing plans, (4) recent detailed sales and financial data, (5) customer lists, or (6) other information of competitive, financial or commercial significance comparable to the items listed in this paragraph.

1

## II.    PRODUCING AND DESIGNATING INFORMATION

3.    Any information produced or disclosed in this action (in pretrial discovery, as a deposition transcript or exhibit, in a pleading or otherwise) deemed to contain or constitute CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY OR CONFIDENTIAL INFORMATION shall be so designated by any party to this action, or any other supplier of that information, (1) in writing by typing, stamping, or affixing conspicuously on its face (in such a manner as will not interfere with the legibility thereof) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" at the time of production or service thereof, or (2) orally on the record at a deposition or conference. Oral notice shall be effective only for those parties in attendance personally or by counsel, or for those parties who receive a transcript containing or marked with a confidentiality designation. The designating party shall use due care to designate only information that truly merits such designation.

4.    The introduction of any CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY into open court during the trial or any hearing in this matter shall be governed by pertinent local rules of the Court, future orders of the Court or by stipulation between the parties.

5.    Any party to this action may designate anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" and any other person or entity may so designate anything that it produces or discloses. Any non-party producing information in this action may so designate such materials pursuant to Paragraph 25 below.

2

### A.     Production of Documents and Things

6.     The designating party shall mark each effected document or thing with a legend stating "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" as appropriate, or a comparable notice. Where a document consists of more than one page, at least the first page and each page on which confidential information appears shall be so marked. This provision shall not apply where it is impractical or infeasible to mark the affected document or thing such as in the case of an original that cannot be readily copied. In the event, the designating party shall provide separate written notice.

7.     If a party inadvertently fails to mark a document that contains confidential information with the appropriate designation, it may later apply such a designation by providing counsel for each other party written notice of the proper designation for each affected document or thing. For purposes of this provision, oral notice recorded by a court reporter shall constitute written notice for any party in attendance personally or by counsel, or who receives a transcript containing such a notice. Upon receiving such a notice, each party shall treat the affected documents or things, and all copies thereof, as designated as the notice states, and each receiving party shall make a reasonable effort to (1) prevent improper use or disclosure of such information and (2) obtain the return of such information that it disclosed to any person not authorized to receive such designated information, subject to its right to contest any designation in accordance with Paragraph 22 below, and subject to the exceptions in Paragraph 18 below regarding use or disclosure of information before receiving notice of any designation. The designating party shall also provide a replacement, marked pursuant to Paragraph 6 above, for each affected document and thing. After receipt of a marked replacement, and upon written request of the designating party, the receiving party shall certify in writing to counsel of the designating party that the receiving party has returned or destroyed, at its option, every affected unmarked document and thing and all copies thereof.

8.     Until seven (7) days after receipt, the receiving party shall treat all documents and things received from a producing party as being CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY, regardless of how such documents or things are marked. After that seven-day period, however, documents and things shall be treated in accordance with how they are actually designated, if at all, under Paragraphs 1-7 above.

**B.     Production for Inspection**

9.     Any entity that produces documents or things for inspection and copying may require by written notice to the receiving party that, with respect to each document or thing, (a) the document or thing shall be (i) treated as if it were designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and (ii) reviewed only by persons whom this Protective Order authorizes to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY, and any copies, summaries, excerpts, compilations, notes or other information obtained or generated during the inspection of the document or thing shall be treated as CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY. After designation by the producing party, the documents and things shall be treated in accordance with the designation, if any, of the producing party.

**C.     Depositions**

10.     A party may designate deposition transcripts and exhibits as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" only (a) orally on the record during the deposition; or (b) by notifying all other parties in writing within 30 days of receiving the transcript of the exhibits, transcript, or portions thereof, that contain CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION.

11.     Until thirty (30) days after receiving a deposition transcript, each party shall treat the entirety of each deposition transcript, all information disclosed therein, and each exhibit thereto as CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY unless before the deposition, the exhibit was properly treated as not having any CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION. After the thirty (30) day period, however, deposition transcripts, all information disclosed therein and each exhibit thereto, shall be treated in accordance with how they are actually designated.

4

**D.    Redactions**

12.    Any producing party may redact material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity.

**III.    LIMITATIONS ON USING AND DISCLOSING INFORMATION**

**A.    Limitation on Use and Disclosure**

13.    All CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY produced or exchanged during this litigation shall not be disclosed or used except for the purpose of conducting this litigation, including any appeal resulting therefrom, and not for any other business, commercial or other purpose whatsoever. As an example only, such information shall not be used by a recipient for any commercial purpose, for filing, prosecuting or opposing any patent application (of any type) or a similar request for protection, for patent reissue or reexamination request or for developing a product. Notwithstanding the above limitations, the parties agree that all documents produced and all discovery responses served in *Medtronic et al v. Kyphon Inc.*, No. C 06-2559 SI (N.D.Cal.), may be used as if produced or served in this suit subject to the terms of this protective order.

Any attorney for or representing either Party who obtains, receives, has access to, or otherwise learns, in whole or in part, technical information designated "Attorneys' Eyes Only" under this Protective Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent application for any Party to this case during the pendency of this case and for two years after the conclusion of this litigation, including any appeals. To ensure compliance with the purpose of this provision, each Party shall create an ethical wall between those persons with access to technical information designated "Attorneys' Eyes Only" and those individuals who prepare, prosecute, supervise, or assist in the prosecution of any such patent application.

14.    Anything designated CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY shall not be disclosed or made available to any person or entity other than:

A.    Attorneys of Wyatt, Tarrant & Combs, LLP; Fish & Richardson P.C.; Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.; Akin Gump Strauss Hauer & Feld LLP, as well as Peter Toren of Sidley Austin LLP, including necessary clerical and support personnel (for example, paralegals, data entry personnel, copy services, visual aid providers or jury consultants) who are assisting such attorneys. Any outside attorney or law firm other than those indicated above may be added to this Protective Order as counsel of record for a party upon ten (10) days advance written notice to all other parties, but shall not be added to the Protective Order nor entitled to access to any CONFIDENTIAL INFORMATION – ATTONEYS' EYES ONLY should any other party object in writing to the designation of counsel during such ten (10) day period; any such objection shall be resolved by the Court if not resolved among the parties.

      B.     Chad A. Hanson, in-house counsel for Defendants, and David Shaw, in-house counsel for Kyphon Inc., along with their respective in-house paralegal and clerical support staff who are directly involved in the litigation.

