# Exhibit E

November 2 2006 hearing transcript (3).txt

1

1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE WESTERN DISTRICT OF TENNESSEE
2                            MEMPHIS, TENNESSEE

3    _____

                                        )
4    HARVINDER S. SANDHU, M.D.          )
     AND KYPHON, INC.,                  )
5                                       )
                     Plaintiffs,        )
6                                       )
     VS                                 )  CASE NO: 05-cv-02863
7                                       )
     MEDTRONIC SOFAMOR DANEK, INC,      )
8    MEDTRONIC SOFAMOR DANEK USA, INC., )
     SDGI HOLDINGS, INC.,               )
9                                       )
                     Defendants.        )
10   _____

11

12                    BE IT REMEMBERED, that the above-captioned

13   cause came on to be heard on this the 2nd day of November,

14   2006, beginning at approximately 10:00 a.m. before the

15   HONORABLE DIANE VESCOVO, JUDGE presiding, when and where the

16   following proceedings were had, to wit:

17

18

19

20

21

22

23

24

25

ALPHA REPORTING CORPORATION
(901) 523-8974

□

2

November 2 2006 hearing transcript (3).txt

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3                    KAREN I. BOYD, ESQ.
                      FISH & RICHARDSON, P.C.
 4                    500 Arguello Street
                      Suite 500
 5                    Redwood City, California 94063
                      (650) 839-5070
 6

 7                    MARK VORDER-BRUEGGE, JR., ESQ.
                      WYATT, TARRANT & COMBS
 8                    P.O. Box 775000
                      Memphis, Tennessee 38177-5000
 9                    (901) 537-1000

10

11

12    FOR THE DEFENDANTS:

13                    LEO MAURICE BEARMAN, JR., ESQ.
                      BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
14                    First Tennessee Bank Building
                      165 Madison Avenue
15                    Suite 2000
                      Memphis, Tennessee 38103
16                    (901) 526-2000

17
                      STEVEN M. ZAGER, ESQ.
18                    AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
                      111 Louisiana
19                    44th Floor
                      Houston, Texas 77002
20                    (713) 220-5800

21
      COURT REPORTING FIRM:
22
                      ALPHA REPORTING CORPORATION
23                    FRENETTA E. HURD, CSR
                      236 Adams Avenue
24                    Memphis, Tennessee 38103
                      (901) 523-8974
25
```

ALPHA REPORTING CORPORATION
(901) 523-8974


⬜

                                                              3