      C.     Outside experts, consultants, and mock jurors who are specifically retained by a party to this action for purposes of this litigation and who are not otherwise currently employed by (1) a party, or (2) any predecessor, parent or affiliated company of a party, and all necessary clerical and support personnel who assist such experts or consultants, subject to the provisions regarding designating persons under this Protective Order in Paragraph 20 below;

      D.     The Court and any persons the Court employs whose duties require access to the information, including jurors and court reporters; and

      D.     Officers before whom a deposition or other testimony is taken (including without limitation, stenographic reporters and videographers) and necessary clerical and support personnel who are assisting such officers, who are provided a copy of this Protective Order and advised that confidential information disclosed to them may not be used in any manner other than with respect to this action.

      15.     Anything designated "CONFIDENTIAL INFORMATION" shall not be disclosed or made available to any person or entity other than (a) a person or entity authorized in Paragraph 14 above to receive information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY"; and (b) Harvinder S. Sandhu, M.D.. Furthermore, unless Plaintiffs' counsel has a good faith belief that Dr. Sandhu had previously had access to the material (*e.g.*, documents on which he was copied, he received, or he otherwise had access), Dr. Sandhu shall not have access to: (i) confidential materials produced in, and related solely to, the California litigation between the parties to this agreement; or (ii) materials designated "CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY".

**B.     Filing Under Seal**

16.     Anything filed with or submitted to the court (including without limitation, pleadings, motions, transcripts or portions thereof) that comprises, contains, discloses, reproduces or paraphrases any information that is designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" shall be filed under seal, shall be kept confidential and under seal until further order of the court and shall not be opened except by the court or as ordered by the court. The first page of any document filed under seal shall bear a notice stating (a) the litigation case number, (b) the identity of the party filing the materials, (c) a brief title or description of the type of material contained therein, and (d) the date of filing or submission and the conspicuously placed warning legend or the equivalent; "The envelope, filed in this case by [name of party] contains ['CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY' or 'CONFIDENTIAL INFORMATION'], access to which is restricted by a Protective Order of this court. This envelope is not to be opened or the contents thereof revealed except by prior order of this court." This Protective Order shall apply to all materials filed with the court in a substantially similar manner prior to the effective date of this Protective Order.

**C.     Depositions**

17.     No person shall attend portions of depositions during which information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" is disclosed unless such person is an authorized recipient of such information under this Protective Order. If, during a deposition, the response to a question would require the disclosure of CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION, the witness may refuse to answer or complete his or her answer, or any party that designated the information as confidential may instruct the witness not to answer or complete his or her answer, until any persons not authorized to receive that information have left the room. If the persons not authorized to receive confidential information refuse to leave the room, the deposition shall continue as to non-confidential matters only or may be adjourned, at the option of the examining party. Each party reserves its right to demand the suspension of the taking of the deposition under Rule 30(d).

**D.     Exceptions**

18.     Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict the use or disclosure of information, documents or things, if, at the time of such use or disclosure:

     A.     A party is merely using or disclosing its own information. A party may freely use and disclose its own CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION without restriction.

     B.     The court has ordered such use or disclosure, or the court has ordered the relevant information undesignated. If the court orders such use or disclosure, then unless the court orders otherwise, the information, and any entity receiving any such information, shall otherwise be subject to this Protective Order.

     C.     Each party that produced the information or designated the information as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" has consented in writing to such use or disclosure.

     D.     The information is used or disclosed in the examination, at a deposition hearing, or trial, of any current or former officer, director, employee, agent, expert or consultant

7

of the party whose information is used or disclosed, so long as that person had access or knowledge of the information.

               E.      The person or entity receiving the information wrote, was the source for, or lawfully previously received that information. Counsel may examine a witness in a good faith effort to determine whether that person had access to or knowledge of the information, provided that such examination be undertaken without the disclosure of the substance of such confidential information to the witness unless and until counsel has determined, in good faith, from such examination that the witness did, in fact, have lawful access to such information prior to this litigation.

               F.      The information (1) was part of the public domain or publicly available when it was produced, or (2) becomes part of the public domain or publicly available through no act, omission or fault of any receiving party or its counsel or agents, and through no unlawful or improper act of any other person.

               G.      The information is or was independently developed, prior to receipt in this litigation, by the party wishing to use or disclose the information; or

               H.      The information (1) is or was in the lawful possession of the party wishing to use or disclose the information and (2) was not acquired under any obligation of confidentiality to the designating party, nor through the illegal or improper act of any person.

        19.      Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict counsel from referring to in a very general way, relying on, or evaluating CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION in the course of advising a party client with respect to this litigation, provided, however, that counsel shall not disclose the specific substance or content of any CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION if such disclosure would violate this Protective Order.

IV.    DESIGNATING PERSONS UNDER THE PROTECTIVE ORDER

        20.      The parties may in good faith disclose "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" to mock jurors and jury consultants under the protective order provided such persons execute an agreement, in the form attached hereto as Exhibit A that they have read this Protective Order and agree to be bound by all of the provisions hereof and to be subject to the jurisdiction of this court for enforcement. Confidential Business Information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" shall not otherwise be disclosed by the Receiving Party to its independent technical, damages, or other consultants retained for purposes of this litigation and their necessary employees until the procedures in subparagraphs (A) through (D) are followed:

               A.      At least five business (5) days before the designated Confidential Information is to be disclosed to any independent expert or consultant or employees thereof, the party wishing to disclose such information shall provide to the opposing party:

               (i)      The person's name, business address, present employer and a current copy of the person's curriculum vitae;

               (ii)     The names of any employees who will be assisting the person; and

               (iii)    An agreement, in the form attached hereto as Exhibit A, from each person and each employee identified in Paragraph (ii) that they have read this Protective Order and agree to be bound by all of the provisions hereof and to be subject to the jurisdiction of this court for enforcement.

8

B.     Unless counsel of record for any party notifies proposing counsel of its objection to any person proposed hereunder within five (5) business days after receipt of the information referred to in Paragraph 20(a) above, such person(s) shall thereafter be entitled to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY and CONFIDENTIAL INFORMATION pursuant to the provisions of this Protective Order.

C.     Should counsel of record notify proposing counsel of its objection to any person proposed hereunder, the parties shall meet and confer within 10 days of any such objection. If the meet and confer is unsuccessful, proposing counsel may thereafter move the court for an order permitting such person to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY and CONFIDENTIAL INFORMATION, provided, however, that no such information may be disclosed to any person as to whom an objection has been made until the motion is decided by the court or by an appellate court, should appellate review be sought.

D.     Each party agrees that it will not contact any consultant or employee thereof of the opposing party whose identity is revealed under this paragraph, provided, however, that the parties may take discovery of "any witness who has been identified as an expert whose opinions may be presented at trial." Fed.R.Civ.P. 26(b)(4).

21.     Counsel for any receiving party who discloses information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or CONFIDENTIAL INFORMATION" to any person who is authorized to receive such information, shall be responsible for obtaining and keeping a copy of an executed agreement for each such person, as required by Paragraph 20 above.