```
 1                    P R O C E E D I N G S
```
                             Page 2

November 2 2006 hearing transcript (3).txt
2                                    (10:00 a.m.)

3                    THE COURT:  Good morning.

4                    COUNSELORS:  Good morning, Your Honor.

5                    THE COURT:  We are here on the case of Sandhu

6    and Kyphon versus Medtronic Sofamor Danek, 2863.

7                         Counselors, will you identify yourselves

8    for the record?

9                    MR. VORDER-BRUEGGE:  Your Honor,

10   Mark Vorder-Bruegge of Wyatt, Tarrant and Combs.  I am

11   Memphis Counsel for the Plaintiffs.

12                   MS. BOYD:  Your Honor, Karen Boyd from Fish and

13   Richardson, also for the Plaintiffs.

14                   THE COURT:  And tell me your last name again?

15                   MS. BOYD:  Boyd.

16                   THE COURT:  B-o-i --

17                   MS. BOYD:  B-o-y-d, Judge.

18                   THE COURT:  For the Plaintiffs as well?

19                   MS. BOYD:  Yes, Your Honor.

20                   MR. BEARMAN:  Your Honor, I am Leo Bearman

21   representing Medtronic and the rest of the Defendants, also.

22                        And I wanted to introduce one of my

23   co-counsels, Mr. Steven Zager.  He is with the Akin, Gump,

24   Strauss, Hauer and Feld Firm.

25                        He was born in Memphis, raised in

ALPHA REPORTING CORPORATION
(901) 523-8974


⬚

                                                                4



1    Nashville, so try not to hold that against him.  And he

2    migrated to Texas.  And he is in the Houston Part of the

3    Akin, Gump, Strauss, Hauer and Feld Firm.

                              Page 3

November 2 2006 hearing transcript (3).txt
4                He will make the presentation today for the
5     Defendants.
6                THE COURT:   Thank you, Mr. Bearman.
7                And Mr. Zager, welcome.  Welcome back to
8     Tennessee.  And I have seen your name on the pleadings, so I
9     recognize the name.
10               I set this matter for a hearing on
11    Medtronic's Second Motion to Compel, Docket Number 142.  And
12    I believe Medtronic asked for an expedited ruling on that.
13               And in our conference call, I decided not
14    to shorten the response time.  So, Doctor Sandhu and Kyphon
15    had the full amount of time to respond.  They have responded.
16    I set it for a hearing as expeditiously as I could in the
17    hope that we can resolve some of the issues today.
18               And if not, then we will be in a position
19    to issue a written ruling on any unresolved issues again as
20    expeditiously as we can here.
21               What I would like to accomplish this
22    morning -- first of all, after reading the letters and the
23    pleadings, both the response and the supplemental response of
24    Doctor Sandhu and Kyphon, I thought at first that this matter
25    had been ruled on by Judge Alston in California.  And in that

▯

1     case, the only question was a matter of timing.
2                After reviewing Kyphon's and
3     Doctor Sandhu's supplemental responses, I am not exactly
4     clear if Judge Alston ruled on this or not.  So, I would like

November 2 2006 hearing transcript (3).txt
5    to hear from Counsel first as to that issue.

6                    And then, to the extent that she did not

7    rule on the specific issues in the current Motion to Compel,

8    I would like to take those up.  And it may be somewhat

9    tedious.

10                   What I envision doing is going through each

11   request or interrogatory that is at issue, and hearing from

12   both sides as to what it is that Medtronic wants or seeks to

13   obtain through that discovery request.  And then, hearing

14   from the other side as to their position as to what they have

15   provided or what there is to provide or what they can

16   provide.

17                   I mean, it was a little bit overwhelming.

18   And I am not exactly sure which document requests and

19   interrogatories that are at issue.

20                   So, I will hear from Counsel.  This is

21   Medtronic's Motion.  So, I will hear from Mr. Zager first.

22   And if you would please address whether or not this has been

23   ruled on.

24                   MR. ZAGER:  Your Honor, may I approach?

25                   THE COURT:  Yes.

ALPHA REPORTING CORPORATION
(901) 523-8974

D

                                                                6

1                    MR. ZAGER:  Your Honor, recognizing that the

2    Court and Counsel would try to have as much as possible of an

3    expeditious hearing for this Motion, we prepared this

4    (indicating).  We think that all of the materials that I have

5    given you will help everyone.  And it is not as burdensome as

6    it looks.

November 2 2006 hearing transcript (3).txt

7          THE COURT:  It is very overwhelming.

8          MR. ZAGER:  Your Honor, I am prepared to walk

9   the Court through that.

10          And if I may address the first issue as to

11   what Judge Alston did.

12          THE COURT:  All right.

13          MR. ZAGER:  Your Honor, what Judge Alston had

14   before her was an objection by Kyphon to producing the

15   Discotheque's documents that are at issue here today, the

16   same sort of request.

17          But, in that case in California, Kyphon's

18   objection wasn't based upon a letter from Pross Coward Law

19   Firm.  And it wasn't based upon the objections by Discotheque

20   that they are confidential.

21          Indeed, the only objection that Kyphon made

22   was a jurisdiction slash venue objection in which they said,

23   well, inasmuch as the Tennessee Court has not yet decided

24   whether the Kyphon Patent will be litigated in Tennessee or

25   in California; and because you, Judge Alston, decided

ALPHA REPORTING CORPORATION
(901) 523-8974

▯

1   originally to defer to Judge McCalla to determine which case

2   was first found, we, Kyphon, don't believe that we should be

3   obligated to make discovery in California that is pertinent

4   to the Kyphon Patent.

5          And so, we raised a jurisdiction venue

6   objection to producing those documents.

7          What Judge Alston did in the case

Page 6

November 2 2006 hearing transcript (3).txt
8   conference, she went down the list of things that she had

9   before her.  And she got to the issue of the outstanding

10  documents.  And she said, I am overruling the jurisdictional

11  and venue objections.  You need to make discovery.

12                    Now, I agree with the other side that she

13  didn't take up the issue of Discotheque's objections through

14  the Pross Coward Law Firm because that issue was not before

15  her in California, whether or not Kyphon has waived that

16  objection in California, and now has to produce all of those

17  documents there because they didn't make it at a time before

18  the Judge's ruling on our Motion there.

19                    And that's probably for Judge Alston to

20  decide.  But, I don't dispute the fact that Judge Alston

21  never, specifically, addressed the Pross Coward issue.

22                    So, where does that leave us?  I think it

23  was a telephone conversation that I had with Opposing

24  Counsel, Michael Kane, who is their Counsel on the California

25  case.

☐

8

1                     And the next day, I am instructed --

2   Michael called me.  And he said, well, let's talk about where

3   we are in California now.  And I said to Michael, when will

4   we get the Discotheque's documents?  And Michael said to me,

5   that it is my understanding that the Discotheque's documents

6   either have been produced or are in the process of being

7   produced with the sole exception of redactions and documents

8   that are covered by the Pross Coward Letter and Discotheque's

9   objections.

November 2 2006 hearing transcript (3).txt

10          Assuming that that is true, I think that

11     what we come down to here today is the issue of the Pross

12     Coward Letter and Discotheque's objections, and whether or

13     not the Court should order those documents produced

14     irrespective of that objection.

15          So, I think that -- I think that we can --

16     we have managed to narrow the focus as to what this Court

17     will be asked to decide.

18          THE COURT:  I hope so.  Thank you.

19          Ms. Boyd?

20          MS. BOYD:  Your Honor, I think that what

21     Mr. Zager has said is true.  The dispute on the Discotheque's

22     documents have been narrowed.  We have produced every

23     Discotheque litigation document that we can produce that

24     isn't protected by the Protective Order in the Delaware Case.

25          That Protective Order says, that you can't

ALPHA REPORTING CORPORATION
(901) 523-8974

D

9

1     use these documents for anything other than this, the

2     Delaware Case.  And you can't disclose them unless the

3     producing party here, Discotheque, agrees to their production

4     or unless the Delaware Court orders it.

5          So, that's really where we are.  We can't

6     produce any more because of the Order in Delaware.

7          THE COURT:  All right.

8          So, I understand that Counsel agrees that

9     Judge Alston's ruling didn't necessarily address the

10     substance of the documents' requests and interrogatories at

November 2 2006 hearing transcript (3).txt
11    issue.

12              MS. BOYD:  Your Honor, Judge Alston's ruling

13    simply said, until the jurisdiction and venue issue in

14    Tennessee is decided, proceed with discovery in California

15    including on the Kyphon Patent.

16              THE COURT:  Right.

17                   I will tell you why that's important to

18    me.  I don't want to be making one inconsistent ruling.  I

19    think that that complicates the matter.  So, I am trying to

20    avoid ruling on matters that Judge Alston is ruling on.

21                   And secondly, I don't want to waste the

22    Court's time.  There is no need for two judges to be engaging

23    in the same exercise here.

24                   If you get a ruling from one, you are going

25    to have to abide by it, by that Court, regardless of what

ALPHA REPORTING CORPORATION
(901) 523-8974

□

10

1    this Court does.

2                   One, I am trying not to duplicate evidence

3    efforts.  And two, not to make inconsistent rulings.

4                   And I think it is difficult for everyone

5    involved that we don't have a ruling on the venue or

6    jurisdiction issue.

7                   I think that it would make my life much

8    simpler if we did, and probably Judge Alston's as well and

9    your lives as well.  But, we don't have that.  So, we are

10    going to have to push forward to the extent that we can while

11    that Motion is pending.

12                   Where do we go from here?  It sounds like
                              Page 9

November 2 2006 hearing transcript (3).txt

13    to me that Counsel is saying, we have produced everything

14    that we can that's not covered by the Protective Order.

15              Then, what do we do with those matters that

16    aren't covered by the Protective Order?  Do I have

17    jurisdiction?  Do we have to go to Delaware for that?

18              MR. ZAGER:  Your Honor, we believe that you have

19    jurisdiction.  And court orders trump a protective order or

20    any sort of agreement among the parties of litigation.

21              We believe that you clearly have

22    jurisdiction to order those documents produced.

23              This case is a little funny.  And before I

24    get into the merits as to why I think that you should proceed

25    with this, in an ordinary circumstance where you have a third

ALPHA REPORTING CORPORATION
(901) 523-8974

▯

1    party objective, generally, the party in the custody of the

2    documents has really no skin in the game.  And they come

3    before the Court, and say, what do we do?  We got these

4    documents.  A third party has objected.

5              And in many cases, it's been my experience

6    with the person with custody of those documents that they

7    actually want the Court to order them to produce them.  So,

8    they will have the protection of the court order as against

9    the obligation under the previous confidentiality agreement.

10             This case is a little bit different.  Here,

11    we have Kyphon coming to the Court, and they are not saying,

12    we would like to produce these documents.  They are saying,

13    we are not going to produce these documents.

Page 10

November 2 2006 hearing transcript (3).txt

14              Now, in the materials that I gave you,

15     there is a time line.  And that time line shows you that we

16     began requesting these documents in the summer.  Why is it

17     that important?

18              There are also some e-mails that are in the

19     materials.  And they are from Counsel for Discotheque

20     because, originally, Counsel for Discotheque was freely

21     corresponding with us, was cooperating with us, was willing

22     to share information about the lawsuit with us.

23              Suddenly, all of that stopped about ten

24     days ago with the Pross Coward Letter.  And we got an e-mail

25     from the same lawyers who had been talking to us saying, that

ALPHA REPORTING CORPORATION
(901) 523-8974

□

12

1      we have been instructed not to talk to you anymore.  We are

2      left to wonder why that happened.

3               Another important e-mail message that you

4      have there is that when Kyphon told us that they thought that

5      that was Discotheque's objection, you have an e-mail from the

6      Discotheque's lawyers saying, nobody has ever asked us yet.

7               So, you have a document request in the

8      summer for these documents, and you have the Discotheque's

9      lawyers saying, nobody has asked our consent or permission,

10     approximately, 25 days ago.  And you have those e-mails.

11              We are left to wonder what's behind this

12     sudden change of heart of Discotheque.  We are left to wonder

13     what motivated the Pross Coward Letter, and why lawyers who

14     had been cooperating with us suddenly tell us in a cryptic

15     way that they are not permitted to talk to us anymore.
                                Page 11

November 2 2006 hearing transcript (3).txt

16                     Why are the Discotheque's documents so
17     important?  And why is it so much more substantial?
18                     Well, if you look at the power point
19     presentation under Tab One, what we have done is, we have
20     gone through and tried to summarize it, quoting from the
21     pleadings submitted by Kyphon in this case, where Kyphon
22     talked about the relevance of the Discotheque's case.
23                     And in the Preliminary Injunction, Kyphon
24     is asking for, which will be heard on November 16th, Kyphon
25     has said to the District Court Judge McCalla, you ought to be

ALPHA REPORTING CORPORATION
(901) 523-8974

☐

                                                        13

1      guided in your decision-making by what the Special Master did
2      in Delaware and in the Discotheque Case.
3                      The interesting thing about that is, as we
4      pointed out in our pleadings on that issue, that the Delaware
5      Court denied Kyphon's application for a Preliminary
6      Injunction.
7                      We would like to know why.  We believe that
8      there are probably things in that case file that are under
9      seal that would help explain why.
10                     Kyphon responded by saying, we will decide
11     what you, Medtronic, need.  We will decide what Medtronic
12     needs.  And all you really need is the decision of the
13     Special Master.
14                     And yet, Kyphon's lawyers have had access
15     to the entirety of the pleadings filed, which raises an issue
16     of fundamental fairness.

November 2 2006 hearing transcript (3).txt
17          And I submit to you that the right thing to

18    do here is either both sides need the same access to these

19    documents or neither side can use these documents.

20          But, it is certainly unfair to allow one

21    set of lawyers to have complete access to all of the

22    information for which they say should influence

23    Judge McCalla's decision, while denying that access to the

24    other lawyers, and what are we talking about.

25          At Tab Four in the materials, we have tried

ALPHA REPORTING CORPORATION
(901) 523-8974

◻

14

1     to prepare an index to tell the Court what it is that has not

2     been produced, is under seal, so we can't get it from the

3     Court or has been redacted in substantial fashion.

4          And if you look at the Status Column of the

5     table that we have prepared, it will tell you which documents

6     were produced.  And if there is a blank there, it means that

7     they haven't been produced.  And you can look at the first

8     page, and see the kinds of things that we are talking about.

9          The 10-8-2004, Docket Number 55, Opening

10    Brief filed by Kyphon, Inc., in support of their Motion for

11    Preliminary Injunction not produced.

12          THE COURT:   Is that under seal?

13          MR. ZAGER:   It is under seal, Judge.

14          THE COURT:   Is this entire case still under seal

15    in Delaware?

16          MR. ZAGER:   Not the entirety of the case, Judge.

17          And what we have tried to give you is which

18    documents that are under seal.  The documents that we got off
                        Page 13

November 2 2006 hearing transcript (3).txt

19  of Pacer, we did.  We wouldn't trouble the Court with that.

20  The things that we want is the documents under seal.

21              And the interesting thing about this case

22  file is that all of the documents that are important to the

23  Preliminary Injunction appear to be under seal.