V.     **DISPUTES REGARDING DESIGNATIONS**

22.     Any party to this action may contest at any time the designation of anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" by giving the designating party written notice that identifies the relevant designated information and states in reasonable detail the reasons why the information should not be so designated. Any parties in disagreement about such designations shall meet and confer in good faith in person or by telephone to attempt to resolve their disagreement. If those parties cannot resolve their disagreement within ten (10) days after a party contests the designation, any party may thereafter petition the court to resolve the matter. The designating party shall bear the burden of establishing that the information should be so designated. If such an objection or petition is made, such information shall be treated according to the designation that the designating party gives it until the issue is resolved in writing by the parties or the petition is decided by the court or an appellate court, should appellate review by sought.

VI.     **THIRD PARTIES**

23.     This Protective Order applies to all information that a non-party discloses in connection with this litigation. All information that any non-party designates as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall be treated as such in accordance with the terms of this Protective Order, subject to any party's rights to contest any designation in accordance with Paragraph 22 above.

24.     If any person or entity is subpoenaed, ordered by a court of competent jurisdiction, or otherwise legally required to produce information that another entity designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" in this action, the person or entity receiving the request or order shall (a) inform each person or entity that sent such request or order that the information is subject to this Protective Order, (b) immediately notify each designating party of the existence and general

9

substance of each such order or request, (c) promptly furnish each designating party with a copy of the document(s) it received that memorialized the request or order, and (d) not interfere with any designating party's response or objection to any such order or request.

      25.      Nothing in this Protective Order requires any person or entity to contest, appeal, or violate a subpoena, legal process, or court order. If the designating party wishes to contest any such request or order, it shall have the burden of doing so. The entity receiving the subpoena, process, or order shall be entitled to comply with it unless (a) it is quashed or modified in a way that does not require such compliance, or (b) (i) it need not be complied with yet and (ii) the entity receives notice, within ten (10) days after it notifies each designating party of the existence of the request or order, that an entity has or will contest the request or order.

## VII.    WAIVER AND INADVERTENT DISCLOSURES

      26.      If a producing party inadvertently discloses information without designating such information as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," that disclosure shall not be deemed a waiver of confidentiality with regard to that information, or similar or related information.

      27.      Neither the existence of this Protective Order, nor the designation of anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall, in and of itself, raise any inference as to whether the designated information is confidential.

### A.    Privilege or Immunity

      28.      Nothing in this Protective Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a party claiming that it inadvertently disclosed information subject to any privilege or immunity. Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product immunity, or other privilege or immunity.

      29.      If any party claims that it has inadvertently disclosed information subject to the attorney-client privilege, work product immunity, a legal prohibition against disclosure, or other privilege or immunity, such disclosure shall not constitute a waiver of the applicable privilege or legal prohibition against disclosure if the producing party provides written notice of the inadvertent disclosure to each receiving party within ten (10) days of becoming aware of the inadvertent disclosure. The parties reserve all rights to seek the return or destruction of all such information and anything relating to such information (including without limitation notes or work product), and to preclude the further use or disclosure thereof.

      30.      If written notice of inadvertent disclosure is provided within 10 days of the party becoming aware of the relevant inadvertent disclosure, then: (a) upon receipt of such notice of inadvertent disclosure, each receiving party shall immediately return or destroy all copies of any documents and things that the disclosing party claims it inadvertently disclosed, and, if requested in writing to do so, certify in writing to the producing party that it has done so, and (b) until any issue of how to treat such information is resolved (for example, by court order or agreement of the parties), such information shall be treated as though it subject to the claimed privilege or immunity, and shall not be further used or disseminated by the receiving party. If any receiving party disputes that any such information is subject to such privilege or immunity, or otherwise disagrees about the return, disclosure (e.g., if the receiving party disputes whether the disclosure was inadvertent), or use of any such information, then that party and the party claiming inadvertent disclosure shall meet and confer in good faith to attempt to resolve their disagreement. If those parties cannot resolve their disagreement within ten (10) days after

receipt of such notice, then any of those parties may thereafter petition the court to resolve the matter. The party seeking to designate the information as subject to privilege or immunity shall have the burden of proving that the information is subject to privilege or immunity and, if relying on the rule against inadvertent waiver under this Protective Order, that the disclosure was inadvertent and that written notice was provided within the required 10 days. When written notice of inadvertent disclosure is provided within 10 days of the party becoming aware of the inadvertent disclosure, the court will rule on claims of privilege or immunity without regard to the fact that such information has been disclosed or used.

## VIII.  VIOLATION

31.     Each person and entity that receives any information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" agrees to be subject to the jurisdiction of this court for the purpose of any proceeding relating to the performance under, compliance with, or violation of this Protective Order, even after the conclusion of this litigation.

32.     Each party shall be entitled to all remedies existing under law and equity if any information that is designated (at the time of use or disclosure) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" is used or disclosed in violation of this Protective Order, or if any term of this Protective Order is violated in any other way. It shall not be a defense to a request for injunctive relief that the aggrieved party possesses an adequate remedy at law.

33.     If any information that is designated (at the time of use or disclosure) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" is used or disclosed other than in the manner authorized by this Protective Order, then the party responsible for such use or disclosure shall immediately disclose such use or disclosure to counsel of record and each entity that supplied or designated the affected information and, without prejudice to other rights and remedies available to the supplier or designator, shall make every effort to obtain the return of such information and prevent further improper use or disclosure of such information. Such disclosure shall include: (a) a description of the confidential information used or disclosed (with Bates numbers of any documents involved, if known); (b) the date and nature of the use and disclosure; (c) the identity of the person(s) who made such use or disclosure and to whom the confidential information was disclosed; and (d) a description of the efforts taken to comply with the provisions of this paragraph.

34.     Except as provided for elsewhere in this Protective Order, any disclosure or use by any person or entity of any inadvertently disclosed or inadvertently non-designated information shall not be deemed a violation of this Protective Order if such disclosure or use occurs before that person or entity receives written notice of that inadvertent disclosure or non-designation. For purposes of this provision, oral notice recorded by a court reporter shall constitute written notice.

11

## IX.    CONCLUSION OF LITIGATION

35.    Absent a court order or written permission of the disclosing and designating party or parties, and unless otherwise stated in another provision in this Protective Order, all provisions of this Protective Order that restrict the disclosure or use of information shall continue to be binding after the conclusion of this action.

36.    Upon written request by the disclosing or designating party or parties after the conclusion of this litigation and all appeals therefrom, and absent a court order to the contrary (a) all documents or things (including transcripts) produced or exchanged in this litigation, and all copies thereof, shall be returned to the producing party or destroyed and (b) anything (including without limitation exhibits and attorney work product) that contains or comprises information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall be returned to the producing party or destroyed. Each party or entity (including without limitation, court reporters) that received or has any such documents or things, or copies thereof, shall certify in writing to counsel for the producing party that it returned or destroyed, at its option, every such document and thing, and all copies, summaries and abstracts thereof, in its possession, custody or control.