24              And if you look through the table, you will

25  see a specific example that I wanted the Court to see, which

ALPHA REPORTING CORPORATION
(901) 523-8974

▯

15

1   appears at the next tab, Tab Five.  It is an expert witness'

2   report of Doctor Michael Marks.  It is heavily redacted.

3   Why is that important?

4              Doctor Michael Marks is Kyphon's expert,

5   who is going to testify that Kyphon is entitled to an

6   injunction in this case.

7              How are we to have a fair opportunity to

8   cross-examine Doctor Michael Marks when we are denied

9   complete access to the expert report that he filed on the

10  same issues on the same patent in the Discotheque litigation?

11              For instance, they have given us

12  Doctor Michael Marks' deposition transcript.  They have

13  withheld all of the exhibits.  Again, how are we able to take

14  a fair deposition of Doctor Michael Marks when we don't have

15  the complete record of his testimony on the same issues, on

16  the same patent, and with respect to the same motion

17  previously denied by the Delaware Court?

18              So, those are some examples.  There are

19  more, and the Court can review the table.  But, these are not

Page 14

November 2 2006 hearing transcript (3).txt
20   trivial documents.  They are important documents.  And these

21   are, in many cases, are statements of witnesses who will be

22   witnesses at this proceeding.

23                   THE COURT:  Do I have a copy of that letter?

24   Was that an exhibit?

25                   MR. ZAGER:  We put it in this material,

ALPHA REPORTING CORPORATION
(901) 523-8974

    
                                                              16


 1   Your Honor.

 2                   THE COURT:  It is in the material?

 3                   MR. ZAGER:  Let me see if I can find it.

 4                   THE COURT:  I think that the Plaintiffs had

 5   attached it.

 6                   MR. ZAGER:  Tab P.

 7                   THE COURT:  Okay.

 8                   MR. ZAGER:  Your Honor, let me address the Pross

 9   Coward Letter for a moment.

10                   And first, we believe that the Court has

11   the authority to order the production.

12                   And is the Pross Coward concern truly

13   legitimate given the Confidentiality Order already in place

14   in this case?  We think not.  What does that Agreed

15   Confidentially Order says?

16                   It says, that the documents produced in

17   this case that are characterized as "attorneys' eyes only"

18   can only be reviewed only for the purpose of this lawsuit and

19   only by the people litigating the lawsuit.

20                   And in the case of Medtronic, only by two

21   representatives of the company whose sole responsibility it
                             Page 15

November 2 2006 hearing transcript (3).txt

22   is to manage this litigation.

23                THE COURT:  Do I have a copy of that

24   Confidentially Order?

25                MR. ZAGER:  I believe you do, Your Honor.  And

◻

17

 1   that's the Confidentially Agreement that is operative in this

 2   case.

 3                THE COURT:  Right.  And I believe it was also

 4   attached as an exhibit to the Response.  Is the exhibit in

 5   this book?

 6                MR. ZAGER:  I don't think that we wanted to get

 7   doubled up on the Court's Docket.  And I will get the docket

 8   number to you, and have it sent over to you.

 9                THE COURT:  Let me see if I have got it.

10                Mr. Vorder-Bruegge and Ms. Boyd, do you

11   know if that was one of the exhibits, was an exhibit to your

12   Responses?

13                MS. BOYD:  It was Exhibit A, Judge.  I'm sorry.

14   That's the Delaware Protective Order.  Is that what you are

15   asking about?

16                THE COURT:  I think so.

17                MR. ZAGER:  Your Honor, I am talking about the

18   Protective Order in this case.

19                THE COURT:  I am talking about the Protective

20   Order in this case.

21                MR. ZAGER:  I believe it was entered on the

22   Docket August 17th, Judge.

                            Page 16

November 2 2006 hearing transcript (3).txt
23          THE COURT:  I can get that.  And I was asking

24    about the Delaware one.  And I did recall seeing it on your

25    Response.

&#9633;

18

1                MR. ZAGER:  Your Honor, my point about the

2    importance of the Protective Order in this case is when you

3    try to balance the harm here and us to understand, does

4    Medtronic really need this information?  And I mean, that you

5    are going to conclude yes for a fair hearing for a fair

6    opportunity to cross-examine.

7                It is reasonable that both sides have

8    access to the same information that would bring you to the

9    analysis of, does Discotheque really have a legitimate

10   complaint here?  Is there a risk of harm to Discotheque?

11               I would submit to you that the answer to

12   that question is no.  Because the Protective Order in this

13   case says that, whatever you give us can only be used for the

14   purpose of this lawsuit, and will never be seen by any of our

15   business people.

16               So, the Pross Coward Letter doesn't go very

17   far in articulating the basis of any objections.  It simply

18   says, we object.

19               I should, also, point out that in my

20   experience with issues like this, what you normally see is an

21   intervention by the party who objects, and who files a Motion

22   for Protection, and who says, we object for the following

23   very good reasons.  And we are going to prove those up,

24   Your Honor.

Page 17

November 2 2006 hearing transcript (3).txt
25                         We don't have that here.  We simply have a

ALPHA REPORTING CORPORATION
(901) 523-8974

□
                                                                    19

 1    letter saying, we object.
 2                         So, in summary, Your Honor, we believe that
 3    you have the authority to order the production of those
 4    documents.  That there is a good reason to order the
 5    production of those documents.  And that no harm would come
 6    from an Order telling Kyphon to produce those documents to us
 7    in un-redacted fashion so we might have them to defend
 8    ourselves at the hearing on the Preliminary Injunction on
 9    November 16th.
10                         THE COURT:  Let me just make sure that I am
11    clear on this.  Medtronic's position is that these documents
12    are in the possession of Kyphon.
13                         MR. ZAGER:  Correct, Judge.
14                         THE COURT:  So, we don't have to have
15    Discotheque or their law firm before the Court.  We do have a
16    party that has custody and possession of the documents before
17    the Court.
18                         MR. ZAGER:  Yes, Judge.  That's Medtronic's
19    position.
20                         THE COURT:  And I keep thinking in my mind,
21    this is something to issuing a subpoena for Discotheque in
22    Delaware or whereever they are, and then out of the Delaware
23    Court.  And if they want to object, then they have the
24    Delaware Court.  And I hate you to be in Delaware, California
25    and Tennessee.

November 2 2006 hearing transcript (3).txt
ALPHA REPORTING CORPORATION
(901) 523-8974

D

20

1              MR. ZAGER:  We know that Kyphon has the
2    authority because they have redacted.  And that's why we are
3    here.  And I think that this Court has the authority to have
4    Kyphon to produce the documents in their custody and control.
5              I don't think that we need to go to
6    Delaware or need to ask Discotheque for those documents.
7              THE COURT:  All right.  All right.  Let me hear
8    from Ms. Boyd on behalf of Doctor Sandhu and Kyphon..
9              MS. BOYD:  Thank you, Your Honor.
10             We are in a situation where we aren't
11   saying that we object to the production.  We aren't saying
12   that we don't want to produce these documents.
13             What we are saying is, that we are under
14   Court Order not to disclose these documents outside of the
15   Protective Order that has been entered by the District of
16   Delaware.
17             So, your suggestion on the subpoena to
18   Discotheque should be either through an intervention in the
19   case in Delaware or through a subpoena.
20             Although, I believe they are headquartered
21   in New Jersey through the District of New Jersey, that's the
22   way for Medtronic to get these documents. I don't represent
23   Discotheque.
24             Discotheque is not in the room today, but
25   the objection that they made is a rational one.  Medtronic

ALPHA REPORTING CORPORATION
(901) 523-8974
                    Page 19

November 2 2006 hearing transcript (3).txt

☐

1    and Discotheque are competitors.  And the information that

2    Medtronic is seeking contains Discotheques's financial

3    confidential information, technical confidential information,

4    and business confidential information.

5                  So, the objection is a rational one.  And

6    it is one that they are entitled to make under the Protective

7    Order that is currently in place in Delaware.

8                  I believe that Mr. Zager said, that a court

9    order trumps a protective order.  And in this case, the

10   Protective Order is a Court Order.

11                 We aren't -- it is not a situation where

12   there is merely a non-disclosure agreement between Kyphon and

13   Discotheque.  There is an Order in place in the District of

14   Delaware that brings me to Mr. Zager's comment about

15   Discotheque's Counsel, and how they had been cooperating, and

16   then stopped cooperating.  I don't know why they stopped

17   cooperating.  I know that, at least, I am not aware of a

18   subpoena that Medtronic served on Discotheque.

19                 I do know that Litigation Counsel for

20   Discotheque, they told me that they couldn't be involved in

21   this matter because they also represented Medtronic.  So,

22   their firm had a conflict of interest.

23                 THE COURT:  Is that the Pross Coward Firm?

24                 MS. BODY:  Your Honor, that's Hogan and Hurston,

25   who represented Discotheque in the litigation in Delaware.

ALPHA REPORTING CORPORATION
(901) 523-8974

☐

1                        And so, it was Hogan and Hurstson who I
2    believe both Mr. Zager and myself were, originally,
3    interfacing with them.
4                        And I was told by Hogan, I can't talk to
5    you anymore because Hogan, also, represents Medtronic.
6                        Pross Coward is now going to represent
7    Discotheque with regards to this issue.
8                        And to the extent that there is any concern
9    about Kyphon coercing or cajoling Discotheque to lodge some
10   objections, I have a Declaration from David Shaw, the General
11   Counsel at Kyphon, that says, that there had been no
12   communications to that effect.  And that there is no
13   agreement in place to that effect.
14                        I will hand it up to the Court.
15                THE COURT:  Have you provided it to Opposing
16   Counsel?
17                MS. BOYD:  Not yet, Judge.
18                THE COURT:  If you will provide a copy to them,
19   and show it to them, and then pass it to me.
20                MS. BOYD:  All right.
21                        Your Honor, I think what's important is
22   that Medtronic has been free at any point since this past
23   summer when they say that that's when they identified these
24   documents as something they were interested in to subpoena
25   them from Discotheque.

D

November 2 2006 hearing transcript (3).txt

 1                THE COURT:  All right.  I would like to take a
 2    look at the Protective Order that the Court in Delaware
 3    issued.  And let me pull that up on my computer.
 4                    And Ms. Guy, maybe, you can print that out
 5    for me.
 6                    See if I can find it.  Document 176.
 7                MR. VORDER-BRUEGGE:  I have a copy, Judge.  I
 8    have a spare copy of our Response that has that attached.
 9                THE COURT:  We don't necessarily have all of the
10    exhibits, but I do read them on mine.
11                MS. BOYD:  Your Honor, there are actually two
12    Protective Orders.
13                    THE COURT:  Was that A and B?
14                MS. BOYD:  Yes, it is A and B.  And A is from
15    the District of Delaware.  And B is from the International
16    Trade Commission.
17                    So, the Discotheque-Kyphon litigation was
18    in the International Trade Commission's Motion.  And there
19    were a small number of filings in that court.  And then, the
20    case proceeded in Delaware.
21                    And I apologize for not being more clear
22    about that earlier.  But, those -- both of those Protective
23    Orders are at issue.  And they are nearly identical
24    Protective Orders.  And the District of Delaware made a minor
25    difference from this ITC Order.

                                                            24


 1                THE COURT:  It's an exhibit?  Exhibit B issued
                          Page 22

November 2 2006 hearing transcript (3).txt
2    first?

3              MS. BOYD:  Yes, Your Honor.

4              THE COURT:  And then, the case moved to

5    Delaware, US District Court of Delaware?

6              MS. BOYD:  That's right, Your Honor.

7              THE COURT:  And what is -- is it Kyphon's

8    position that this Court does not have jurisdiction to order

9    Kyphon to produce those documents?  And what is Kyphon's

10   position as to how Medtronic should get these documents?

11             MS. BOYD:  Your Honor, under the Order that has

12   been issued by Delaware, there are only two ways that Kyphon

13   could produce these documents to Medtronic, which is either

14   Discotheque has to give them permission or the Delaware Court

15   has to order it.

16             THE COURT:  Okay.  What provision of the

17   Delaware Protective Order is that?

18             MS. BOYD:  Judge, Paragraph Three and continuing

19   on Page Two of the Delaware Order, "In the absence of written

20   permission from the supplier or an Order by the Court, any

21   confidential documents shall not be disclosed other than --"

22   and it lists the people, the Court and outside Counsel, and

23   court reporters, and that sort of thing.

24             THE COURT:  Is the Delaware litigation over?

25             MS. BOYD:  Yes, Judge.

☐

1              THE COURT:  But, you didn't return the documents

2    at the end of litigation?

3              MS. BOYD:  Your Honor, the law firm -- my law
                            Page 23

November 2 2006 hearing transcript (3).txt

4    firm had copies, which is permitted under Paragraph 11 of the

5    Protective Order.

6              THE COURT:  And those are posssessed by your law

7    firm; is that correct?

8              MS. BOYD:  Yes, Your Honor.  And we have not

9    taken the position that they are not in the custody of the

10   parties.

11             We are Kyphon's lawyers.  And so, we are

12   not making that objection.

13             THE COURT:  If you do disclose confidential

14   information, Paragraph 10 says," If such information is

15   disclosed in the correspondence other than the manner ordered

16   by this Protective Order, the party responsibile for the

17   disclosure must immediately bring all facts relating to such

18   discloser to the attention of the supplier and the Court.

19   And without prejudice to other rights and remedies of the

20   supplier make every effort to prevent further disclosure."

21             MS. BOYD:  That provision goes primarily to an

22   inadvertent disclosure of confidential disclosure, Judge.

23             THE COURT:  Paragraph 13 deals with inadvertent

24   disclosure.

25             MS. BOYD:  That's inadvertent disclosure of

ALPHA REPORTING CORPORATION
(901) 523-8974

☐

                                                              26

1    privileged information, Your Honor.

2              THE COURT:  Privileged information, you are

3    right.

4                   And let me make sure that I am clear on

                          Page 24

November 2 2006 hearing transcript (3).txt
5    Kyphon's position.

6                    Doctor Sandhu -- Kyphon and Doctor Sandhu

7    have no other objections to disclosure of this information

8    protected by the Protective Order or to the redactions'

9    portion of Doctor Mark's Affidavit.

10                MS. BOYD:  That's correct, Judge.

11                    If we had permission from Discotheque to

12   produce the information or we have an Order from the District

13   of Delaware, we would provide the information.

14                    We actually have it ready for production.

15   I, personally, didn't prepare it.  But, I am informed that we

16   have it ready for production.

17                THE COURT:  Right.

18                    I will tell you, I am having trouble with

19   issuing an Order from this Court that contradicts the Order

20   of the Delaware District Court.  And I really am.  And I want

21   to fashion a procedure to get this information.

22                    If I issue an Order, I think that we would

23   have Discotheque in here challenging my jurisdiction to issue

24   the Order.  And then, we are going to be embroiled in that

25   battle of whether I had jurisdiction of that.

ALPHA REPORTING CORPORATION
(901) 523-8974


▯

27


1                    And it seems to me that the cleaner way is

2    to go to the Delaware Court or to New Jersey.

3                    What would, could you file in the Delaware

4    Court?  This is a closed proceeding.  So, technically,

5    Discotheque is not subject to the jurisdiction of the Court,

6    necessarily.
                        Page 25

November 2 2006 hearing transcript (3).txt