37.    Notwithstanding Paragraph 36 above, each firm having counsel of record may retain for archival purposes one copy of all pleadings, papers filed with the court, written discovery requests, deposition transcripts, transcripts of court proceedings, correspondence and work product, including portions designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," subject to the continuing obligations of all other provisions of this Protective Order, and provided that nothing in said archival copy shall be disclosed to anyone other than that counsel's partners, associates or employees.

38.    The court retains jurisdiction even after final disposition of this litigation to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the court may from time to time deem appropriate. The parties hereto reserve all rights to apply to the court at any time, before or after final disposition, for an order:  (a) modifying this Protective Order; (b) seeking further protection against discovery or other use of confidential information, or documents, transcripts or other materials reflecting confidential information; or (c) seeking further production, discovery, disclosure or use of claimed confidential information, or documents, transcripts or other materials reflecting confidential information.

## X.    AMENDMENTS

39.    Changes or exceptions to this Protective Order may be made only by written agreement of the parties subject to court approval, or by court order.

40.    This Protective Order does not abridge and is without prejudice to the rights of a party (a) to oppose or object to the disclosure, production, use or admissibility of anything, or to refuse to disclose or produce anything based on any available legal grounds or objections, (b) to modify or seek relief from this Protective Order, (c) to seek judicial review or other appropriate action regarding any court ruling concerning information that is or was designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," or (d) to seek any additional protection that the party deems appropriate.

IT IS SO ORDERED this 17th day of August, 2006.

s/Diane K. Vescovo
_____
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

12

J.

## EXHIBIT A
## AGREEMENT TO BE BOUND

I, _____ hereby state the following:

I reside at _____

I have read the Protective Order dated _____, 2006 and have been engaged as a _____ on behalf of _____ in the preparation and conduct of the action *Harvinder S. Sandhu, M.D. and Kyphon, Inc. v. Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc., and SDGI Holding, Inc.*, Case No. 05-2863-JPM-dkv in the United States District Court for the Western District of Tennessee. I am fully familiar with and agree to comply with and be bound by the provisions of said Protective Order. I understand that I am to retain all copies of any information obtained pursuant to said Protective Order, and that all copies are to remain in my personal custody until I have completed my assigned duties, whereupon the copies, and any writings prepared by me containing any information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" are to be returned to counsel who provided me with such material.

I will not divulge to persons other than those specifically authorized by said Protective Order, and will not copy or use except solely for the purpose of this litigation, any information obtained pursuant to said Protective Order, except as provided in said Protective Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Protective Order.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on _____, 2006.

_____

05-2863 sandhu pl prot.ord.doc

13

**Exhibit C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| HARVINDER S. SANDHU, M.D. and KYPHON INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-2863-MI V |
| MEDTRONIC SOFAMOR DANEK, INC., MEDTRONIC SOFAMOR DANEK USA, INC. and SDGI HOLDINGS, INC. | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' SECOND MOTION TO COMPEL

Defendants Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc. and SDGI Holdings, Inc. (collectively "Medtronic") request that this Court order Plaintiff Kyphon Inc. ("Kyphon") to produce certain documents, provide complete interrogatory answers, and certify its compliance with its discovery obligations.

### INTRODUCTION

Plaintiffs filed this case nearly a year ago but have yet to produce the key documents and answer the interrogatories that go to the heart of their case, including many of the facts underlying Kyphon's Application for Preliminary Injunction.

Kyphon filed its Application for Preliminary Injunction on September 28, 2006, asking the Court to require Medtronic to withdraw its Arcuate™ XP product from the market. The Court has set the injunction hearing for November 16, 2006. Kyphon has proposed that all depositions relating to the issues presented by the Application for Preliminary Injunction be completed by November 10, 2006. Thus, time is of the essence, and Medtronic's ability to

respond fully to Kyphon's request for injunctive relief is impaired by Plaintiffs' refusal to respond adequately in discovery.

Specifically, Kyphon has refused to produce key documents and adequately answer two interrogatories about its theory of patent infringement. For instance, Kyphon's Application for Preliminary Injunction urges this Court to follow the claim-construction decision of a special master in the District of Delaware from Kyphon's prior litigation against Disc-O-Tech Medical Technologies ("Disc-O-Tech"). Medtronic has repeatedly requested that Kyphon produce the documents, including motions, briefing, filings, transcripts, expert reports, and other documents from Plaintiffs' counsel's Disc-O-Tech file, but Kyphon has refused to provide any of the documents until recently — and still intends to delay the production of the remaining documents until after the deadline for Medtronic to respond to Kyphon's Application for Preliminary Injunction because of "confidentiality" concerns even though there is an Agreed Protective Order in this case. The documents should have been produced months ago as part of Kyphon's initial disclosures; Kyphon now belatedly claims that it is still in the process of requesting Disc-O-Tech's permission to produce the documents.

In addition, rather than answering Medtronic's interrogatories regarding Kyphon's infringement case as contemplated by this Court's Order of August 30, 2006, *see* Docket No. 103 and Declaration of Fred I. Williams in Support of Defendants' Second Motion to Compel ("Williams Decl."), Ex. 1, Kyphon has responded by making generic reference to the District of Delaware's claim construction process in the Disc-O-Tech case; saying that other terms "should be given their ordinary meaning" without disclosing what Kyphon contends the ordinary meaning to be; and incorporating by reference Kyphon's inadequate answer to a different interrogatory served in this case.

2

These are just a few examples of Plaintiffs' refusal to answer discovery in this case. In addition to refusing to respond appropriately to Medtronic's discovery requests, Plaintiffs have delayed Medtronic's moving to compel Kyphon to answer discovery by delaying participation in the meet-and-confer process; ignored Medtronic's letters trying to resolve discovery disputes without Court intervention; made unfounded objections; and produced hundreds of thousands of pages of electronic documents that were coded in a way that obfuscated key evidence. It is difficult to cast aside these occurrences as the product of chance given Plaintiffs' repeated and sequential mishaps and delays, which together suggest a pattern designed to delay discovery.

Plaintiffs' delays impair Medtronic's ability to respond to Kyphon's Application for Preliminary Injunction. Medtronic has tried on multiple occasions to work with Kyphon to resolve the discovery issues raised in this Motion, but Kyphon has refused to provide the requested information in a timely manner, making this Motion necessary.