```
 7              MS. BOYD:   Judge, I believe that if Medtronic
 8    were to make a Motion to Intervene for an exception to the
 9    Protective Order, I believe that the Judge would rule on that
10    order.
11              THE COURT:   File it as a miscellaneous matter
12    there.
13                   I am just trying to think this out.
14                   If you go to New Jersey and issue a
15    subpoena out of the District Court in New Jersey, and
16    Discotheque objects, and refuses to produce them or they will
17    make -- may object on relevancy.  I don't know what grounds.
18    And then, you have a Motion to Compel in the New Jersey
19    Court.  And the New Jersey Court may very well find itself in
20    the same dilemma that I am in.
21              MS. BOYD:   With this exception, Judge.
22              THE COURT:   They have Discotheque in front of
23    them.
24              MS. BOYD:   Your Honor, Discotheque can produce
25    these documents.  And so, Discotheque's objections in New
```

ALPHA REPORTING CORPORATION
(901) 523-8974


▯

```
 1    Jersey would simply go to the subsistence of, do they have to
 2    share their confidential information?
 3                   Kyphon would not lodge any objections to
 4    the subpoena in the New Jersey Court because these documents
 5    have Kyphon's and Discotheque's information in them.
 6                   We have taken out the Discotheque's
 7    information, and already produced the Kyphon's information.
```

Page 26

November 2 2006 hearing transcript (3).txt

8      So, we would not be standing on the

9   Delaware Order telling Discotheque in New Jersey, you can't

10   produce the Kyphon's information.  So, the Protective Order

11   in Delaware would not be at issue in the New Jersey subpoena.

12            THE COURT:  All right.  What I can do from here

13   is make a ruling, and find that the documents and information

14   therein are relevant and discoverable, subject to the

15   permission of the Delaware Court or instructed to the

16   Delaware Court to produce them.  And that we have a

17   Protective Order in place.  And this will be for "attorneys'

18   eyes only".  And then, you can apply to the Delaware Court in

19   one way or another.

20            MR. ZAGER:  Your Honor, we would appreciate that

21   sort of ruling.  And I understand the Court's position.

22                My only comment, which I suspect that you

23   are going to tell me, is to take it up with Judge McCalla.

24   And it wouldn't do any good to get these documents in

25   December, if the Preliminary Injunction Hearing is

⬚

1   November the 16th.

2            THE COURT:  And today is November 2nd.

3            MR. ZAGER:  Your Honor, the first time that we

4   had an objection from Discotheque was on October 25th of

5   2006.  We are pretty much behind the eyeball.  And I don't

6   think that it is -- we were any less than diligent.  And

7   that's the first time that we heard of this.

8            THE COURT:  I understand that.  And

9   unfortunately, we got that objection.

                         Page 27

November 2 2006 hearing transcript (3).txt

10                    And I understand the attempts that you have

11  made to acquire it, but we find ourselves where we are today.

12  And we are going to have to go forward from that position.

13  we can't go back, and change what has happened over the last

14  few months.

15              MS. ZAGER:  Your Honor, the other objection that

16  I am making now is, Ms. Boyd has said, we have given them

17  everything but those portions that are redacted, which are

18  the portions of Discotheque's confidential information.

19                    I am not -- I am sure, in fact, of the

20  case.  And if you look at the table I gave you, I would be

21  very much surprised to know that.  And on the very first

22  page, and maybe it is shocking, the entire Opening Brief

23  filed for -- by Kyphon's Preliminary Injunction contains

24  Discotheque's confidential business information.

25                    If the Court looks through that table, you

ALPHA REPORTING CORPORATION
(901) 523-8974

0

                                                          30

1   will see a number of examples that define logic; and suggest

2   that the entirety of the documents contain everything but

3   Discotheque's confidential business records.

4               THE COURT:  I will hear from Ms. Boyd in just a

5   minute.

6                    Let me just say, which will bring me

7   through my next step, which we will go through and identify

8   which documents that we are talking about that have

9   Discotheque's information in it, which kind of brings me back

10  to where we started.

Page 28

November 2 2006 hearing transcript (3).txt
11                    When I read Medtronic's Brief, it look like

12   these are the requested issues; 30, 31, 40, 41, 50, 51, 52,

13   53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67,

14   68, 69. 70, 71, 72, 73, 74, 75, and Interrogatory Numbers 6

15   and 7.

16                    I don't want to go through, and have to

17   read and recite every one of those requests.  But, I am

18   prepared today to go through each of those.  But, if there is

19   some way to simplify it, we should.

20                    On the other hand, you are saying that it

21   is just these documents that are in your Chart that are

22   important to you.  Then, I would like to go through each of

23   the documents and the Chart, so that in my Order, I can be

24   very clear that these are relevant.

25              MR. ZAGER:  Your Honor, I think what we are down

0
                                                                31


1    to are the Answers to the Interrogatories that we talked

2    about, and the documents that are in the Chart.

3                    If I accept as true, Opposing Counsel's

4    representations to me, that they are going to produce or have

5    produced everything else but those items that they are

6    withholding because of Discotheque.

7                    And if we can get an unequivocable

8    statement like that on the record, I think it will go a long

9    way to enable us to go down the Chart to see whether there

10   can be redactions made, so we can get that information in an

11   efficient manner.

12                    And we would appreciate the finding in the
                              Page 29

November 2 2006 hearing transcript (3).txt

13    Court's Order that the Court has said that it is going to

14    make.  And I feel that those will facilitate the Delaware

15    Court's consideration.

16              THE COURT:  Right.  And otherwise, they are

17    going to make the first objection, which you are going to

18    see, which is the relevancy to these.

19              Ms. Boyd, you wanted to respond to the

20    Opening Brief Statement?

21              MS. BOYD:  I did, Your Honor.

22              The Kyphon's Preliminary Injunction

23    Application from the Delaware Case was produced at AK1-57.

24              THE COURT:  And that's listed in this Chart

25    (indicating).

ALPHA REPORTING CORPORATION
(901) 523-8974

⌷
                                                            32

1              MS. BOYD:  That's in my Chart that I just used,

2    Judge, 4457782925.  It is listed as something that is not --

3    that has not been produced in the Chart that Medtronic

4    provided you.

5              THE COURT:  Referred to as Docket Number 149,

6    the Opening Brief in Support of a Motion for Partial Summary

7    Judgment.

8              MR. ZAGER:  Docket 55, Page 1.

9              THE COURT:  Okay.  Filed by Kyphon in support of

10    their Motion for Preliminary Injunction.

11              MS. BOYD:  So, Judge, we have produced a

12    redacted copy of that, that has Discotheque's confidential

13    information taken out.

                        Page 30

November 2 2006 hearing transcript (3).txt

14          THE COURT:  And what's the production number

15    again?

16              MS. BOYD:  4457782925, Judge.

17              THE COURT:  And it was redacted?

18              MS. BOYD:  Yes, Judge.

19                  And similarly, our Reply Brief in that

20    issue was produced at 445926 through 446198.

21                  I just got this Chart from Mr. Zager just

22    before the hearing.  So, I haven't had a chance to

23    cross-reference everything against the information that I

24    have.  But, I did that one.  That one kind of popped out at

25    me.

ALPHA REPORTING CORPORATION
(901) 523-8974

□

                                              33

1              THE COURT:  All right.

2                  Let's go forward, using Mr. Zager's Chart,

3    and see if we have any questions about the substance of the

4    documents sought or what's been redacted, and what would be

5    covered by the Protective Order entered by the Delaware

6    Court.

7                  And we can go one by one.  I don't know how

8    many documents that we are talking about.  I guess, I can ask

9    Counsel to look at Page One of the Chart, and make any

10   remarks in general about whether they have all of the

11   documents listed on Page One.

12             MR. ZAGER:  Your Honor, the only ones that are

13   blank are at issue.

14             THE COURT:  All right.

15             MR. ZAGER:  Your Honor, the status is that there

                              Page 31

November 2 2006 hearing transcript (3).txt

16    are blanks.  And as we flip through them, and go through them

17    together, we can fill in the blanks.  And then, we will all

18    know whether we are getting these documents, and whether

19    there is an issue.  And if so, what the issue is.

20              THE COURT:  The first blank is Docket Number 20,

21    a letter to the Court from Fish and Richardson.

22              And again, these are documents that are

23    actually -- were filed in, let's say, the Delaware Case.  And

24    that's been filed in the District of Delaware, Docket Number

25    CA-04-0204JJF, Kyphon versus Discotheque.

ALPHA REPORTING CORPORATION
(901) 523-8974

0

34

1              Okay.  That's Docket at Number 21.  It is

2     under seal.  Medtronic cannot access it through the

3     electronic filing.  Kyphon has no objections.  But, I assume,

4     that the position is, that it contains Discotheque's

5     confidential information.

6              MS. BOYD:  I don't have all of these documents

7     in front of me, Judge.  I am looking at this Chart now.

8     Docket Numbers 20 and 27 are letters.  I don't know what they

9     are.  So, I will have to follow up on that later today.

10             We will certainly produce them, if they

11    don't contain Discotheque's confidential information.  Or if

12    they can be redacted in a meaningful way, we will produce

13    them.  And if they -- I don't know if they have already been

14    produced, these descriptions and information.  I am not sure.

15             MR. ZAGER:  Your Honor, I may have a suggestion

16    to expedite this.

November 2 2006 hearing transcript (3).txt

17                      Perhaps, the Court might consider an Order

18    of this Court, which says to Kyphon, you will produce by x

19    date all of the documents from the Discotheque Case with the

20    sole exception of confidential Discotheque's information as

21    defined in the Delaware Court's Protective Order, which you

22    may redact from those documents.

23                      I think, it will be useful to let me go

24    back, and see what they gave us.  And if I have to come back

25    to the Court with a new chart, we can do that.

ALPHA REPORTING CORPORATION
(901) 523-8974

D

                                                                35


1                      But, what I hear Ms. Boyd saying is, I

2     can't tell you.  I don't have the documents in front of me.

3                      ,I understand that, and appreciate that.

4     But, if what she is telling us about Kyphon's position is

5     true, they should have no objection producing everything, and

6     redact those portions that are confidential information as

7     defined by the Delaware Court.  And then, give me an index of

8     the redactions.

9                      THE COURT:  That sound like where I am headed,

10    Ms. Boyd.

11                      MS. BOYD:  Your Honor, we have no objection to

12    that.

13                      I believe that we have already produced all

14    of those documents.  I am going through this, and the ones

15    that I can cross-reference.

16                      I found, for instance, Discotheque's

17    opposition to our Preliminary Injunction Brief.  We have

18    already produced that in a redacted form.  The Declarations

                              Page 33

November 2 2006 hearing transcript (3).txt

19    in support of that, we have produced those to the extent that
20    they can be meaningfully redacted.

21              Obviously, the Declaration of Discotheque's
22    personnel are likely to be almost exclusively Discotheque's
23    information, but we have no objections to that.

24              THE COURT:  All right.  Why don't you -- we will
25    have Ms. Boyd go through the list and by -- today is Thursday

ALPHA REPORTING CORPORATION
(901) 523-8974

□
                                                          36


1    -- by Monday, provide to the other side the list of items.
2    And I would like to do it by Friday at the close of business.
3              Any ones that you believe that are -- have
4    been produced with the production bate stamp number, and
5    provide what you can in a redacted form, and then provide me
6    an updated list on Monday.

7              MR. ZAGER:  Judge, may I make a suggestion?
8              THE COURT:  And then, I was going to ask that
9    Counsel submit Proposed Orders to me as well.

10             MR. ZAGER:  Right, Judge.

11             Ms. Boyd said, that we have all of these
12   documents ready for production, but we have this Discotheque
13   objection.

14             If they are ready for production, it
15   shouldn't be such a burden with the upcoming depositions for
16   this Court to say, I order you to produce everything except
17   that which you need to redact based upon the Discotheque's
18   objection, and to do that by a date certain.

19             Because one of the problems that we have

Page 34

November 2 2006 hearing transcript (3).txt
20  had in this case is, unless we have -- we get a date certain,

21  I will get letters from the other side saying, we are working

22  on it.  When will I have it?

23              THE COURT:  I am prepared to do that.

24              Maybe, everything that she has is covered

25  by this Protective Order.  And it may be that that hasn't

ALPHA REPORTING CORPORATION
(901) 523-8974

☐

37

1  been produced.  I will be prepared to enter that on Monday.

2              And we still have to talk about the two

3  interrogatories.  We need to deal with them, and make sure

4  that we will agree on the procedures, since Ms. Boyd just

5  received this Chart today.  And this Chart does help narrow

6  the issues considerably.  It is much better than going

7  through the 50 something documents' requested issues.

8              Let me give her a chance to respond,

9  specifically, to the Chart.  And it may be that she can

10  produce additional documents now, if what you want is

11  identified with specificity.  And then, you can submit a new

12  list of the documents remaining at issue to me on Monday

13  along with Proposed Orders.

14              If Counsel can agree on the language of the

15  Order, great.  If you can't, submit your own Orders.

16              MR. ZAGER:  Your Honor, can I ask for a

17  clarification?

18              THE COURT:  Yes.

19              MR. ZAGER:  Since we had some debate about the

20  form of the Order --

21              THE COURT:  Right.
                              Page 35

November 2 2006 hearing transcript (3).txt

22          MR. ZAGER:  -- is it this Court's Order that all

23    documents of Discotheque shall be produced except for those

24    that are the subject of the Pross Coward Letter?

25          THE COURT:  I don't think that I will make it

ALPHA REPORTING CORPORATION
(901) 523-8974

☐
                                                          38

1    that broad.  I think I will confine it to this list right

2    here because these are the ones that you say that haven't

3    been produced because I don't know what else is out there

4    (indicating).

5          MR. ZAGER:  Your Honor, my problem with that is,

6    I don't know what they may have in their own files that was

7    never made part of the Court's record.  And we, also, asked

8    for that information, too.

9               So, what I have is, I have a table of what

10   I know about as a sealed part.

11          THE COURT:  Wouldn't you have attorney-client in

12   your file?

13          MR. ZAGER:  Obviously, Your Honor, I am not

14   entitled to that.  And they may have other things in their

15   file that were never put before the Court.

16          MS. BOYD:  Your Honor, I will give the Court --

17   the experts' reports in Delaware, you don't file your

18   experts' reports.

19               We have already produced redacted copies of

20   our technical experts' reports.  And it will certainly be our

21   position that -- well, the damage experts' reports, I don't

22   know if we have been able to produce those or not.  They are

                            Page 36

November 2 2006 hearing transcript (3).txt
23   understandably rifed with Discotheque's confidential

24   information.

25                For instance, our expert witnesses, that

ALPHA REPORTING CORPORATION
(901) 523-8974


⬜
                                                              39


1    goes to the validity issues.  In that case, that has been

2    produced.

3                The expert report that is in Mr. Zager's

4    report -- materials that he handed up to the Court today,

5    which is extensively redacted, I don't dispute that at all.

6    But, that's the report that goes to Discotheque's

7    infringement.

8                So, it is all about Discotheque's device,

9    and the technical issues regarding their product, which isn't

10   the product that is at issue in the PI Motion that is

11   currently pending before Judge McCalla.

12               THE COURT:  So, you are saying that some of that

13   redacted information is not necessarily confidential business

14   information of Discotheque?

15               MS. BOYD:  It is confidential, Judge.

16               THE COURT:  It is not relevant to the issue

17   here?

18               MS. BOYD:  Yes, Your Honor.

19               THE COURT:  Because it was uniquely relevant to

20   Discotheque's device?

21               MS. BOYD:  Yes.

22               MR. ZAGER:  Your Honor, we strongly disagree.

23               If it's an expert witness that is going to

24   testify here about how he applies the 404 Patent, which is
                           Page 37

November 2 2006 hearing transcript (3).txt

25    the subject of this case, then it is subject to any device.

ALPHA REPORTING CORPORATION
(901) 523-8974

&#x2395;

40

1    And it is relevant and potentially dispositive about how that
2    patent ought to be applied to any of us.
3              MS. BOYD:  Judge, perhaps, I shouldn't have
4    brought it up.  We aren't objecting to the production of the
5    information.  I simply wanted to give the Court an example on
6    things that aren't on Mr. Zager's list.
7              THE COURT:  Well, I am hesitant to make the
8    Order over-broad that says all documents in their file that
9    relates to this.
10             And without knowing exactly what we are
11   talking about, I would like to confine it to this list and to
12   the experts' reports.  I think that the experts' reports are
13   relevant and material to this litigation.
14             So, if you will limit your language to that
15   at this time, I believe that that will give you sufficient
16   information to go forward with the Preliminary Injunction
17   Hearing.
18             If it turns out that there is other
19   information that comes out later, then we can pursue that at
20   a later time.
21             What about Interrogatories Six and Seven?
22   How do we handle those?  I actually couldn't find those
23   listed, but I know that Medtronic included the language in
24   their Brief.
25             And what I found attached were

Page 38

November 2 2006 hearing transcript (3).txt

&#10;

41

1   Interrogatories, I think, One through Five.  I didn't find

2   Six and Seven, but I may have over-looked it.

3                MS. BOYD:  Judge, Interrogatories Six and Seven

4   were from the California Action.  Perhaps, that's why.

5                THE COURT:  It may have been attached to one of

6   our earlier motions.