Medtronic, therefore, requests that the Court compel the production of the following documents and interrogatory answers:

1.    All non-privileged documents, in unredacted form, from Kyphon's prior lawsuit with Disc-O-Tech including, but not limited to, the parties' motions, briefing, filings, transcripts, affidavits, declarations, and expert reports; and

2.    Full and complete answers to Medtronic's interrogatories requesting Kyphon's infringement contentions and claim construction positions.

## RELEVANT FACTS

Plaintiffs filed this lawsuit on November 23, 2005, asserting contract, trade secret, inventorship, and other allegations. Then they did practically nothing until they amended their complaint to add patent infringement claims on April 26, 2006, two weeks _after_ Medtronic sued

3

Kyphon in the Northern District of California, claiming patent infringement and seeking a declaratory judgment regarding the invalidity and noninfringement of the same Kyphon patents. A dispute then arose over the proper venue for trial of the parties' claims regarding the Kyphon patents; those issues are fully briefed in this Court and in the California case. *See, e.g.*, Docket No. 50.

The parties then served discovery requests in both cases. Consistent with its position that the Kyphon patents should be litigated in the California case, Medtronic propounded discovery there relating to Kyphon's patent-infringement contentions, claim construction positions, and related documents. Consistent with its position that the Kyphon patents should be litigated in this case, Kyphon propounded discovery here relating to its patent-infringement claims.

Medtronic thus served its First Set of Document Requests to Kyphon, Inc. (1-41) and First Set of Interrogatories to Kyphon, Inc. (1-5) on June 29, 2006 (collectively, "first set of discovery requests"). *See* Williams Decl., Exs. 2-3. Kyphon objected to the discovery requests on August 1, 2006. S*ee id.*, Exs. 4-5, but did not deliver any responsive documents to Medtronic until August 21, 2006.

Because the parties agreed that discovery taken in one case may be used without limitation in the other case, Medtronic has answered Kyphon's discovery in this case relating to the Kyphon patents-in-suit. Unfortunately, Kyphon refuses to respond to Medtronic's discovery in the California case, on the mistaken ground that Kyphon need not answer the discovery in light of the ongoing dispute over which court will exercise jurisdiction over the Kyphon patent claims.

1.    **Kyphon Delays Providing Discoverable Information in Response to Medtronic's First Set of Discovery Requests.**

In addition to the technical errors in its production, Kyphon provided inadequate responses to Medtronic's First Set of Document Requests and First Set of Interrogatories. *See id.*, Exs. 4-5.[1]    Kyphon eventually agreed to (1) supplement its responses to certain of Medtronic's interrogatories; and (2) certify that it had produced or shortly would produce all relevant, non-privileged documents responsive to 12 of Medtronic's document requests, including request numbers 30 and 39. *See id.*, Ex. 10. The next day, however, Kyphon sent a letter indicating that it, in fact, had decided to withhold the non-privileged documents responsive to Medtronic's document request numbers 30 and 39. *See id.*, Ex. 9.

2.    **Kyphon Refuses to Answer Discovery Relating to the Kyphon Patents-in-Suit.**

Medtronic served its Second Set of Document Requests (42-86) and Second Set of Interrogatories (6-16) on August 3, 2006 (collectively, "second set of discovery requests"). *See id.*, Exs. 11-12. Kyphon objected and provided inadequate answers to Interrogatories 6-7 on the evening of September 1, 2006. *See id.*, Ex. 13. Kyphon objected and provided inadequate

---

[1]    Medtronic first raised the inadequacies of Kyphon's responses in a letter to Kyphon's counsel on August 15, 2006, requesting a meet-and-confer call on August 18, 2006. *See id.*, Ex. 6. Kyphon's counsel claimed they were unavailable to meet-and-confer as requested for another week, so the parties had a meet-and-confer call on August 24, 2006, during which Kyphon's counsel agreed to provide some additional information and confer with their client about providing some additional information. *See id.*, Ex. 7. Medtronic summarized the content of the meet-and-confer call in a letter to Kyphon on August 30, 2006, which requested a response by September 1, 2006, regarding several of the issues on which Kyphon's counsel had stated an intention, one week earlier, to confer with Kyphon about providing additional information. *Id.* Kyphon was unavailable to discuss the issues further until September 11, 2006, when the parties spoke again by telephone, and did not provide a written response until September 12, 2006. *See id.*, Exs. 8-10.

answers to the remaining portions of the second set of discovery requests on September 6, 2006. *See id.*, Exs. 14-15.

On September 8, 2006, Medtronic raised the inadequacies of Kyphon's responses in a letter to Kyphon's counsel. *See id.*, Ex. 8. The parties met and conferred by telephone on September 11, 2006, but were unable to resolve the outstanding issues, which were submitted to the Northern District of California court for decision. *See id.*, Ex. 16; *see also id.*, Exs. 11 and 17. Medtronic's letter brief to compel Kyphon to provide complete discovery responses is still pending in the California court. *See id.*, Ex. 16.

Because Kyphon's refusal to answer the aforementioned discovery requests in the California case now impacts Medtronic's opportunity to respond fully to Kyphon's Application for Preliminary Injunction in this case, Medtronic requests that this Court address two discrete issues relating to Kyphon's discovery misconduct, as discussed below.

### ARGUMENT & AUTHORITY

Kyphon ought to produce documents and otherwise fully answer discovery in this case. Instead, Kyphon has demonstrated a consistent pattern of delay and obfuscation to avoid providing information that is plainly discoverable. In fact, Kyphon refuses to produce the same type of information that Kyphon, itself, has demanded of — and received from — Medtronic in this case.

In light of the foregoing, an order requiring Kyphon to provide the information discussed below is appropriate under Rule 37(a), which provides that "if a party, in response to a request for production submitted under Rule 34, fails to ... permit inspection as requested, the discovering party may move for an order ... compelling inspection in accordance with the request." *See* Fed. R. Civ. P. 37(a)(2)(B). The Rule provides for such an order not only when a party fails entirely to provide any response but also when a response is provided, but it (like

6

Kyphon's) is at least partially evasive or incomplete. *See* Fed. R. Civ. P. 37(a)(3) ("For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.").

The underlying policy of the federal rules governing discovery encourages significant judicial involvement, when necessary, in discovery disputes to ensure that discovery is reasonable under all the circumstances. The following two discovery issues invite Court involvement at this time:

### 1. Kyphon should be required to produce all non-privileged documents from its prior lawsuit against Disc-O-Tech.

Kyphon has filed a motion telling this Court that Medtronic should be ordered to remove a product from the market for the reasons discussed in Kyphon's prior litigation with Disc-O-Tech. At the same time, Kyphon refuses to produce many of the pleadings and affidavits from that lawsuit that were filed under seal and are otherwise unavailable to Medtronic. Although Medtronic requested the entire file from the Disc-O-Tech case, Kyphon failed to produce many documents, including the bulk of the sealed motions, briefing, filings, transcripts, expert reports, and other documents that are germane to the case. There must be something about the Disc-O-Tech lawsuit that Kyphon does not want brought to the Court's attention before the Court considers Kyphon's Application for Preliminary Injunction.