7                The language is set forth in Medtronic's

8   Memoranda or its Motion to Compel on Page 13, the actual

9   language.

10               I didn't find the complete set of

11  Interrogatories attached as an exhibit.  I have got

12  Interrogatory Numbers One through Five, and the responses and

13  objections.

14               And then, I have got Documents Requests, 1

15  through 41 and 42 through 86.  And I did not see that second

16  set of Interrogatories, which I think was 6 through 16 in the

17  California litigation.

18               Interrogatory Number Six says: "For each

19  claim of each of Kyphon's patents-in-suit that Kyphon asserts

20  is infringed by Medtronic, provide a claim chart containing

21  in the first column the claim elements, and in the second

22  column Kyphon's contentions with respect to the meaning and

23  or claim interpretation of the words and or phrases."

24               And I thought that Kyphon provided a chart.

25  Am I wrong?  What was Exhibit E to Kyphon's Response?

November 2 2006 hearing transcript (3).txt

☐
                                                              42

1              MS. BOYD:  That is Kyphon's Infringement Chart
2    that contains --
3              THE COURT:  And is that what we are talking
4    about here?
5              MS. BOYD:  I believe so, Your Honor.
6              THE COURT:  It is Document Number 176-6.
7              Let me ask -- we are talking about
8    Interrogatory Number Six.  Let me just start with Medtronic.
9    What is it that you say that is not sufficient with their
10   chart?  What are you looking for?
11             MR. ZAGER:  Judge, to the extent that the Chart
12   contains all of the infringement contingents that we are
13   going to hear at the Injunction Hearing, we are fine.
14             THE COURT:  Ms. Boyd, what is the position of
15   Kyphon as to Interrogatory Number Six?
16             MS. BOYD:  Your Honor, I know our Response to
17   Interrogatory Six was certainly complete then.  And we are
18   currently working on our opposition to Medtronic's Motion for
19   -- excuse me.  We are working on our Reply to Medtronic's
20   Preliminary Injunction Opposition, and our opposition to
21   Medtronic Motion for Summary Judgment of Non-Infringement.
22             And so, I haven't cross-referenced
23   precisely what we are -- how we are responding.
24             And if there is any additional information
25   that would be in addition to the information that is

ALPHA REPORTING CORPORATION
(901) 523-8974

☐

November 2 2006 hearing transcript (3).txt

43

        1    currently in these Interrogatory Responses, but certainly
        2    under the Supplement Rule since our opposition will be filed,
        3    will be served.  And they will be in writing that can be
        4    considered a supplement to Your Honor's Order and Responses.
        5              THE COURT:  Which Reply and Response is due?
        6              MS. BOYD:  They are due Monday, Judge.  We have
        7    a lot of stuff going on.
        8              THE COURT:  So, by Monday?  What?  You are
        9    saying that you have answered this Interrogatory?
       10              MS. BOYD:  Yes, ma'am.
       11              THE COURT:  That's your position.  And to the
       12    extent that you rely on any other infringement that is --
       13    that are not set forth in the Chart, you will include that in
       14    your Response to be filed by Monday; is that right?
       15              MS. BOYD:  Yes, Your Honor.
       16              THE COURT:  Mr. Zager, any problem with that?
       17              MR. ZAGER:  No, Your Honor.  As long as we are
       18    going to have a complete recitation before we have a hearing.
       19              THE COURT:  The Response is due Monday,
       20    November 6th.  Well, it looks like Interrogatory Number Six
       21    is taken care of.
       22                   What about Interrogatory Number Seven?
       23                   Interrogatory Number Seven requests:  That
       24    Kyphon identify each device or product used or sold by
       25    Medtronic that, according to Kyphon, embodies, is covered by,

November 2 2006 hearing transcript (3).txt
1   makes use of, or otherwise practices any claim of Kyphon's
2   patents-in-suit, and using the claim charts provided in
3   response to Interrogatory Number Six, above, state with
4   particularity the complete factual and legal basis for
5   Kyphons contentions that Medtronic "is infringing each of the
6   Kyphon patents-in-suit by making, using, inducing or
7   encouraging others to use, offering to sell and or selling
8   devices that infringe and or are used to infringe, directly
9   or indirectly, one or more claims of each of the Kyphon's
10  patents-in-suit including without limitation how each
11  asserted claim of the Kyphon's patent-in-suit is infringed
12  either literally or under the doctrine or equivalents by each
13  device or product identified herein, identify all documents
14  relevant to such contentions."
15              All right.  Mr. Zager, as to Interrogatory
16  Number Seven, what do you contend was inadequate in response,
17  and also, what else do you ask them to provide?
18              MR. ZAGER:  Your Honor, if we can have the same
19  agreement on Seven, that will -- it will be complete as to
20  the filing of the Reply.
21              And Seven, also, asks to identify the
22  persons most knowledgeable with respect to the subject matter
23  of the Chart.
24              THE COURT:  That's the very last phrase,
25  and I didn't read it.

▯

1               MR. ZAGER:  Judge, in anticipating what I have
                        Page 42

November 2 2006 hearing transcript (3).txt

2   heard before, and just trying to avoid having another trip
3   down here, many instances when we said, what is the meaning
4   of the words in the Claim, the answer said, see the
5   Discotheque Case.

6              We don't think that that's a complete
7   response.  They need to tell us what they contend is going to
8   be the meaning of the claim, not just see the Discotheque
9   Case.  So, if we are going to do that by Monday, again, we
10  don't have an issue.

11             THE COURT:  All right.  Ms. Boyd, what's your
12  position as to your current Response?  And what else do you
13  think you can provide?

14             MS. BOYD:  Judge, as to the current Response, we
15  have given a Claim Construction Chart that lays out the
16  construction that was applied by the Delaware Court.  And
17  that we contend that is the construction that should be
18  applied here.  And the claim construction and infringement go
19  hand and hand, and those -- and both will be address in the
20  PI Reply and in the PI Opposition to the extent that they are
21  -- aren't already addressed in our Interrogatory Response.

22             THE COURT:  All right.  What about the persons'
23  most knowledgeable?

24             MS. BOYD:  Well, the person most knowledgeable,
25  and perhaps Mr. Zager and I can -- we can discuss this on the

D

46

1   infringement contention of Medtronic.  The person who is most
2   knowledgeable about the contentions are attorneys.  The
3   persons most knowledgeable about the Medtronic's devices are

November 2 2006 hearing transcript (3).txt

4   Medtronic witnesses.

5           So, aside from attorneys, Kyphon doesn't

6   have people that are knowledegeable about the Medtronic's

7   devices or the Kyphon's litigation contentions.

8           MR. ZAGER:  That's a stipulation, I accept it,

9   Judge.

10          THE COURT:  Ms. Boyd, are you saying that?  Is

11  that your response, Kyphon doesn't have people knowledgeable

12  about these infringement claims?

13          MS. BOYD:  There are attorneys at Kyphon.

14  David Shaw, General Counsel, who is under the Protectrive

15  Order in this case, he is somebody who knows about the work

16  product and the development and the infringement contentions,

17  yes, Your Honor.

18          THE COURT:  All right.  But, other than the

19  attorneys involved in the litigation, there is no other

20  employees?

21          MS. BOYD:  Not currently, Judge.  Our expert

22  witnesses will testify regarding infringement issues.

23          I suppose it is conceivable that consistent

24  with the Protective Order, we might have a Kyphon person look

25  at the Medtronic device.  But, we haven't -- there is no one

ALPHA REPORTING CORPORATION
(901) 523-8974

D

47

1   like that now.

2           THE COURT:  All right.  I am feeling we should,

3   probably, have you file just a supplemental response to

4   Interrogatory Number Seven addressing that phrase, "persons

Page 44

        November 2 2006 hearing transcript (3).txt
 5  most knowledgeable".
 6                   So, I am going to direct you to actually
 7  supplement Interrogatory Number Seven, and address that
 8  portion of the persons most knowledgeable.
 9                   Since you have so much due Monday, why
10  don't we let you do that by Wednesday, the 8th.
11              MS. BOYD:  I appreciate that, Your Honor.
12              THE COURT:  All right.  I think that from my
13  standpoint that covers everything that I needed to cover
14  today.
15                   Counsel, do you have any other matters that
16  --
17              MR. VORDER-BRUEGGE:  Judge, can I have less than
18  one minute?  I want to make sure that we don't run into an
19  ambiguity argument.
20              THE COURT:  You may.
21                              (WHEREUPON, A CONFERENCE WAS
22                               HELD BETWEEN MR.
23                               VORDER-BRUEGGE AND MS. BOYD
24                               OUTSIDE OF THE HEARING OF
25                               THE COURT.)

ALPHA REPORTING CORPORATION
(901) 523-8974

D

                                                        48

 1              MS. BOYD:  Judge, Mr. Vorder-Bruegge has brought
 2  up a good point.  On the Discotheque's documents, the
 3  experts' reports, are -- is it just the experts' reports for
 4  witnesses that are also testifying or anticipated to testify
 5  in this case or is it all experts' reports including the
 6  Discotheque's experts reports and the -- primarily
                              Page 45

November 2 2006 hearing transcript (3).txt

 7  Discotheque's experts reports?

 8              THE COURT:  Let me hear from Mr. Zager.  But, I

 9  assume that we would exclude any consulting.  If you had any

10  consulting in Discotheque, I don't think that you would have

11  to produce those at all, but we are --

12              MR. ZAGER:  Judge, I agree, consulting experts

13  are not a fair game, and testifying experts for either side

14  is material and relevant.

15                   If there needs to be a redaction, then we

16  have discussed the perimeters of that redaction ad nausea.

17  And we would like all of those reports because they are all

18  important.

19              THE COURT:  It seems to me that all testifying

20  experts' reports from either side would be relevant and

21  discoverable in this litigation except by the fact that the

22  portions of them are covered by a Protective Order from

23  another court.

24                   So, it will cover all of the testifying

25  experts.

ALPHA REPORTING CORPORATION
(901) 523-8974

 

                                                        49


 1              MS. BOYD:  Thank you for that clarification.

 2  Just as a heads up, with the Discotheque's reports, there are

 3  going to be a lot of redactions.

 4              THE COURT:  Right.  Right.  But, you can give

 5  them what you can with redactions.  And you can pursue the

 6  rest hopefully through the Delaware Court.

 7                   So, I know you got a lot due Monday.  And

                            Page 46

November 2 2006 hearing transcript (3).txt
8   by close of business, I would expect a Proposed Orders or

9   Order, if it can be agreed upon.  If not, submit what you

10  have by sometime on Monday.  I won't look at them until

11  Tuesday, midnight on Monday, maybe at 6:00 a.m. on Tuesday.

12           MR. VORDER-BRUEGGE:  The old drop box doctrine

13  is back.

14           MR. ZAGER:  May I ask the Court for one more

15  thing that in the Order that may prove helpful later on, and

16  I don't think it is in dispute that we have been diligent in

17  trying to get these Discotheque's documents.

18           THE COURT:  I agre.  And I think -- I believe

19  that the record does reflect that you have actively and

20  diligently pursued them.

21           You are welcome to include language to that

22  effect.  And whatever you want, any language that you have

23  responded to the extent that you can put that in.

24           MS. BOYD:  Thank you.

25           THE COURT:  All right.  Anything further?

ALPHA REPORTING CORPORATION
(901) 523-8974

D

50

1            MR. VORDER-BRUEGGE:  Would Your Honor ask the

2   CSO to return my copy of the Response?

3            THE COURT:  Yes.  You can have that back, but I

4   did write on my copy of the Analysis.

5            MR. VORDER-BRUEGGE:  Never mind, Judge.  We have

6   plenty of paper.  Just keep it.

7            THE COURT:  We do too.  You can have this copy

8   back.  I have copies now.  And this is the one that I wrote

9   on which was the one that Mr. Zager provided.
                        Page 47

November 2 2006 hearing transcript (3).txt

10                   All right.  Counselors, I think that's all.

11   And we can get this in by Monday, I will hope to have it

12   Tuesday Morning or Wednesday to get something out which then

13   we can at least expedite it to that extent.

14                   All right. Counselor, thank you.

15                                (WHEREUPON THE ABOVE-ENTITLED

16                                CAUSE WAS CONCLUCED.)

17

18

19

20

21

22

23

24

25

ALPHA REPORTING CORPORATION
(901) 523-8974

⬚

                                                              51

1                      C E R T I F I C A T E

2    STATE OF TENNESSEE:

3    COUNTY OF SHELBY:

4                   I, FRENETTA E. HURD, Court Reporter, Shelby
     County, Tennessee, CERTIFY:
5
                    The foregoing proceedings were taken before
6    me at the time and place stated in the foregoing styled cause
     with the appearances as noted.
7
                    Being a Court Reporter, I then reported the
8    proceedings in Stenotype, and the foregoing pages contain a
     true and correct transcript of my said Stenotype notes then
9    and there taken.

10                  I am not in the employ of and am not
     related to any of the parties or their counsel, and I have no
                              Page 48

November 2 2006 hearing transcript (3).txt
11    interest in the matter involved.

12                 I further certify that in order for this
      document to be considered a true and correct copy, it must
13    bear my original signature and that any reproduction in whole
      or in part of this document is not authorized and not to be
14    considered authentic.

15                 Witness my signature, this the _____day
      of _____, 2006.
16

17

      _____
18    FRENETTA E. HURD
      Court Reporter
19
      Notary Public at Large
20    For the State of Tennessee

21
                                    My Commission Expires:
22

23    _____
      Notary Public
24

25


ALPHA REPORTING CORPORATION
(901) 523-8974


￼
                                                      52


      1

      2

      3

      4

      5

      6

      7

      8

      9

     10

     11

     12

November 2 2006 hearing transcript (3).txt

13

14

15

16

17

18

19

20

21

22

23

24

25

ALPHA REPORTING CORPORATION
(901) 523-8974

⏹

# Exhibit F

Sean P. DeBruine (SBN 168071)(sdebruine@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1950 University Avenue, Suite 505
East Palo Alto, CA 94303
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

Steven M. Zager (*pro hac vice*)(szager@akingump.com)
Michael Simons (*pro hac vice*)(msimons@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)(moshea@akingump.com)
Paul A. Gennari (*pro hac vice*) (pgennari@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Plaintiffs
MEDTRONIC, INC.,
MEDTRONIC VASCULAR, INC.,
MEDTRONIC USA, INC.,
MEDTRONIC VASCULAR GALWAY, LTD.,
MEDTRONIC SOFAMOR DANEK, INC., and
SDGI HOLDINGS, INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC, INC.,<br>MEDTRONIC VASCULAR, INC.,<br>MEDTRONIC USA, INC.,<br>MEDTRONIC VASCULAR GALWAY, LTD.,<br>MEDTRONIC SOFAMOR DANEK, INC., and<br>SDGI HOLDINGS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>KYPHON INC.,<br>Defendant. | **CASE NO. C06-02559 SI**<br><br>**MEDTRONIC'S FIRST SET OF<br>DOCUMENT REQUESTS TO<br>KYPHON, INC. (NOS. 1-41)** |

28.    All documents referring to, relating to or concerning any failure, shortcoming, deficiency or limitation, complaint, dissatisfaction, negative or unfavorable opinion or comment, or suggestion for improvement relating to each of the Accused Kyphon Products.

29.    All documents referring to, relating to or concerning any successes, advantages, laudatory or positive comments, satisfaction, or favorable opinion or comment relating to each of the Accused Kyphon Products.

30.    All documents and things referring to, relating to or concerning any legal or administrative proceedings involving any of the Accused Kyphon Products, including without limitation, medical malpractice suits and product liability suits.

31.    All documents and things referring to, relating to or concerning any business plan, business analysis, report, market share, competition and/or profitability of the Accused Kyphon Products.

32.    All documents and things referring to, relating to or concerning the advertising, promotion and marketing of the Accused Kyphon Products, including without limitation, product sample kits, testimonials, brochures, product presentations, advertisements, price lists, product lists, pre-drafted answers to anticipated purchaser questions, product fact sheets and other documents.

33.    Documents and things sufficient to disclose the manufacturing and/or production costs of each of the Accused Kyphon Products.

34.    All documents and things referring to, relating to or concerning sales volume, revenue, costs, overhead and profits (gross and net) for each of the Accused Kyphon Products.

35.    All documents and things referring to, relating to or concerning Kyphon's financial performance, actual and projected, including without limitation capital investment, revenue, costs

8

41.    To the extent not covered by another discovery request, all documents and things referring to, relating to or concerning Medtronic.

Dated  June 29, 2006

AKIN GUMP STRAUSS HAUER & FELD LLP


By: _____

       Sean P. DeBruine

Attorney for Plaintiffs
MEDTRONIC, INC.,
MEDTRONIC VASCULAR, INC.,
MEDTRONIC USA, INC.,
MEDTRONIC VASCULAR GALWAY, LTD.,
MEDTRONIC SOFAMOR DANEK, INC., and
SDGI HOLDINGS, INC.

10

**CERTIFICATE OF SERVICE**

I, Nina Marie, am more than eighteen years of age and not a party to the within action. My place of employment and business address is Akin Gump Strauss Hauer & Feld LLP, Two Palo Alto Square, 3000 El Camino Real, Suite 400, Palo Alto, California, 94306.

On June 29, 2006, I served the following:

**1. MEDTRONIC'S FIRST SET OF DOCUMENT REQUESTS TO KYPHON, INC. (NOS. 1-41)**

**2. MEDTRONIC'S FIRST SET OF INTERROGATORIES TO KYPHON, INC. (NOS. 1-5)**

by the indicated means to the persons at the addresses listed:

| | |
|---|---|
| Frank E. Scherkenbach<br>Karen I. Boyd<br>Fish & Richardson P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Telephone: (650) 839-5070<br>Facsimile: (650) 839-5071<br>scherkenbach@fr.com<br>boyd@fr.com | ✓ Via Overnight Courier<br>☐ Via Hand Delivery<br>☐ Via Facsimile<br>☐ Via U.S. Mail<br>✓ Via E-mail |
| Thomas S. McClenahan<br>Fish & Richardson P.C.<br>3300 Dain Rauscher Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Telephone: (612) 335-5070<br>Facsimile: (612) 288-9696<br>mcclenahan@fr.com | ✓ Via Overnight Courier<br>☐ Via Hand Delivery<br>☐ Via Facsimile<br>☐ Via U.S. Mail<br>✓ Via E-mail |

I am readily familiar with our firm's practice for collection and processing of correspondence via electronic mail and overnight courier. I transmitted true copies of the documents by electronic mail to the addresses listed above, placed the aforementioned documents in a sealed envelope and placed them for collection by courier service at our business offices,

following ordinary business practice. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct; that I am employed in the office of a member of the bar of this Court at whose direction the service was made; and that this declaration was executed on June 29, 2006, at Palo Alto, California.

Nina Marie
Paralegal

# Exhibit G

Sean P. DeBruine (SBN 168071)(sdebruine@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1950 University Avenue, Suite 505
East Palo Alto, CA 94303
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