The aforementioned documents are responsive to numerous of Medtronic's requests for production including, but not limited to, request numbers 30, 39, 46-56, 58, 61-72, and 74-75. *See* Williams Decl., Ex. 2 at 8-9 and Ex. 11 at 3-11. For instance, Medtronic's request for production number 74 seeks the production of

> All documents and things referring to, relating to, concerning, prepared, filed,
> served, or produced in (a) the lawsuit captioned *Kyphon, Inc. v Disc-O-Tech*
> *Medical Technologies, Ltd. and Disc Orthopaedic Technologies, Inc.*, No. 04-
> 204-JJF (D. Del.), (b) any other domestic or foreign lawsuit or legal or

7

> administrative proceeding involving Kyphon or any of the Kyphon patents-in-suit
> or related patents, or (c) any other domestic or foreign lawsuit or legal or
> administrative proceeding involving Kyphon or any of the Kyphon patents-in-suit
> or related patents involving any of the Kyphon patents-in-suit, related patents, or
> products, devices or parts embodying, practicing or employing the alleged
> inventions claimed or disclosed in the Kyphon patents-in-suit or related patents
> ....

*Id.*, Ex. 11 at 21. In addition, Medtronic's request for production number 30 seeks the

production of

> All documents and things referring to, relating to or concerning any legal or
> administrative proceedings involving any of the Accused Kyphon Products,
> including without limitation, medical malpractice suits and product liability suits.

*Id.*, Ex. 2 at 17; *see also id.*, Ex. 8 at 1 and Ex. 10 at 1-2.

After it amended its complaint to add patent infringement claims, Kyphon also should

have produced these documents as part of its initial-disclosure obligations under Federal Rule of

Civil Procedure 26(a)(1) ("a party must, <u>without awaiting a discovery request</u>, provide to other

parties ... a copy of, or a description by category and location of, all documents ... that are in the

possession, custody, or control of the party and that the disclosing party may use to support its

claims or defenses, unless solely for impeachment") (emphasis added). Because Kyphon

elected not to describe the Disc-O-Tech documents in its initial disclosures, it was obliged to

produce them under Rule 26.

Kyphon initially agreed to produce the requested documents from its Disc-O-Tech files.

*See* Williams Decl., Ex. 10 at 1. Regrettably, Kyphon reneged on its agreement the next day,

based on an untimely venue/jurisdiction objection. *See id.*, Ex. 9. Medtronic then renewed its

request for the documents after the Application for Preliminary Injunction was filed, and Kyphon

agreed to produce some of the documents "on a rolling basis" but claimed it needed to seek

third-party permission before producing the bulk of the key documents. *See id.*, Ex. 18.

8

Although Kyphon claims that it produced some of the publicly available documents from the Disc-O-Tech case on October 2, 2006, it did so by regular mail, which was a departure from the parties' prior practice of serving discovery materials by Federal Express, and the package was inexplicably delayed. *See id.*, Ex. 19. When Kyphon re-produced the documents nearly a week later, it unfortunately directed them to a non-existent person in Dallas, Texas. *See id.*, Ex. 20. The original production was finally delivered to Medtronic's counsel on the same day that the re-production was mis-delivered to Dallas. The saga of the Disc-O-Tech documents thus constitutes another example of Kyphon's delay tactics. *Compare id.*, Ex. 8, *to id.*, Exs. 19-20.

In discovery, Kyphon has asserted an unfounded venue/jurisdiction objection to Medtronic's request for production number 74, *see id.*, Ex. 14 at 21-22, but waived any such objection to request for production number 30. *See id.*, Ex. 4 at 17. Therefore, the documents should have been produced months ago.

In any event, Kyphon's venue/jurisdiction objection to document request number 74 should be overruled. As demonstrated by Medtronic's motion to compel in the California case, Kyphon's venue/jurisdiction objection affects more than just Medtronic's requests for the Disc-O-Tech documents. *See id.*, Ex. 16 at 2-3. In fact, Kyphon refuses to provide any response to 49 of Medtronic's discovery requests based on its unfounded and irrelevant venue/jurisdiction objection: "Kyphon objects to this interrogatory on the ground that it seeks discovery relating to Medtronic's declaratory judgment claims because this Court does not have subject matter jurisdiction over these claims and has not yet ruled on Kyphon's motion to dismiss these claims on this basis." *Id.*

Apparently, Kyphon believes that its obligation to answer Medtronic's discovery should be stayed until the Court resolves the venue issues presented by Defendants' Cross-Motion to

9

Dismiss, Stay or Transfer Kyphon's Second-Filed Patent Claims, Docket No. 50, but that

Medtronic must nonetheless answer Kyphon's discovery. But Kyphon has never requested such

a stay in this Court or in the California court.[2] Instead, in order to expedite resolution of the two

lawsuits, the parties agreed that discovery taken in this case is admissible in the litigation

between these parties in the California court, and vice versa. Kyphon has conceded the infirmity

of its venue/jurisdiction objection by insisting in this case that Medtronic cannot avoid answering

discovery on the Kyphon patents merely because the issue of where Kyphon's patents will be

litigated remains unresolved. *See* Docket No. 79 at 3-4. Given Kyphon's demands that the

parties not wait to respond to discovery in light of the pending venue dispute, Medtronic

answered Kyphon's discovery in this case. It is therefore disingenuous of Kyphon to try to

avoid answering Medtronic's requests on that basis. *See* Williams Decl., Ex. 9 at 2-3 and Ex. 14.

By agreeing to make discovery reciprocal between this case and the Tennessee litigation,

Medtronic sought to "minimize the possibility of duplicative discovery." *See Wilk v. Am. Med.*

*Ass'n*, 635 F.2d 1295, 1297 n.4 (7th Cir. 1981) (endorsing practice of entering agreements to

make discovery reciprocal in concurrent litigation in order to "minimize the possibility of

duplicative discovery"); *Finch v. Thomas Asphalt Paving Co.*, 252 F.Supp.2d 459, 467 (N.D.