Steven M. Zager (*pro hac vice*)(szager@akingump.com)
Michael Simons (*pro hac vice*)(msimons@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Michael A. O'Shea (*pro hac vice*)(moshea@akingump.com)
Paul A. Gennari (*pro hac vice*) (pgennari@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Plaintiffs
MEDTRONIC, INC.,
MEDTRONIC VASCULAR, INC.,
MEDTRONIC USA, INC.,
MEDTRONIC VASCULAR GALWAY, LTD.,
MEDTRONIC SOFAMOR DANEK, INC., and
SDGI HOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC, INC.,<br>MEDTRONIC VASCULAR, INC.,<br>MEDTRONIC USA, INC.,<br>MEDTRONIC VASCULAR GALWAY, LTD.,<br>MEDTRONIC SOFAMOR DANEK, INC., and<br>SDGI HOLDINGS, INC.,<br><br>                    Plaintiffs,<br><br>            v.<br><br>KYPHON INC.,<br>                    Defendant. | CASE NO. C06-02559 SI<br><br>**MEDTRONIC'S SECOND SET OF DOCUMENT REQUESTS TO KYPHON, INC. (NOS. 42-86)** |

74.    All documents and things referring to, relating to, concerning, prepared, filed, served, or produced in (a) the lawsuit captioned *Kyphon, Inc. v. Disc-O-Tech Medical Technologies, Ltd. and Disc Orthopaedic Technologies, Inc.*, No. 04-204-JJF (D.Del.), (b) any other domestic or foreign lawsuit or legal or administrative proceeding involving Kyphon or any of the Kyphon patents-in-suit or related patents, or (c) any other domestic or foreign lawsuit or legal or administrative proceeding involving Kyphon or any of the Kyphon patents-in-suit or related patents involving any of the Kyphon patents-in-suit, related patents, or products, devices or parts embodying, practicing or employing the alleged inventions claimed or disclosed in the Kyphon patents-in-suit or related patents including without limitation medical malpractice actions or product liability actions.

75.    All documents and things referring to, relating to, concerning, or constituting any threatened litigation by Kyphon against any party that Kyphon believes or believed infringes any of the Kyphon patents-in-suit including without limitation warning letters and analyses of any product or device sold or manufactured by such party.

76.    Documents sufficient to show by product number, marketing name, version number, or other identifying data the sales data on a quarterly and annual basis for any device, product, or part developed, manufactured, or assembled by or on behalf of Kyphon or that embodies or practices any claim of the Kyphon patents-in-suit.

77.    All documents and things relating to any costs incurred in the research or development of any device, product, or part developed, manufactured, or assembled by or on behalf of Kyphon or that embodies or practices any claim of the Kyphon patents-in-suit.

11

1

## CERTIFICATE OF SERVICE

2

3

4

  This is to certify that on August 3, 2006, I caused a true and correct copy of the foregoing MEDTRONIC'S SECOND SET OF DOCUMENT REQUESTS TO KYPHON, INC. (NOS. 42-86) to be served on Kyphon Inc. by electronic mail and Regular Mail to the following individuals at the addresses listed:

5

6

7

8

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 521-7883
Facsimile: (617) 542-8906
scherkenbach@fr.com

Karen I. Boyd
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071
boyd@fr.com

9

10

11

12

13

14

15

16

Thomas S. McClenahan
Katherine A. Moerke
Michael J. Kane
William R. Woodford
Fish & Richardson P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696
mcclenahan@fr.com
moerke@fr.com
michael.kane@fr.com
woodford@fr.com

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
halkowski@fr.com


Glen G. Reid, Jr.
Wyatt, Tarrant & Combs L.L.P.
The Renaissance Center
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Telephone: (901) 537 - 4367
Facsimile: (901) 537 - 1000
GREID@wyattfirm.com

17

18

19

20

21

22

      /s/
      Paul A. Gennari

23

24

25

26

27

28

16

# Exhibit H

1  Frank E. Scherkenbach, SBN 142549 (scherkenbach@fr.com)
   Fish & Richardson P.C.
2  225 Franklin Street
   Boston, MA  02110-2804
3  Telephone: (617) 542-5070
   Facsimile: (617) 542-8906
4
   Karen I. Boyd, SBN 189808 (boyd@fr.com)
5  Fish & Richardson P.C.
   500 Arguello Street, Suite 500
6  Redwood City, CA 94063
   Telephone: (650) 839-5070
7  Facsimile: (650) 839-5071
8  Thomas S. McClenahan, SBN 203204 (mcclenahan@fr.com)
   Michael J. Kane (*pro hac vice*) (michael.kane@fr.com)
9  William R. Woodford (*pro hac vice*) (woodford@fr.com)
   Fish & Richardson P.C.
10 3300 Dain Rauscher Plaza
   60 South Sixth Street
11 Minneapolis, MN  55402
   Telephone:  (612) 335-5070
12 Facsimile:  (612) 288-9696
13 Attorneys for Defendant
   KYPHON INC.
14
15             UNITED STATES DISTRICT COURT
16           NORTHERN DISTRICT OF CALIFORNIA
17                (SAN FRANCISCO DIVISION)

18 | MEDTRONIC, INC., MEDTRONIC | Civil Action No. C06-02559 SI |
   | VASCULAR, INC., MEDTRONIC USA, INC., | |
19 | MEDTRONIC VASCULAR GALWAY LTD., | **KYPHON'S RESPONSES AND** |
   | MEDTRONIC SOFAMOR DANEK, INC., and | **OBJECTIONS TO MEDTRONIC'S** |
20 | SDGI HOLDINGS, INC., | **INTERROGATORY NOS. 6 AND 7** |
21 |             Plaintiffs, | |
22 |        v. | |
23 | KYPHON INC., | |
24 |             Defendant. | |

25
26
27
28

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Kyphon, Inc. hereby

2  responds to plaintiffs Medtronic, Inc., Medtronic Vascular, Inc., Medtronic USA Inc., Medtronic

3  Vascular Galway Ltd., Medtronic Sofamor Danek, Inc., and SDGI Holdings, Inc.'s (collectively

4  "Medtronic") Interrogatory Nos. 6 and 7 as follows:

### PRELIMINARY STATEMENT

6    All responses to the following interrogatories are based on information currently known to

7  Kyphon, after a reasonable effort to located information called for by these interrogatories.

8  Accordingly, all responses are given without prejudice to Kyphon's right to produce evidence

9  based on any additional information that may develop or come to Kyphon's attention at a later

10  time. In addition, Kyphon's objections herein are made without prejudice to Kyphon's right to

11  assert any additional or supplemental objections should Kyphon discover additional grounds for

12  such objections. Finally, Kyphon's agreement to produce documents in response to any

13  interrogatory does not constitute an admission that any such documents in fact exist or are in

14  Kyphon's possession, custody or control.

15    Kyphon makes the objections and responses set forth below without in any manner

16  waiving: (1) the right to object to the use of any response for any purpose in this action or any

17  other actions on grounds of privilege, relevancy, materiality, or any other appropriate basis; (2) the

18  right to object to any other interrogatories or requests involving or relating to the subject matter of

19  the responses herein; and (3) the right to revise, correct, supplement, or clarify any of the

20  responses provided below at any time. Kyphon expressly reserves the right to supplement its

21  responses.

### GENERAL OBJECTIONS

23    1.    Kyphon objects to each interrogatory to the extent it seeks information or

24  documents protected by attorney-client privilege and/or the work product doctrine, prepared in

25  anticipation of litigation or for trial, not relevant to the subject matter of this investigation, or not

26  reasonably calculated to lead to the discovery of admissible evidence.

27

28

1     2.    Kyphon objects to each interrogatory to the extent it includes subparts that should

2 be propounded, numbered, or counted as another interrogatory in accordance with Rule 33.

3     3.    Kyphon objects to each interrogatory to the extent it uses terms or phrases that are

4 not defined or understood; Kyphon will not speculate as to the meaning ascribed to these terms or

5 phrases.

6     4.    Kyphon objects to each interrogatory to the extent it is premature since Medtronic

7 failed to provide complete discovery in response to Kyphon's first set of discovery requests.

8 Kyphon's investigation is ongoing and it reserves the right to amend and supplement its responses

9 to these interrogatories as appropriate.

10     5.    Kyphon objects to each interrogatory to the extent it calls for a legal opinion or

11 conclusion.

12     6.    Kyphon objects to each interrogatory to the extent it seeks discovery relating to

13 claims properly before the court in the Tennessee action.

14     7.    Kyphon objects to each interrogatory to the extent it seeks information or the

15 identification of documents not within Kyphon's possession, custody or control. Kyphon also

16 objects to each interrogatory to the extent it refer to persons, entities, or events not known to

17 Kyphon. Kyphon further objects to each interrogatory to the extent it: (1) seeks to require more of

18 Kyphon than any obligation imposed by law; (2) subjects Kyphon to unreasonable and undue

19 burden and expense, and (3) seeks to impose upon Kyphon an obligation to investigate or discover

20 information or materials from third parties or sources which are equally accessible to Medtronic.

21     8.    Kyphon objects to Medtronic's definition of "Accused Kyphon Products" because

22 KyphX Express™ Inflatable Bone Tamp, 18 mm and KyphX Express™ Inflatable Bone Tamp,

23 21mm do not exist.

24     9.    Kyphon objects to each interrogatory to the extent it seeks identification of "all"

25 information that refers or relates to a particular subject, on the grounds of over breadth, undue

26 burden and expense. Kyphon has made a reasonable search for information relevant to the subject

27 matter of the interrogatories. If any additional, non-privileged, non-immune, relevant information

28

1  is discovered in the course of any further or continuing searches, it will be identified and/or

2  produced in accordance with Rule 26(e).

3      10.   Kyphon objects to each interrogatory to the extent it is premature and/or requests

4  that Kyphon set forth its contention discovery and expert opinions.  Kyphon's investigation is

5  ongoing and it will provide such discovery in accordance with the procedural schedule the Court

6  sets forth in this case.

7      11.   Kyphon objects to each interrogatory to the extent it is framed in terms that

8  Medtronic has not specifically defined or fails to identify with reasonable particularity the

9  information requested.  Kyphon objects to such interrogatories on the grounds that they are vague,

10  ambiguous and unduly broad.

11      12.   Kyphon objects to the various definitions of "identify" and to the requirements for

12  identification of information withheld on the basis of privilege, on the basis that these are vague,

13  ambiguous, overbroad, and unduly burdensome.  They are unreasonable and would require

14  Kyphon to exceed the requirements under the Federal Rules of Civil Procedure and the Local

15  Rules.

16      13.   Kyphon reserves the right to make any use of, or to introduce at any hearing and at

17  trial, information and/or documents responsive to Medtronic's interrogatories but discovered

18  subsequent to the date of its response, including, but not limited to, any such information or

19  documents obtained in discovery herein.

20      14.   Kyphon incorporates by reference these General Objections into the specific

21  objections and responses set forth below.  Kyphon may repeat a General Objection for emphasis or

22  some other reason.  The failure to repeat any General Objection does not waive any general

23  objection to the interrogatory.  Moreover, Kyphon does not waive its right to amend its objections.

24

25

26

27

28

KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S
INTERROGATORY NOS. 6 AND 7
Civil Action No. C06-02559 SI

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving its General Objections, Kyphon specifically responds to Medtronic's Interrogatory Nos. 6 and 7 as follows:

INTERROGATORY NO. 6:

For each claim of each of Kyphon's patents-in-suit that Kyphon asserts is infringed by Medtronic, provide a claim chart containing in the first column the claim elements, and in the second column Kyphon's contentions with respect to the meaning and/or claim interpretation of the words and/or phrases used in each such claim, including but not limited to at least the following words and/or phrases:

    (i)     "bone marrow," "compacting," "outwardly of the recess," "form a void in the bone," "filling the passage," and "filling the void" recited in the claims of the '888 patent;

    (ii)    "bone marrow," "compacting," "outwardly of the recess," "form a void in the bone," "filling the passage," and "filling the void" recited in the claims of the '404 patent;

    (iii)   "cavity forming structure," "cancellous bone," "rotating the shaft within and about the axis of the cannula," "directly contacts," "shears," "form a cavity," "moving the shaft linearly along the axis of the cannula," "distal end," "distal end portion," "cavity forming structure," "shaft adapted to extend beyond the distal end of the cannula," "radially," "in situ," and "extending the cavity forming structure in situ radially from the shaft" recited in the claims of the '138 patent;

    (iv)    "cavity forming structure," "cancellous bone," "rotating the shaft within and about the axis of the cannula," "directly contacts," "shears," "form a

1    cavity," "moving the shaft linearly along the axis of the cannula," "distal

2    end," "distal end portion," "cavity forming structure," "shaft adapted to

3    extend beyond the distal end of the cannula," "radially," "in situ," and

4    "extending the cavity forming structure in situ radially from the shaft"

5    recited in the claims of the `672 patent; and

6

7       (v)   "body," "expansion," "constrained expansion," "adapted to undergo

8    expansion," "changes in the thickness of the body," "external restraint

9    coupled to an exterior of the body," and "cancellous bone" as used in the

10    `043 patent.

11    RESPONSE TO INTERROGATORY NO. 6:

12         Kyphon objects to this interrogatory to the extent that it is premature and/or requests that

13    Kyphon set forth its contention discovery and expert opinions.  Kyphon will provide such

14    discovery in accordance with the procedural schedule the Court sets forth in this case.  Kyphon

15    further objects to this interrogatory to the extent it seeks information protected by the attorney-

16    client privilege, the work-product doctrine, the joint defense privilege, and/or any other applicable

17    privilege, protection or doctrine.  Kyphon further objects to this interrogatory as overly broad,

18    unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

19         Subject to and without waiving the foregoing objections and the General Objections,

20    Kyphon responds as follows:  Kyphon states that the words and/or phrases used in the asserted

21    claims should be construed as they were by the Delaware court in Kyphon, Inc. v. Disc-O-Tech

22    Medical Tech. Ltd., et al., Civ. Action No. 04-204-JJF (D. Del. 2005), and, to the extent not

23    construed by the Delaware court, should be given their ordinary meanings.  Kyphon further hereby

24    incorporates by reference the entirety of its response to Interrogatory No. 6 served today in the suit

25    in Tennessee (Sandhu et al. v. Medtronic Sofamor Danek, Inc. et al., Civil Action No. 05-2863-

26    JPM-dkv (W.D. Tenn.)), including the tables attached thereto.

27

28

KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S
INTERROGATORY NOS. 6 AND 7
Civil Action No. C06-02559 SI□



1    <u>INTERROGATORY NO. 7:</u>

2     Identify each device or product used or sold by Medtronic that, according to Kyphon,

3    embodies, is covered by, makes use of, or otherwise practices any claim of Kyphon's patents-in-

4    suit, and using the claim charts provided in response to Interrogatory No. 6, above, state with

5    particularity the complete factual and legal basis for Kyphon's contentions that Medtronic "is

6    infringing [each of the Kyphon patents-in-suit] by making, using, inducing or encouraging others

7    to use, offering to sell, and/or selling devices that infringe and/or are used to infringe, directly or

8    indirectly, one or more claims of [each of the Kyphon patents-in-suit]," (Kyphon's First Amended

9    Complaint, Civil Action No. 05-CV-2863-MIV, ¶¶ 87, 101, 107, 113) including without limitation

10    how each asserted claim of the Kyphon patents-in-suit is infringed either literally or under the

11    doctrine of equivalents by each device or product identified herein, identify all documents relevant

12    to such contentions, and identify the persons most knowledgeable with respect to the subject

13    matter of this Interrogatory.

14    <u>RESPONSE TO INTERROGATORY NO. 7:</u>



15     Kyphon objects to this interrogatory to the extent that it is premature and/or requests that

16    Kyphon set forth its contention discovery and expert opinions. Kyphon's investigation is ongoing

17    and it will provide such discovery in accordance with the procedural schedule the Court sets forth

18    in this case. Kyphon further objects to this interrogatory to the extent it seeks information

19    protected by the attorney-client privilege, the work-product doctrine, the joint defense privilege,

20    and/or any other applicable privilege, protection or doctrine. Kyphon further objects to this

21    interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the

22    discovery of admissible evidence. Finally, Kyphon objects that Medtronic has not fully produced

23    information regarding its devices used to treat vertebral compression fractures. Kyphon reserves

24    its right to supplement its response to this interrogatory in light of further discovery and analysis.

25     Subject to and without waiving the foregoing objections and the General Objections,

26    Kyphon responds as follows: Kyphon hereby incorporates by reference the entirety of its response

27    to Interrogatory No. 6 served today in the suit in Tennessee (Sandhu et al. v. Medtronic Sofamor

28

7

KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S
INTERROGATORY NOS. 6 AND 7
Civil Action No. C06-02559 SI□

1    Danek, Inc. et al., Civil Action No. 05-2863-JPM-dkv (W.D. Tenn.)), including the tables attached

2    thereto.

3

4

5    Dated:  September 1, 2006                    FISH & RICHARDSON P.C.

6

7                                            By:  s/Thomas S. McClenahan

8                                                 Thomas S. McClenahan

9                                            Attorney for Defendant
                                             KYPHON INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8        KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S
         INTERROGATORY NOS. 6 AND 7
         Civil Action No  C06-02559 SID

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I certify that, on September 1, 2006, I caused a copy of KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S INTERROGATORY NOS. 6 AND 7 to be served via electronic mail, pursuant to agreement of the parties, on the following individuals:

Sean DeBruine (sdebruine@akingump.com)
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
3000 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 838-2000
Facsimile: (650) 838-2001

Steven M. Zager (szager@akingump.com)
Michael Simons (msimons@akingump.com)
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1111 Louisiana Street, 44th Floor
Houston, TX 77002
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

Attorneys for Plaintiffs
MEDTRONIC, INC., MEDTRONIC
VASCULAR, INC., MEDTRONIC
USA, INC., MEDTRONIC VASCULAR
GALWAY, LTD., MEDTRONIC
SOFAMOR DANEK, INC., & SDGI
HOLDINGS, INC.

I declare under penalty of perjury that the above is true and correct. Executed on September 1, 2006.

s/Thomas S. McClenahan
Thomas S. McClenahan

60373942.doc

9    KYPHON'S RESPONSES AND OBJECTIONS TO MEDTRONIC'S
INTERROGATORY NOS. 6 AND 7
Civil Action No. C06-02559 SI

# Exhibit I

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HARVINDER S. SANDHU, M.D. and KYPHON INC.,<br><br>                Plaintiffs,<br><br>      v.<br><br>MEDTRONIC SOFAMOR DANEK, INC.,<br>MEDTRONIC SOFAMOR DANEK USA,<br>INC., and SDGI HOLDING, INC.,<br>              Defendants. | Civil Action No. 05-2863-JPM-dkv<br>The Honorable Jon Phipps McCalla<br>The Honorable Diane K. Vescovo |

**PROTECTIVE ORDER**

To facilitate the production and receipt of trade secret or other confidential research, development, or commercial information during discovery in this action, THE COURT HEREBY ORDERS as follows:

I.    **CLASSIFICATION OF INFORMATION**

1.    "CONFIDENTIAL INFORMATION" means information, documents, or things (including transcripts) that (1) have not been made public, and (2) the designating party reasonably and in good faith believes contains or comprises trade secrets or other confidential research, development or commercial information or documents.