Ohio 2002) ("To avoid unnecessary duplication of effort," the court required reciprocal

---

[2]      Contrary to Kyphon's objection, it is well-settled that discovery "need not cease
during the pendency of a motion to dismiss." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852
F.2d 936, 945 n.11 (7th Cir. 1988); *Dickson v. Chicago Allied Warehouses, Inc.*, 1993 WL
362450, at *11 (N.D. Ill. Sept. 15, 1993); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.
Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ.
Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact,
such a notion is directly at odds with the need for expeditious resolution of litigation."). The
courts have observed that "courts have not looked favorably upon granting a blanket stay of
discovery pending resolution of a challenge to the legal sufficiency of a plaintiff's complaint." *In
re Valence Tech. Sec. Litig.*, 1994 WL 758688, at *2 (N.D. Cal. Nov. 18, 1994).

discovery in concurrent state and federal cases). In reneging on the agreement and withholding relevant discovery from Medtronic, Kyphon is wasting judicial resources. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."); *Kerasotes Mich. Theatres, Inc. v. Nat'l Amusements, Inc.*, 139 F.R.D. 102, 106 (E.D. Mich. 1991) ("the goal of the federal rules to seek a 'just, speedy and inexpensive determination of every action' is ... furthered by sharing discovery with collateral litigation").

Moreover, courts, including this one, "strongly favor[] access to discovery materials to meet the needs of parties engaged in collateral litigation" and to avoid duplicative discovery. *Foltz*, 331 F.3d at 1131*; Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992); *Ach Food Cos., Inc. v. Wiscon Corp.*, 2004 WL 3314916, at *1 (Dec. 30, 2004) (because two independent lawsuits "would lead to duplicative discovery and trials," court granted motion to consolidate "to avoid unnecessary costs and to promote judicial economy and efficiency"); *Prudential Sec., Inc. v. Mills*, 944 F.Supp. 631, 637 (W.D. Tenn. 1996) (it would be unfair for plaintiff to arbitrate claims after plaintiff engaged in "comprehensive discovery" in dispute before American Stock Exchange); *Ellis v. Merck & Co.*, 2006 WL 448694, at *1 (W.D. Tenn. Feb. 19, 2006) (where multi-district litigation panel concluded that centralization under 28 U.S.C. § 1407 was "necessary in order to eliminate duplicative discovery," among other things, the court explained that without a stay of all further proceedings, the risk "of duplicative motions and discovery is significant"); *Jones v. Lewis*, 2006 WL 1006881, at *1 (W.D. Tenn. Apr. 17, 2006)(same).

Medtronic requests that this Court order Kyphon to produce all non-privileged documents from the Disc-O-Tech case in unredacted form and to certify that all of those documents have been produced.

**2.    As envisioned by the Court's Order of August 30, 2006, Kyphon should provide full and complete answers to Medtronic's interrogatory numbers 6 and 7.**

Kyphon refuses to supplement its answers to Medtronic's interrogatory numbers 6 and 7, which seek information about Kyphon's allegations of infringement and claim construction positions, including those at issue in Kyphon's Application for Preliminary Injunction which is based solely on Kyphon's claim that Medtronic infringes Kyphon's '404 patent.

Kyphon's improper motive in refusing to provide fulsome answers to these interrogatories requires a brief consideration of this Court's Order dated August 30, 2006, denying Plaintiffs' improperly filed second motion to compel. *See* Docket No. 103 and Williams Decl., Ex. 1. In that order, this Court adopted the compromise position offered by Medtronic to satisfy Kyphon's desire for supplemental answers to two interrogatories served in this case:

> As a compromise, Medtronic has proposed that Kyphon be required to substantively respond to Medtronic's Interrogatory Nos. 6 and 7 which were served in the California litigation on August 3, 2006, before Medtronic is required to supplement its answers to Kyphon's Interrogatory Nos. 2 and 3 in this action. The court agrees that this would be an orderly way to proceed. Therefore, [Kyphon's] motion to compel is denied for failure to consult in good faith as required by the Local Rules. Medtronic is required to supplement its responses to Kyphon's Interrogatory Nos. 2 and 4 within 30 days of service of Kyphon's responses to Interrogatory Nos. 6 and 7 in the California litigation.

*Id.* at 7. While the Court no doubt envisioned that Kyphon would provide complete answers to the interrogatories, the next day Kyphon served wholly inadequate answers to interrogatory numbers 6 and 7.

12

These interrogatories seek the most basic discovery in a patent infringement case: the basis for Kyphon's allegations of infringement, claim interpretation, and the identity of the accused devices. <u>Interrogatory number 6</u> requests, in pertinent part

> For each claim of each of Kyphon's patents-in-suit that Kyphon asserts is infringed by Medtronic, provide a claim chart containing in the first column the claim elements, and in the second column Kyphon's contentions with respect to the meaning and/or claim interpretation of the words and/or phrases used in each such claim, including but not limited to at least the following words and/or phrases....

*Id.*, Ex. 12 at 2-4. In response, Kyphon does nothing more than make generic reference to the claim construction findings in Kyphon's prior litigation with Disc-O-Tech; state that other terms "should be given their ordinary meaning" without stating what Kyphon contends the ordinary meaning to be; and incorporate by reference Kyphon's answer to a different interrogatory served in this case. *See id.*, Ex. 13 at 6.

> <u>Interrogatory number 7</u> requests that Kyphon
>
> Identify each device or product used or sold by Medtronic that, according to Kyphon, embodies, is covered by, makes use of, or otherwise practices any claim of Kyphon's patents-in-suit, and using the claim charts provided in response to Interrogatory No. 6, above, state with particularity the complete factual and legal basis for Kyphon's contentions that Medtronic "is infringing [each of the Kyphon patents-in-suit] by making, using, inducing or encouraging others to use, offering to sell, and/or selling devices that infringe and/or are used to infringe, directly or indirectly, one or more claims of [each of the Kyphon patents-in-suit]," (Kyphon's First Amended Complaint, Civil Action No. 05-CV-2863-MIV, ¶¶ 87, 101, 107, 113) including without limitation how each asserted claim of the Kyphon patents-in-suit is infringed either literally or under the doctrine of equivalents by each device or product identified herein, identify all documents relevant to such contentions, and identify the persons most knowledgeable with respect to the subject matter of this Interrogatory.

*Id.*, Ex. 12 at 7-8. In response, Kyphon does nothing more than incorporate by reference its answer to a different interrogatory served in this case. *See id.*, Ex. 13 at 7-8. Kyphon does not assert its aforementioned venue/jurisdiction objection to these interrogatories but nonetheless

13

refuses to provide any additional supplementation of its answers on the basis of the waived venue/jurisdiction objection. *See id.*, Ex. 9 at 3.

It is beyond reasonable dispute that Medtronic is entitled to the bases for Kyphon's infringement allegations so that it can defend itself, whether the claims are ultimately tried in this Court or in California. *See, e.g., Carver v. Velodyne Acoustics, Inc.*, 202 F.R.D. 273, 274 (W.D. Wash. 2001) (accused infringer is entitled to know what led the patent holder to file an infringement complaint). Furthermore, Kyphon's refusal to answer the interrogatories is inconsistent with its stated position that the parties should provide their patent-related contentions without regard for where the patents will be litigated. *See* Plaintiffs' Second Motion to Compel MSD, Docket No. 79 at 3-4. That Kyphon has provided <u>some</u> of the requested information in this case is not a proper basis for refusing to provide all of it in response to Medtronic's interrogatories in California.