2.    "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" means Confidential Information that is commercial, financial or marketing in nature and that the designating party reasonably and in good faith believes is so highly sensitive that its disclosure to persons of expertise in the area would reveal significant business or financial advantages of the designating party. It includes information that the designating party reasonably and in good faith believes relates to (1) current business strategic plans, (2) sales, cost and pricing information including future sales/financial projections (3) non-public marketing information including future marketing plans, (4) recent detailed sales and financial data, (5) customer lists, or (6) other information of competitive, financial or commercial significance comparable to the items listed in this paragraph.

1

**II.    PRODUCING AND DESIGNATING INFORMATION**

3.    Any information produced or disclosed in this action (in pretrial discovery, as a deposition transcript or exhibit, in a pleading or otherwise) deemed to contain or constitute CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY OR CONFIDENTIAL INFORMATION shall be so designated by any party to this action, or any other supplier of that information, (1) in writing by typing, stamping, or affixing conspicuously on its face (in such a manner as will not interfere with the legibility thereof ) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" at the time of production or service thereof, or (2) orally on the record at a deposition or conference. Oral notice shall be effective only for those parties in attendance personally or by counsel, or for those parties who receive a transcript containing or marked with a confidentiality designation. The designating party shall use due care to designate only information that truly merits such designation.

4.    The introduction of any CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY into open court during the trial or any hearing in this matter shall be governed by pertinent local rules of the Court, future orders of the Court or by stipulation between the parties.

5.    Any party to this action may designate anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" and any other person or entity may so designate anything that it produces or discloses. Any non-party producing information in this action may so designate such materials pursuant to Paragraph 25 below.

### A.    Production of Documents and Things

6.    The designating party shall mark each effected document or thing with a legend stating "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" as appropriate, or a comparable notice. Where a document consists of more than one page, at least the first page and each page on which confidential information appears shall be so marked. This provision shall not apply where it is impractical or infeasible to mark the affected document or thing such as in the case of an original that cannot be readily copied. In the event, the designating party shall provide separate written notice.

7.    If a party inadvertently fails to mark a document that contains confidential information with the appropriate designation, it may later apply such a designation by providing counsel for each other party written notice of the proper designation for each affected document or thing. For purposes of this provision, oral notice recorded by a court reporter shall constitute written notice for any party in attendance personally or by counsel, or who receives a transcript containing such a notice. Upon receiving such a notice, each party shall treat the affected documents or things, and all copies thereof, as designated as the notice states, and each receiving party shall make a reasonable effort to (1) prevent improper use or disclosure of such information and (2) obtain the return of such information that it disclosed to any person not authorized to receive such designated information, subject to its right to contest any designation in accordance with Paragraph 22 below, and subject to the exceptions in Paragraph 18 below regarding use or disclosure of information before receiving notice of any designation. The designating party shall also provide a replacement, marked pursuant to Paragraph 6 above, for each affected document and thing. After receipt of a marked replacement, and upon written request of the designating party, the receiving party shall certify in writing to counsel of the designating party that the receiving party has returned or destroyed, at its option, every affected unmarked document and thing and all copies thereof.

8.    Until seven (7) days after receipt, the receiving party shall treat all documents and things received from a producing party as being CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY, regardless of how such documents or things are marked. After that seven-day period, however, documents and things shall be treated in accordance with how they are actually designated, if at all, under Paragraphs 1-7 above.

3

**B.      Production for Inspection**

9.      Any entity that produces documents or things for inspection and copying may require by written notice to the receiving party that, with respect to each document or thing, (a) the document or thing shall be (i) treated as if it were designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and (ii) reviewed only by persons whom this Protective Order authorizes to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY, and any copies, summaries, excerpts, compilations, notes or other information obtained or generated during the inspection of the document or thing shall be treated as CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY. After designation by the producing party, the documents and things shall be treated in accordance with the designation, if any, of the producing party.

**C.      Depositions**

10.      A party may designate deposition transcripts and exhibits as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" only (a) orally on the record during the deposition; or (b) by notifying all other parties in writing within 30 days of receiving the transcript of the exhibits, transcript, or portions thereof, that contain CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION.

11.      Until thirty (30) days after receiving a deposition transcript, each party shall treat the entirety of each deposition transcript, all information disclosed therein, and each exhibit thereto as CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY unless before the deposition, the exhibit was properly treated as not having any CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION. After the thirty (30) day period, however, deposition transcripts, all information disclosed therein and each exhibit thereto, shall be treated in accordance with how they are actually designated.

4

**D.    Redactions**

12.    Any producing party may redact material from documents and things it produces, including matter that the producing party claims is subject to the attorney-client privilege, work product immunity or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE" or a comparable descriptive notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of the attorney-client privilege, work product immunity or other privilege or immunity.

**III.    LIMITATIONS ON USING AND DISCLOSING INFORMATION**

**A.    Limitation on Use and Disclosure**

13.    All CONFIDENTIAL INFORMATION or CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY produced or exchanged during this litigation shall not be disclosed or used except for the purpose of conducting this litigation, including any appeal resulting therefrom, and not for any other business, commercial or other purpose whatsoever. As an example only, such information shall not be used by a recipient for any commercial purpose, for filing, prosecuting or opposing any patent application (of any type) or a similar request for protection, for patent reissue or reexamination request or for developing a product. Notwithstanding the above limitations, the parties agree that all documents produced and all discovery responses served in *Medtronic et al v. Kyphon Inc*, No. C 06-2559 SI (N.D.Cal.), may be used as if produced or served in this suit subject to the terms of this protective order.

Any attorney for or representing either Party who obtains, receives, has access to, or otherwise learns, in whole or in part, technical information designated "Attorneys' Eyes Only" under this Protective Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent application for any Party to this case during the pendency of this case and for two years after the conclusion of this litigation, including any appeals. To ensure compliance with the purpose of this provision, each Party shall create an ethical wall between those persons with access to technical information designated "Attorneys' Eyes Only" and those individuals who prepare, prosecute, supervise, or assist in the prosecution of any such patent application.

14.    Anything designated CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY shall not be disclosed or made available to any person or entity other than:

A.    Attorneys of Wyatt, Tarrant & Combs, LLP; Fish & Richardson P.C.; Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.; Akin Gump Strauss Hauer & Feld LLP, as well as Peter Toren of Sidley Austin LLP, including necessary clerical and support personnel (for example, paralegals, data entry personnel, copy services, visual aid providers or jury consultants) who are assisting such attorneys. Any outside attorney or law firm other than those indicated above may be added to this Protective Order as counsel of record for a party upon ten (10) days advance written notice to all other parties, but shall not be added to the Protective Order nor entitled to access to any CONFIDENTIAL INFORMATION – ATTONEYS' EYES ONLY should any other party object in writing to the designation of counsel during such ten (10) day period; any such objection shall be resolved by the Court if not resolved among the parties.

5

B.    Chad A. Hanson, in-house counsel for Defendants, and David Shaw, in-house counsel for Kyphon Inc., along with their respective in-house paralegal and clerical support staff who are directly involved in the litigation.

C.    Outside experts, consultants, and mock jurors who are specifically retained by a party to this action for purposes of this litigation and who are not otherwise currently employed by (1) a party, or (2) any predecessor, parent or affiliated company of a party, and all necessary clerical and support personnel who assist such experts or consultants, subject to the provisions regarding designating persons under this Protective Order in Paragraph 20 below;

D.    The Court and any persons the Court employs whose duties require access to the information, including jurors and court reporters; and

D.    Officers before whom a deposition or other testimony is taken (including without limitation, stenographic reporters and videographers) and necessary clerical and support personnel who are assisting such officers, who are provided a copy of this Protective Order and advised that confidential information disclosed to them may not be used in any manner other than with respect to this action.

15.    Anything designated "CONFIDENTIAL INFORMATION" shall not be disclosed or made available to any person or entity other than (a) a person or entity authorized in Paragraph 14 above to receive information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY"; and (b) Harvinder S. Sandhu, M.D.. Furthermore, unless Plaintiffs' counsel has a good faith belief that Dr. Sandhu had previously had access to the material (*e.g.*, documents on which he was copied, he received, or he otherwise had access), Dr. Sandhu shall not have access to: (i) confidential materials produced in, and related solely to, the California litigation between the parties to this agreement; or (ii) materials designated "CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY".

**B.    Filing Under Seal**

16.    Anything filed with or submitted to the court (including without limitation, pleadings, motions, transcripts or portions thereof) that comprises, contains, discloses, reproduces or paraphrases any information that is designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" shall be filed under seal, shall be kept confidential and under seal until further order of the court and shall not be opened except by the court or as ordered by the court. The first page of any document filed under seal shall bear a notice stating (a) the litigation case number, (b) the identity of the party filing the materials, (c) a brief title or description of the type of material contained therein, and (d) the date of filing or submission and the conspicuously placed warning legend or the equivalent; "The envelope, filed in this case by [name of party] contains ['CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY' or 'CONFIDENTIAL INFORMATION'], access to which is restricted by a Protective Order of this court. This envelope is not to be opened or the contents thereof revealed except by prior order of this court." This Protective Order shall apply to all materials filed with the court in a substantially similar manner prior to the effective date of this Protective Order.

**C.    Depositions**

17.    No person shall attend portions of depositions during which information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" is disclosed unless such person is an authorized recipient of such information under this Protective Order. If, during a deposition, the response to a question would require the disclosure of CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION, the witness may refuse to answer or complete his or her answer, or any party that designated the information as confidential may instruct the witness not to answer or complete his or her answer, until any persons not authorized to receive that information have left the room. If the persons not authorized to receive confidential information refuse to leave the room, the deposition shall continue as to non-confidential matters only or may be adjourned, at the option of the examining party. Each party reserves its right to demand the suspension of the taking of the deposition under Rule 30(d).

**D.    Exceptions**

18.    Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict the use or disclosure of information, documents or things, if, at the time of such use or disclosure:

A.    A party is merely using or disclosing its own information. A party may freely use and disclose its own CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION without restriction.

B.    The court has ordered such use or disclosure, or the court has ordered the relevant information undesignated. If the court orders such use or disclosure, then unless the court orders otherwise, the information, and any entity receiving any such information, shall otherwise be subject to this Protective Order.

C.    Each party that produced the information or designated the information as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" has consented in writing to such use or disclosure.

D.    The information is used or disclosed in the examination, at a deposition hearing, or trial, of any current or former officer, director, employee, agent, expert or consultant

7

of the party whose information is used or disclosed, so long as that person had access or knowledge of the information.

E.    The person or entity receiving the information wrote, was the source for, or lawfully previously received that information. Counsel may examine a witness in a good faith effort to determine whether that person had access to or knowledge of the information, provided that such examination be undertaken without the disclosure of the substance of such confidential information to the witness unless and until counsel has determined, in good faith, from such examination that the witness did, in fact, have lawful access to such information prior to this litigation.

F.    The information (1) was part of the public domain or publicly available when it was produced, or (2) becomes part of the public domain or publicly available through no act, omission or fault of any receiving party or its counsel or agents, and through no unlawful or improper act of any other person.

G.    The information is or was independently developed, prior to receipt in this litigation, by the party wishing to use or disclose the information; or

H.    The information (1) is or was in the lawful possession of the party wishing to use or disclose the information and (2) was not acquired under any obligation of confidentiality to the designating party, nor through the illegal or improper act of any person.

19.    Notwithstanding any provision of this Protective Order, nothing in this Protective Order shall prohibit or otherwise restrict counsel from referring to in a very general way, relying on, or evaluating CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION in the course of advising a party client with respect to this litigation, provided, however, that counsel shall not disclose the specific substance or content of any CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY or CONFIDENTIAL INFORMATION if such disclosure would violate this Protective Order.

## IV.    DESIGNATING PERSONS UNDER THE PROTECTIVE ORDER

20.    The parties may in good faith disclose "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" to mock jurors and jury consultants under the protective order provided such persons execute an agreement, in the form attached hereto as Exhibit A that they have read this Protective Order and agree to be bound by all of the provisions hereof and to be subject to the jurisdiction of this court for enforcement. Confidential Business Information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or "CONFIDENTIAL INFORMATION" shall not otherwise be disclosed by the Receiving Party to its independent technical, damages, or other consultants retained for purposes of this litigation and their necessary employees until the procedures in subparagraphs (A) through (D) are followed:

A.    At least five business (5) days before the designated Confidential Information is to be disclosed to any independent expert or consultant or employees thereof, the party wishing to disclose such information shall provide to the opposing party:

(i)    The person's name, business address, present employer and a current copy of the person's curriculum vitae;

(ii)    The names of any employees who will be assisting the person; and

(iii)    An agreement, in the form attached hereto as Exhibit A, from each person and each employee identified in Paragraph (ii) that they have read this Protective Order and agree to be bound by all of the provisions hereof and to be subject to the jurisdiction of this court for enforcement.

B.      Unless counsel of record for any party notifies proposing counsel of its objection to any person proposed hereunder within five (5) business days after receipt of the information referred to in Paragraph 20(a) above, such person(s) shall thereafter be entitled to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY and CONFIDENTIAL INFORMATION pursuant to the provisions of this Protective Order.

C.      Should counsel of record notify proposing counsel of its objection to any person proposed hereunder, the parties shall meet and confer within 10 days of any such objection. If the meet and confer is unsuccessful, proposing counsel may thereafter move the court for an order permitting such person to receive CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY and CONFIDENTIAL INFORMATION, provided, however, that no such information may be disclosed to any person as to whom an objection has been made until the motion is decided by the court or by an appellate court, should appellate review be sought.

D.      Each party agrees that it will not contact any consultant or employee thereof of the opposing party whose identity is revealed under this paragraph, provided, however, that the parties may take discovery of "any witness who has been identified as an expert whose opinions may be presented at trial." Fed.R.Civ.P. 26(b)(4).

21.     Counsel for any receiving party who discloses information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" or CONFIDENTIAL INFORMATION" to any person who is authorized to receive such information, shall be responsible for obtaining and keeping a copy of an executed agreement for each such person, as required by Paragraph 20 above.

## V.      DISPUTES REGARDING DESIGNATIONS

22.     Any party to this action may contest at any time the designation of anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" by giving the designating party written notice that identifies the relevant designated information and states in reasonable detail the reasons why the information should not be so designated. Any parties in disagreement about such designations shall meet and confer in good faith in person or by telephone to attempt to resolve their disagreement. If those parties cannot resolve their disagreement within ten (10) days after a party contests the designation, any party may thereafter petition the court to resolve the matter. The designating party shall bear the burden of establishing that the information should be so designated. If such an objection or petition is made, such information shall be treated according to the designation that the designating party gives it until the issue is resolved in writing by the parties or the petition is decided by the court or an appellate court, should appellate review by sought.