In addition, Kyphon cannot satisfy its obligation to answer interrogatory number 6 by stating that the claim terms should be given their "ordinary meaning." Such a response begs the question and offers no meaningful discovery. The phrase "ordinary meaning" refers to a method of interpreting claims and is not a specific claim interpretation in and of itself. *See, e.g., Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) ("It has been long recognized ... that dictionaries, encyclopedias and treatises are particularly useful resources to assist the court in <u>determining</u> the ordinary and customary meanings of claim terms.") (citations omitted) (emphasis added). Interrogatory number 6, however, requests Kyphon's specific claim interpretation contentions, not the method by which Kyphon interprets the claim terms. Kyphon's answer to interrogatory number 6 is therefore non-responsive in part.

Medtronic requests that this Court order Kyphon to answer the interrogatories fully and completely.

## CONCLUSION

The time has come for Kyphon — as the Plaintiff in this case — to produce the relevant documents and interrogatory answers, especially given Kyphon's recent request for a preliminary injunction. Kyphon should be ordered to produce the requested documents and to fully and completely answer the aforementioned interrogatories.

Date: October 14, 2006

Respectfully submitted,

s/ Steven M. Zager
Leo Bearman, Jr. (#8363)
Bradley E. Trammell (#13980)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303


OF COUNSEL:

Steven M. Zager (*pro hac vice*)
Edward F. Fernandes
Michael Simons (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)
Paul A. Gennari *(pro hac vice)*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4200

ATTORNEYS FOR DEFENDANTS
MEDTRONIC SOFAMOR DANEK, INC.,
MEDTRONIC SOFAMOR DANEK USA,
INC., and SDGI HOLDINGS, INC.

## CERTIFICATE OF CONFERENCE

Counsel for Medtronic has repeatedly conferred with counsel for Plaintiffs in a good faith effort to resolve the aforementioned disputes without the need for Court action. For instance, Steven Zager, counsel for Medtronic, sent a letter to Michael Kane, counsel for Plaintiffs, on September 8, 2006, requesting the production of certain documents from the Disc-O-Tech case and setting a meet-and-confer telephone conference on September 11, 2006. Mr. Kane did not respond until 30 minutes before the telephone conference to indicate his unavailability. Thereafter, Fred Williams and Michael Simons, counsel for Medtronic, met and conferred by telephone on September 11, 2006, with Karen Boyd, counsel for Plaintiffs. Ms. Boyd agreed to produce the documents from the Disc-O-Tech case, but reneged on her agreement in a letter the next day. The parties then followed up their meet-and-confer telephone conversations with a series of letters and email messages dated September 12, September 14, September 18, September 29, October 4, and October 6, 2006. Fred Williams also tried to discuss these issues on October 13, 2006, with Karen Boyd and Erin Dungan, counsel for Plaintiffs, but was unable to reach them by telephone. The parties have also addressed certain of the pertinent issues in letters briefing Medtronic's motion to compel Kyphon in the Northern District of California. The pertinent aforementioned letters and email messages are attached as Exhibits to the Williams Declaration, demonstrating that Plaintiffs are opposed to the relief sought by this Motion. The motion is therefore submitted as opposed.

s/ Steven M. Zager

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2006, a copy of the foregoing electronically filed document was served on the parties listed below via first class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party:

Glen G. Reid, Jr., Esq.
Wyatt Tarrant & Combs
P. O. Box 775000
Memphis, TN  38177-5000

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804

Peter J. Toren
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

s/ Steven M. Zager

# Exhibit D

## Williams, Fred

| | |
|---|---|
| **From:** | O'Shea, Michael |
| **Sent:** | Friday, October 20, 2006 11:12 AM |
| **To:** | Hanson, Chad; MEDTRONIC AG TEAM |
| **Subject:** | FW: Kyphon v. DOT: Medtronic litigation |

-----Original Message-----
From: Karen Boyd [mailto:Boyd@fr.com]
Sent: Friday, October 20, 2006 12:11 PM
To: Sobel, Jonathan M.
Cc: O'Shea, Michael
Subject: RE: Kyphon v. DOT: Medtronic litigation

Thank you, Jonathan. I will coordinate with Paul Rachlin.

Karen

-----Original Message-----
From: Sobel, Jonathan M. [mailto:JMSobel@HHLAW.com]
Sent: Friday, October 20, 2006 12:06 PM
To: Karen Boyd
Cc: moshea@akingump.com
Subject: FW: Kyphon v. DOT: Medtronic litigation

Karen - Because of a potential conflict of interest, we forwarded your request to another
firm (Proskauer). Specifically, I forwarded your email below to Paul Rachlin, at
Proskauer. His contact information is attached. Please communicate with him before
proceeding on this.

Thank you.

Best regards,
Jonathan

JONATHAN M. SOBEL, PARTNER
HOGAN & HARTSON LLP
875 Third Avenue, New York, NY 10022
direct +1.212.918.3541 | tel +1.212.918.3000 | fax +1.212.918.3100 jmsobel@hhlaw.com |
http://www.hhlaw.com

-----Original Message-----
From: Karen Boyd [mailto:Boyd@fr.com]
Sent: Sunday, October 15, 2006 4:49 PM
To: Sobel, Jonathan M.
Subject: Kyphon v. DOT: Medtronic litigation

Dear Jonathan--

As I explained in a voicemail a few weeks ago, Kyphon is involved in litigation with
Medtronic involving some of the same patents as those in the DOT litigation. Medtronic
has requested the pleadings and discovery documents from the DOT litigation, many of which
contain DOT confidential information. I have attached a list of the documents that we
have identified as containing DOT confidential information. Please let me know if we may
produce these documents to counsel for Medtronic.
I have attached the Protective Order that has been entered in the Medtronic matter.

Under a recent supplemental agreement between Kyphon and Medtronic, we are to ask
permission to produce third party confidential documents. If the third party objects
within 10 days, then the requesting party has to move to compel production.

I look forward to hearing back from you. Let me know if you need any other information.

1

Best regards,

Karen

**********************************************************************
**********************************************************************

This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized use or disclosure is prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication
(including any attachments) is not intended or written to be used, and cannot be used, for
the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein.

**********************************************************************
**********************************************************************

This electronic message transmission contains information from this law firm which may be
confidential or privileged. The information is intended to be for the use of the
individual or entity named above. If you are not the intended recipient, be aware that any
disclosure, copying, distribution or use of the contents of this information is
prohibited.

If you have received this electronic transmission in error, please notify us by telephone
(+1-202-637-5600) or by electronic mail
(PostMaster@HHLAW.COM) immediately.