## VI.     THIRD PARTIES

23.     This Protective Order applies to all information that a non-party discloses in connection with this litigation. All information that any non-party designates as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall be treated as such in accordance with the terms of this Protective Order, subject to any party's rights to contest any designation in accordance with Paragraph 22 above.

24.     If any person or entity is subpoenaed, ordered by a court of competent jurisdiction, or otherwise legally required to produce information that another entity designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" in this action, the person or entity receiving the request or order shall (a) inform each person or entity that sent such request or order that the information is subject to this Protective Order, (b) immediately notify each designating party of the existence and general

9

substance of each such order or request, (c) promptly furnish each designating party with a copy of the document(s) it received that memorialized the request or order, and (d) not interfere with any designating party's response or objection to any such order or request.

   25. Nothing in this Protective Order requires any person or entity to contest, appeal, or violate a subpoena, legal process, or court order. If the designating party wishes to contest any such request or order, it shall have the burden of doing so. The entity receiving the subpoena, process, or order shall be entitled to comply with it unless (a) it is quashed or modified in a way that does not require such compliance, or (b) (i) it need not be complied with yet and (ii) the entity receives notice, within ten (10) days after it notifies each designating party of the existence of the request or order, that an entity has or will contest the request or order.

## VII. WAIVER AND INADVERTENT DISCLOSURES

   26. If a producing party inadvertently discloses information without designating such information as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," that disclosure shall not be deemed a waiver of confidentiality with regard to that information, or similar or related information.

   27. Neither the existence of this Protective Order, nor the designation of anything as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall, in and of itself, raise any inference as to whether the designated information is confidential.

### A. Privilege or Immunity

   28. Nothing in this Protective Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a party claiming that it inadvertently disclosed information subject to any privilege or immunity. Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product immunity, or other privilege or immunity.

   29. If any party claims that it has inadvertently disclosed information subject to the attorney-client privilege, work product immunity, a legal prohibition against disclosure, or other privilege or immunity, such disclosure shall not constitute a waiver of the applicable privilege or legal prohibition against disclosure if the producing party provides written notice of the inadvertent disclosure to each receiving party within ten (10) days of becoming aware of the inadvertent disclosure. The parties reserve all rights to seek the return or destruction of all such information and anything relating to such information (including without limitation notes or work product), and to preclude the further use or disclosure thereof.

   30. If written notice of inadvertent disclosure is provided within 10 days of the party becoming aware of the relevant inadvertent disclosure, then: (a) upon receipt of such notice of inadvertent disclosure, each receiving party shall immediately return or destroy all copies of any documents and things that the disclosing party claims it inadvertently disclosed, and, if requested in writing to do so, certify in writing to the producing party that it has done so, and (b) until any issue of how to treat such information is resolved (for example, by court order or agreement of the parties), such information shall be treated as though it subject to the claimed privilege or immunity, and shall not be further used or disseminated by the receiving party. If any receiving party disputes that any such information is subject to such privilege or immunity, or otherwise disagrees about the return, disclosure (e.g., if the receiving party disputes whether the disclosure was inadvertent), or use of any such information, then that party and the party claiming inadvertent disclosure shall meet and confer in good faith to attempt to resolve their disagreement. If those parties cannot resolve their disagreement within ten (10) days after

receipt of such notice, then any of those parties may thereafter petition the court to resolve the matter. The party seeking to designate the information as subject to privilege or immunity shall have the burden of proving that the information is subject to privilege or immunity and, if relying on the rule against inadvertent waiver under this Protective Order, that the disclosure was inadvertent and that written notice was provided within the required 10 days. When written notice of inadvertent disclosure is provided within 10 days of the party becoming aware of the inadvertent disclosure, the court will rule on claims of privilege or immunity without regard to the fact that such information has been disclosed or used.

## VIII.  VIOLATION

31.    Each person and entity that receives any information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" agrees to be subject to the jurisdiction of this court for the purpose of any proceeding relating to the performance under, compliance with, or violation of this Protective Order, even after the conclusion of this litigation.

32.    Each party shall be entitled to all remedies existing under law and equity if any information that is designated (at the time of use or disclosure) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" is used or disclosed in violation of this Protective Order, or if any term of this Protective Order is violated in any other way. It shall not be a defense to a request for injunctive relief that the aggrieved party possesses an adequate remedy at law.

33.    If any information that is designated (at the time of use or disclosure) "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" is used or disclosed other than in the manner authorized by this Protective Order, then the party responsible for such use or disclosure shall immediately disclose such use or disclosure to counsel of record and each entity that supplied or designated the affected information and, without prejudice to other rights and remedies available to the supplier or designator, shall make every effort to obtain the return of such information and prevent further improper use or disclosure of such information. Such disclosure shall include: (a) a description of the confidential information used or disclosed (with Bates numbers of any documents involved, if known); (b) the date and nature of the use and disclosure; (c) the identity of the person(s) who made such use or disclosure and to whom the confidential information was disclosed; and (d) a description of the efforts taken to comply with the provisions of this paragraph.

34.    Except as provided for elsewhere in this Protective Order, any disclosure or use by any person or entity of any inadvertently disclosed or inadvertently non-designated information shall not be deemed a violation of this Protective Order if such disclosure or use occurs before that person or entity receives written notice of that inadvertent disclosure or non-designation. For purposes of this provision, oral notice recorded by a court reporter shall constitute written notice.

11

## IX.    CONCLUSION OF LITIGATION

35.     Absent a court order or written permission of the disclosing and designating party or parties, and unless otherwise stated in another provision in this Protective Order, all provisions of this Protective Order that restrict the disclosure or use of information shall continue to be binding after the conclusion of this action.

36.     Upon written request by the disclosing or designating party or parties after the conclusion of this litigation and all appeals therefrom, and absent a court order to the contrary (a) all documents or things (including transcripts) produced or exchanged in this litigation, and all copies thereof, shall be returned to the producing party or destroyed and (b) anything (including without limitation exhibits and attorney work product) that contains or comprises information designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" shall be returned to the producing party or destroyed. Each party or entity (including without limitation, court reporters) that received or has any such documents or things, or copies thereof, shall certify in writing to counsel for the producing party that it returned or destroyed, at its option, every such document and thing, and all copies, summaries and abstracts thereof, in its possession, custody or control.

37.     Notwithstanding Paragraph 36 above, each firm having counsel of record may retain for archival purposes one copy of all pleadings, papers filed with the court, written discovery requests, deposition transcripts, transcripts of court proceedings, correspondence and work product, including portions designated as "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," subject to the continuing obligations of all other provisions of this Protective Order, and provided that nothing in said archival copy shall be disclosed to anyone other than that counsel's partners, associates or employees.

38.     The court retains jurisdiction even after final disposition of this litigation to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the court may from time to time deem appropriate.  The parties hereto reserve all rights to apply to the court at any time, before or after final disposition, for an order:  (a) modifying this Protective Order; (b) seeking further protection against discovery or other use of confidential information, or documents, transcripts or other materials reflecting confidential information; or (c) seeking further production, discovery, disclosure or use of claimed confidential information, or documents, transcripts or other materials reflecting confidential information.

## X.    AMENDMENTS

39.     Changes or exceptions to this Protective Order may be made only by written agreement of the parties subject to court approval, or by court order.

40.     This Protective Order does not abridge and is without prejudice to the rights of a party (a) to oppose or object to the disclosure, production, use or admissibility of anything, or to refuse to disclose or produce anything based on any available legal grounds or objections, (b) to modify or seek relief from this Protective Order, (c) to seek judicial review or other appropriate action regarding any court ruling concerning information that is or was designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION," or (d) to seek any additional protection that the party deems appropriate.

IT IS SO ORDERED this 17th day of August, 2006.

 s/Diane K. Vescovo                                   

DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

J.

## EXHIBIT A
## AGREEMENT TO BE BOUND

I, _____ hereby state the following:

I reside at _____

I have read the Protective Order dated _____, 2006 and have been engaged as

a _____ on behalf of _____

in the preparation and conduct of the action *Harvinder S. Sandhu, M.D. and Kyphon, Inc. v. Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc., and SDGI Holding, Inc.,* Case No. 05-2863-JPM-dkv in the United States District Court for the Western District of Tennessee. I am fully familiar with and agree to comply with and be bound by the provisions of said Protective Order. I understand that I am to retain all copies of any information obtained pursuant to said Protective Order, and that all copies are to remain in my personal custody until I have completed my assigned duties, whereupon the copies, and any writings prepared by me containing any information designated "CONFIDENTIAL INFORMATION—ATTORNEYS' EYES ONLY" and "CONFIDENTIAL INFORMATION" are to be returned to counsel who provided me with such material.

I will not divulge to persons other than those specifically authorized by said Protective Order, and will not copy or use except solely for the purpose of this litigation, any information obtained pursuant to said Protective Order, except as provided in said Protective Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Protective Order.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on _____, 2006.

_____

05-2863 sandhu.pl.prot.ord.doc

13

# Exhibit J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KYPHON INC.,

Plaintiff,

v.

DISC-O-TECH MEDICAL
TECHNOLOGIES LTD., and DISC
ORTHOPAEDIC TECHNOLOGIES, INC.,

Defendants.

CA 04-0204-JJF

[proposed] **PROTECTIVE ORDER**

WHEREAS, documents and information may be sought, produced or exhibited by

and among the parties to the above captioned proceeding, which materials relate to trade

secrets or other confidential research, development or commercial information;

IT IS HEREBY ORDERED THAT:

1.    Definition of Confidential Business Information

"Confidential Business Information" ("CBI") is information that concerns or

relates to the trade secrets, processes, operations, style of work, or apparatus, or to the

production, sales, shipments, purchases, transfers, identification of customers,

inventories, amount or source of any income, profits, losses, or expenditures of any

person, firm, partnership, corporation, or other organization, or other information of

commercial value, the disclosure of which is likely to have the effect of causing

substantial harm to the competitive position of the person, firm, partnership, corporation,

or other organization from which the information was obtained.

2.    Designation of Confidential Business Information

(a)    Any information submitted in this litigation in discovery or in a pleading,

motion, or response to a motion either voluntarily or pursuant to order, which is asserted

by a supplier to contain or constitute CBI shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted. Documents shall be clearly and prominently marked on their face with the legend: "[supplier's name] CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice. Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order. Any such designation that is inadvertently omitted may be corrected by written notification to counsel for the receiving party, and the receiving party shall thereafter mark and treat the materials as if marked confidential at the time of production, and such material shall be subject to this Protective Order as if it had been initially so designated. If, prior to receiving such notice, the receiving party has disseminated the CBI to individuals not authorized to receive it hereunder, it shall make a reasonable effort to retrieve the CBI or to otherwise assure that the recipient(s) maintain the confidentiality of the CBI, but shall have no other responsibility or obligation with respect to the information disseminated.

(b)    The Court may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during, or after the close of a hearing herein. If such a determination is made by the Court, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.    <u>Persons to Whom Disclosure of CBI May Be Made</u>

In the absence of written permission from the supplier or an order by the Court, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i)

2

outside counsel for parties to this litigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a party, or are employees of any domestic or foreign, manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this litigation); and (iv) the Court and the Court staff.

4.    Procedure for Disclosure of CBI

Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i) and (iii) unless he or she shall have first read this order and shall have agreed, by letter served on the opposing party: (i) to be bound by the terms thereof; (ii) not to reveal such CBI to anyone other than another person designated in paragraph 3; and (iii) to utilize such CBI solely for purposes of this litigation.

5.    Additional Persons to Whom Disclosure May Be Made

If the Court, or if the supplier and all parties to the litigation agree, that access to, or dissemination of information submitted as CBI shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Court finds that the information is not CBI as defined in paragraph 1 hereof.

6.    Treatment of Pleadings and Transcripts

Any CBI submitted to the Court in connection with a motion or other proceeding

3

within the purview of this litigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this litigation containing any CBI submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any CBI submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "[supplier's name] CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER."

7.     Limitations on This Protective Order

The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Court, after an opportunity for hearing, orders, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.     Objections to Designation

If while this litigation is before the Court, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order. If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the litigation, such supplier shall express the withdrawal, in writing, and serve such

4

withdrawal upon all parties and the Court. If the recipient and supplier are unable to concur upon the status of the subject information submitted as CBI within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Court who will rule upon the matter. The Court may sua sponte question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

9.     Clearance of Experts

No less than 10 days prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier. If the supplier objects to the disclosure of such CBI to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds thereof prior to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Court for a ruling. The submission of such CBI to such proposed expert shall be withheld pending the ruling of the Court.

10.     Disclosure of CBI

If CBI submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Court and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who

was the recipient of such information.

    11.    <u>Termination of Litigation</u>

Upon final termination of this litigation, each recipient of CBI that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing CBI and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to archival copies of pleadings and work product kept by outside counsel, or to the Court, which shall retain such material pursuant to statutory requirements and for other record keeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

    12.    <u>Third Party CBI</u>

If any CBI which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this litigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order. Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

    13.    <u>Inadvertent Disclosure of Privileged Information</u>

Inadvertent production of documents subject to the work product doctrine, the attorney-client privilege, or other applicable privilege or immunity shall not constitute a waiver of the privilege or immunity, provided that the producing party shall notify the receiving party in writing of such inadvertent production promptly after the producing party learns of the inadvertent production. Such inadvertently produced documents, and any copies that the receiving party has, shall be promptly returned to the producing party

upon request. The receiving party may afterward contest such claims of privilege or work product as if the materials had not been produced, but shall not assert that a waiver occurred as a result of the production.

14.    Use of Documents Produced in Other Proceedings

All documents produced by the parties in *In the Matter of Certain Medical Devices Used to Compact Inner Bone Tissue and Products Containing Same,* International Trade Commission Investigation No. 337-TA-507, and all discovery responses served in that litigation, may be used as if produced or served by the parties in this litigation and shall be subject to the provisions of this Protective Order.

FISH & RICHARDSON P.C.

Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070 (Tel.)
(302) 652-0607 (Fax)

Attorneys for Plaintiff
KYPHON INC.

MORRIS NICHOLS ARSHT & TUNNELL

Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7278 (Tel)
(302) 658-3989 (Fax)

Attorneys for Defendants
DISC-O-TECH MEDICAL
TECHNOLOGIES LTD., and DISC
ORTHOPAEDIC TECHNOLOGIES, INC.

IT IS SO ORDERED

9 | 30 | 04
Date

_____
U.S.D.J.

7